UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 OCT 31  A 9: 21

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| ELIZABETH SCHILLER AND JOHANNA S. GEORGIA,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF BRIDGEPORT, DONALD DAY, MICHAEL MAGLIONE, EARL PETTWAY,<br>    Defendants. | :<br>:<br>:<br>:<br>:   Civil No. 3:01CV452(AVC)<br>:<br>:<br>:<br>:<br>: |

## RULING AND ORDER ON THE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

This is an action for damages and equitable relief brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, Conn. Gen. Stat. § 46a-60, the Connecticut constitution, and common law tenets concerning intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing. On August 29, 2003, the defendants filed the within motion for a protective order pursuant to Fed. R. Civ. P. 26(c) to prevent the dissemination of all documents, material and testimony obtained through the pre-trial discovery process to any non-party prior to trial. On September 3, 2003, Roger Kergaravat, president of the Bridgeport Fire Fighter - IAFF, Local 834 (the "union"), a non-party witness, served with a subpoena in this matter, joined the defendants' motion for a protective order. For the reasons that hereinafter follow the motion for a protective order (document no. 91) is GRANTED in part and DENIED in part.

## BACKGROUND

The following procedural history is relevant to this motion. This case is currently in the discovery phase. On April 16, 2003, the plaintiff served Roger Kergaravat, the union president, with a subpoena duces tecum directing him to produce any documents, reports or grievances filed with the union that alleged claims of employment harassment or discrimination on the part of the Bridgeport fire department. Additionally, Kergaravat, was to make the union's files (the "union files") available for the plaintiffs' review. On April 22, 2003, Kergaravat filed a motion to quash the subpoena.

On July 3, 2003 the court conducted a hearing on the motion to quash. At that hearing, counsel for Kergaravat indicated that Kergaravat and the union objected to the subpoena because the files contained personal and private material of the union members and production of that material would not only be embarrassing but an invasion of privacy. Additionally, many of the files relating to grievances never matured into actual employment actions and thus revelation of these previously private complaints would subject the individual union members to embarrassment and perhaps weaken the union's bargaining power. Although the court denied the motion to quash, in order to protect the interests of the non-party union members, the court agreed to examine the files to determine which of them were relevant and should be turned over to the plaintiffs. On August

20, 2003, the court issued a discovery order directing the union to disclose certain files to the plaintiffs that the court had determined were relevant to the plaintiffs' claims. Nothing in that order prohibited the union form filing an objection to any or all disclosure ordered on grounds other than relevance.

The defendants now move for a protective order to prevent the dissemination of all documents, material and testimony obtained through the pre-trial discovery process to any non-party prior to trial. Kergaravat joins the defendants' motion.

## DISCUSSION

1. <u>The Union Files</u>:

The protective order sought in this matter extends to all discovery material and therefore includes the union files. The court addresses the protective order in relation to the union files first.[1] The defendants and the union contend that good cause exists for the issuance of the protective order. They contend, *inter alia*, that the protective order is necessary to "protect the privacy of the parties and non-parties by preventing them from being subject to embarrassment and undue harassment that could result from dissemination of emotionally charged and potentially irrelevant and inadmissable information."

In response, the plaintiffs claim that no such good cause exists. Additionally, the plaintiffs contend that: (1) "Roger

---

[1] Although the motion for a protective order does not distinguish between the materials sought from the union and the other discovery materials in this matter, for purposes of analysis the court distinguishes between the two.

Kergaravat has no standing to seek the order[; (2)] the proposed order would infringe upon the plaintiffs' rights to seek redress for violations of their civil rights, and chill the exercise of civil rights by them and other protected class members; [(3) the proposed order] is an unconstitutional, unjustified, and unnecessary prior restraint on speech; and [(4) the order] would impermissibly derogate the Connecticut Freedom of Information Act."

Federal Rule of Civil Procedure 26(c) provides that: "[u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  "The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion. . . . Where ... the [discovery is] relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) (internal citations omitted; alterations in original).  In this case, it is not disputed that the union files are relevant. Therefore the narrow question is whether the defendants and

Kergaravat have demonstrated good cause for the entry of a protective order.

Although "good cause" is not susceptible to any single definition, courts require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Sterbens v. Sound Shore Medical Center of Westchester, 2001 WL 1549228, No. 01CV5980, at *1 (S.D.N.Y. Dec. 5, 2001). Additionally, "[i]n determining the weight to be accorded an assertion of a right to privacy, courts should consider whether the subject matter is traditionally considered private rather than public, the nature and degree of injury, and the reliability of the information." Sterbens v. Sound Shore Medical Center of Westchester, 2001 WL 1549228, No. 01CV5980, at *1 (S.D.N.Y. Dec. 5, 2001); see also Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002).

Applying these principles to the motion for a protective order for the union files, the court concludes that the motion should be granted. Generally, the union files consist of memorandum, grievances and complaints registered with the union alleging discriminatory acts and/or practices of the Bridgeport fire department.[2] These files are maintained by the union and are generally not available to the public. Not all of these allegations resulted in any employment action. In other words, besides the internal union file there is no other record of the

---

[2]The court has previously examined the union files and is intimately aware of their contents.

complaint or allegation of discrimination. Further, the union and its members are not parties to this action. Additionally, many of these files contain personal information of various union members. These types of files are traditionally considered private. See Sterbens v. Sound Shore Medical Center of Westchester, 2001 WL 1549228, No. 01CV5980, at *2 (S.D.N.Y. Dec. 5, 2001) ("employment, health, financial and personal data are typically viewed as private"); see also Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002). Thus, public dissemination of these otherwise private files could lead to substantial embarrassment to the union members who are not parties to this litigation. See Kelly v. The City of New York, 2003 WL 548400, No. 01CV8906, at *5 (S.D.N.Y. Feb. 24, 2003). Additionally, "public dissemination of records relating to allegations and investigations which have not ripened into employment actions carry with them a stigma and potential for embarrassment . . . ." Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002). It is also quite possible that public dissemination of these files could damage the union's ability to fully represent its members' interests. Consequently, the court concludes that the union has articulated good cause for the issuance of a protective order regarding the contents of the union files.

The plaintiffs further argue that Kergaravat lacks standing to seek a protective order. The plaintiffs' claim is without merit. The text of rule 26(c) provides that a "*person from whom*

*discovery is sought*" may seek a protective order. Therefore, because the plaintiffs seek discovery from Kergaravat, he plainly has standing to seek a protective order.[3]

The plaintiffs also claim that the order would violate the First Amendment of the United States Constitution. In <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1984), the United States Supreme Court addressed the question of whether a protective order that barred the parties from disseminating information received during discovery violated the first amendment. The court concluded that "where . . . a protective order is entered on a showing of good cause, . . . is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 37 (1984). As previously indicated, good cause does exist for the issuance of the protective order in relation to the union files. Further, the order is limited to the context of discovery and permits the parties to disseminate information gained from other sources. Therefore, the protective order does

---

[3]The plaintiffs also assert that Kergaravat has not authorized use of his name for purposes of this motion. Aside from this blanket assertion, the plaintiffs offer no proof in support of this assertion. Additionally, the court's review of the file in this matter indicates that Kergaravat is still represented by the attorney who filed the motion for a protective order. Therefore, absent proof otherwise, the court rejects the plaintiffs' unsubstantiated assertion.

not violate the First Amendment.[4]

2.  The Remaining Discovery Material

Aside from the union files, the defendants also seek a protective order for all other documents, materials and testimony. The defendants assert that the order is necessary to: "[(1) ensure] a fair and unbiased jury pool; [(2) give] the litigants their constitutional right to try their case in court before a jury as opposed to in the press; and [(3)] . . . protect the privacy of the parties and non-parties by preventing them from being subject to embarrassment and undue harassment that could result from dissemination of emotionally charged and potentially irrelevant and inadmissable information."

In response, the plaintiffs claim that the motion should be denied because the defendants have failed to adequately articulate good cause.

The defendants' first two grounds for the protective order, namely the concern for possible juror prejudice and avoiding trying the case in the press, both derive from the same

---

[4]The plaintiffs raise two other arguments, namely, they contend that the motion should be denied because: (1) the order would violate the Connecticut Freedom of Information Act ("FOIA"); and (2) the order would limit their rights to redress and prohibit the exercise of their civil rights. These arguments are without merit. First, nothing in the protective order bars any party from exercising the rights available to them under FOIA. Second, having concluded that the order would not violate the First Amendment, it is unclear how the order would bar the plaintiffs right to redress or chill the exercise of their civil rights. The order simply prohibits the parties from disseminating the contents of the union files. It does not prohibit the otherwise ongoing discovery nor bar any party from seeking information relating to their claims or defenses outside of the traditional discovery process.

underlying premise.  Specifically, the defendants maintain that "pre-trial discovery information and materials are not only being publicly disseminated, but inaccurately paraphrased and misquoted" in the local press of Fairfield county.  According to the defendants, the press coverage is infecting the jury pool and denying the defendants the right to try the case before a jury rather than in the press.

Even if the court were to assume that some discovery material has been "inaccurately paraphrased and misquoted" in the press, the court concludes that the defendants have failed to carry their burden of showing good cause.  The extensive press coverage that the defendants contend necessitates a protective order consists of approximately five articles in the Fairfield County Weekly.  As those articles freely admit, the Fairfield County Weekly is not the "paper of record" for Fairfield county.  Further, only two of those articles reference discovery material.  Therefore, in light of the fact that there has been only limited media coverage, that the media coverage would continue regardless of the protective order, and because of the availability of voir dire, the court concludes that the defendants have failed to articulate sufficient good cause based on the media coverage of this case.

Finally, the defendants contend that good cause exists for the issuance of the protective order because "there is a great deal of potentially embarrassing personal information about non-

parties exchanged in the discovery . . . [and] public dissemination of these materials could not only be embarrassing to many of the non-parties involved but it could also hinder the discovery process by making such individuals more reluctant to volunteer information." Although as a general matter this may constitute good cause, the defendants' burden requires that they demonstrate that the materials include such potentially embarrassing personal information with a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Sterbens v. Sound Shore Medical Center of Westchester, 2001 WL 1549228, No. 01CV5980, at *1 (S.D.N.Y. Dec. 5, 2001). In other words, "[the] facts must show that a clearly defined and serious injury will result from the discovery sought. Conclusory or speculative statements about the need for a protective order and the harm that would be suffered without one are insufficient." 6 Moore's Federal Practice § 26-102[1] at 26-246 (3d Ed. 2003). Moreover, "[when] a movant seeks a protective order on the ground that the disclosure would result in embarrassment, the embarrassment must be substantial." 6 Moore's Federal Practice § 26-104[1] at 26-253 (3d Ed. 2003); see also Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2002).

The defendants have provided nothing more than conclusory statements that the discovery material involved contain personal information. The only discovery material that the court has reviewed is that relating to the union files. Put simply, on the

basis of the current record, the court simply cannot conclude that a protective order for *all* discovery material is necessary because, aside from the union files, the defendants have not presented a "particular and specific demonstration of fact" that *any* of the discovery material is potentially embarrassing. Cf. 6 Moore's Federal Practice § 26-102[1] at 26-247 (3d Ed. 2003) ("[D]emonstration of fact should be made by affidavits from knowledgeable persons. However, the court may allow *in camera* submissions or *in camera* proceedings attended by opposing counsel.") Therefore, the court concludes that the defendants have failed to carry their burden in proving good cause in relation to the discovery materials.

## CONCLUSION

Based on the foregoing, the defendants motion for a protective order is GRANTED in part and DENIED in part. It is therefore hereby ORDERED that a protective order enter in relation to the union files. The court adopts the protective order submitted by the defendants, but limits its scope to only those matters contained within the union files.

It is so ORDERED, this 29th day of October, 2003, at Hartford, Connecticut.

_____
Alfred V. Covello, U.S.D.J.