FILED

2003 NOV 18 P 3: 31

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHANNA S. GEORGIA,<br>                Plaintiff,<br><br>VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br>                Defendants. | CIVIL ACTION<br>NO. 3:01 CV-00717 (AVC) |
| ELIZABETH SCHILLER,<br>                Plaintiff,<br><br>VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br>                Defendants. | CIVIL ACTION<br>NO. 3:01 CV-00452 (AVC)<br><br>(CONSOLIDATED)<br><br>November 18, 2003 |

**MEMORANDUM OF DEFENDANT CITY OF BRIDGEPORT
IN OPPOSITION TO PLAINTIFFS' MOTION TO QUASH
THE CITY'S SUBPOENA OF DONALD DAY**

Testimony Not Required
Argument Not Requested

-1-

**PRELIMINARY STATEMENT**

By motion dated October 28, 2003, Plaintiffs have sought to quash the City's deposition subpoena duces tecum of Donald Day, and to prohibit Defendants from exploring communications between Day and Plaintiffs' counsel. Plaintiffs' Motion is based on claims that: (1) Donald Day is a non-party; (2) the subpoena would invade Plaintiffs' counsel's work product rights; (3) the subpoena is an overt attempt to chill the exercise of protected first amendment rights; and (4) the subpoena constitutes a form of retaliation made impermissible under Title VII and the Connecticut Fair employment Practices Laws. Plaintiffs are legally incorrect on each of these points. The Motion to Quash should be denied.

1.   **Donald Day Is a Party Defendant To this Action.**

The oddest statement by Plaintiffs to support their motion to quash is that Donald Day is not a party to this case. Assuming, for the sake of argument, that it makes any difference whether he is or is not a party, it is undeniable that he is a party defendant. It may be true that Plaintiffs have not served him with the Complaint and it is certainly true that no one has appeared on his behalf, but he is a party defendant; a co-defendant with the City, Chief Maglione, and retired Deputy Chief Pettway. Suits are started by filing, not service, under the Federal Rules. Fed. R. Civ. P. 3; 4(m). In this particular case, Day was joined as a party by order of the Court upon Plaintiffs' motion that he be added. (Motion by Elizabeth Schiller to join additional defendants, July 9, 2001, docket # 17; Motion by Johanna S. Georgia to join additional defendants, July 9, 2001, docket # 19; Endorsements granting docket #s 17 and 19 dated October 2, 2001.)

Insofar as Plaintiffs' counsel has had communications with Donald Day about any matter relevant to this action, she has been communicating with an opposing, adversarial party. Since he is not represented in this case, there is nothing inherently wrong with this, but it is certainly a matter of interest and importance to Day's co-defendants, and there is nothing improper in attempting to determine what information Day has given Plaintiffs' counsel concerning matters relevant to this suit. Moreover, Day's status as Plaintiffs' adversary is highly relevant to Plaintiffs' work-product arguments.

Even if Day were not a party to this action, he has been the focus of the Plaintiffs' complaints about their alleged mistreatment by the Bridgeport Fire Department. It is Donald Day whose utterance of the pejorative term "cunt" ignited these legal proceedings. (See Complaint dated July 9, 2001.) While Plaintiffs have made many other allegations about various forms of perceived mistreatment, Day's remark, and the Plaintiffs' fears of retaliation at his hands, lie at the core of this case.[1] Again, contact between Plaintiffs' counsel and Day is a significant event in this case, and the Defendants have a right to explore it, at least from Day's end of the telescope.

---

[1] This fact is most readily apparent when one looks to Plaintiffs' CHRO and EEOC charges and the Court's Ruling on Defendant's April 27, 2001 Motion to Dismiss. Both Plaintiffs' CHRO and/or EEOC charges specifically focused on Captain Day's comment and the retaliation that followed. Defendants filed a Motion to Dismiss arguing that the allegations in the Complaint that focused on claims other than Day's comment and its retaliation should be dismissed as time barred or because they were not included in the original charge. Most, if not all, of the additional claims that survived the Motion to Dismiss did so **because the Court found that they were reasonably related to or linked to Captain Day's comment.** Specifically the Court held, "these additional allegations, although not specifically raised in Schiller's CCHRO charge, 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination' because such allegations relate to fire captain Day's
(continued ...)

2.     **There Would Be No Attorney Work Product Violation.**

The work product doctrine does not cloak Plaintiffs' counsel's discussions with Donald Day from Defendants' exploration through discovery requests or deposition questions directed at him. While it is true, as Plaintiffs assert, that the work product doctrine provides a lawyer with an essential zone of privacy where the lawyer can work free from unnecessary intrusion by opposing parties, the courts have also held that the doctrine is not absolute, and it may be waived. United States v. Nobles, 422 U.S. 225, 239 (1975).

Although Plaintiffs correctly state that it is Defendants' burden to show a substantial need for the information *if it is shown that the work product doctrine applies to the given information*, Plaintiffs fail to mention that the initial burden lies with them. The courts have been clear, "the burden of showing that a document is entitled to work product protection is on the party asserting it, and unless that party presents competent proof of circumstances showing the privilege should attach, protection must be denied." Hildebrand v. Wal-Mart Stores, Inc., 194 F.R.D. 432, 434-35 (D. Conn. 2000). This includes both a showing that the privilege exists, *and* that it has not been waived. Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 184 F.R.D. 49, 50 (S.D.N.Y. 1996). The "burden cannot be discharged by mere conclusory or ipse dixit assertions." Redvanly v. NYNEX Corp., 152 F.R.D. 460, 465 (S.D.N.Y. 1993).

---

comment and events that transpired as a result of Day's comment." (Ruling on the Defendant's Motion to Dismiss, dated Jan. 22, 2002, at 12.) Thus, not only are the allegations surrounding Captain Day at the core of Plaintiffs' case, it can also be said that without such allegations Plaintiffs' entire case would have been dismissed previously.

In this case, Plaintiffs have simply asserted that a work-product privilege exists, and that it has not been waived. Plaintiffs have provided no factual or legal proof to support these assertions. Moreover, they have not even expressly defined what information or documents constitute work product in this instance. Is it information Plaintiffs' counsel gave Donald Day, do plaintiffs' claim communications from Day to Plaintiffs' counsel, or is it information Plaintiffs gave to their counsel in the presence of Day? In any event, the case law provides that a waiver in fact has occurred.

For example, in Hudson v. General Dynamics Corp., 186 F.R.D. 271, 277 (D. Conn. 1999), the plaintiffs' attorney sent blank questionnaires out to potential witnesses who were former employees of the defendant. The questionnaires were intended to gather information from potential witnesses. Several of the employees who received the questionnaires filled them out and returned them to the plaintiffs' counsel. The court held that such questionnaires could be discovered by the defendant because they were not protected by either the attorney-client privilege (even though some eventually became clients of the plaintiffs' counsel), or the attorney work-product doctrine. Specifically, the court held, "any claim of work product as to the blank questionnaire itself was waived by plaintiffs' attorney when the questionnaire was sent out to third party former employees." Hudson, 186 F.R.D. at 277.

The courts stress that the work-product doctrine cannot act as both a sword and a shield. Thus, waiver always occurs when disclosure substantially increases the likelihood that an adversary will obtain the information. Steinhardt Partners v. Steinhardt Partners, 9 F.3d 230, 235 (2nd Cir. 1993); Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3rd Cir. 1991); Bank of America v. Terra Nova Ins. Co., 212 F.R.D. 166, 170 (S.D.N.Y. 2002). A party

cannot be permitted to pick and choose among his opponents, waiving the privilege for some, and resurrecting the claim of confidentiality to obstruct others; or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit. Steinhardt, 9 F.3d at 235.

Thus, the fact that Day *is* a party to this case makes counsel's claim of work product protection untenable. Even if his lack of service negates his status as a party, the case law still holds that any Plaintiffs' counsel's communications to him that may have otherwise been considered work-product are now waived. There is no question that Day is an adversary of Plaintiffs. As previously mentioned, Day's conduct is at the core of Plaintiffs' complaints. He was added as a defendant by Plaintiffs in his personal and individual capacity. He is blamed for many of the wrongs and retaliations Plaintiffs complain of. It would be entirely disingenuous for anyone to claim at this juncture that he is not Plaintiffs' adversary. Thus, the holding in Steinhardt Partners v. Steinhardt Partners, 9 F.3d 230, is directly applicable.

In Steinhardt Partners the SEC began an investigation against one of the parties. As part of the investigation, the party drafted a legal memorandum that would have otherwise constituted work product, and turned it over to the SEC. The SEC never brought enforcement proceedings and, thus, never became a party to **any lawsuit**. The court, however, found that since the party had given the memorandum to the SEC, an adversarial party, it had waived the work product privilege as to all opponents. The memorandum was discoverable. Steinhardt, 9 F.3d at 236.

Likewise, in this case, any communications that Plaintiffs or Plaintiffs' counsel have had with Donald Day have been communications with an adversary. Therefore, any information,

communications, mental impressions or other such materials that may have been encompassed within the work product doctrine are now waived as to all Defendants. Plaintiffs voluntarily disclosed this information to an adversary, and under the controlling case law this means they did, in fact, waive the privilege as to all.[2]

3.  **Potential Mary Carter Agreement**

Indeed, Day's status as an unserved, named defendant makes inquiry into his contacts and relationship with Plaintiffs' Counsel ***directly relevant*** to this case and its defenses by his co-defendants.

Plaintiffs' counsel's direct contacts with Day, coupled with Plaintiffs' continued failure to serve him, and the atmosphere of polemics, *ad hominem* attacks, and generalized invective which have accompanied Plaintiffs' pursuit of this case, raise the specter of some form of "Mary Carter Agreement" having been reached between Day and Plaintiffs. A "Mary Carter Agreement" is basically a contract by which one co-defendant secretly agrees with the plaintiff that, if such defendant will work against his co-defendants to the plaintiff's benefit, his own maximum liability

---

[2] Plaintiffs' Counsel also seems allude to the possibility of some attorney-client privilege attaching to her communications with Day. (Plaintiffs' Opposition Memorandum at pp.3 and 5 n. 1.) Insofar as she claims any such relationship to Day, there is an overt and serious conflict of interest issue presented. If she claims an attorney client relationship with the Bridgeport Firebirds, whose website, <pages.cthome.net/firebirds>, lists Day as Vice-President and for whom he has long been an important spokesperson, the Court may also be presented with a conflicting interests question.

will be diminished or even extinguished. Perhaps the Mary Carter defendant may even be offered some alternative compensation in return for his support.

Secrecy is the essence of such an arrangement, because the court or jury as trier of the facts, if apprised of this, would likely weigh differently the testimony and conduct of the "Mary Carter" defendant as against that of the other defendants. Such a Mary Carter defendant's assistance might take the form, for example, of his painting a damaging testimonial picture of the other defendants' conduct or, in some cases, by making admissions against himself and the other defendants. Alternatively, such a defendant could further some agenda he/she had that ran counter to defense of the case against the plaintiff. Booth v. Mary Carter Paint Co., 202 So.2d 8 (Fla. Dist App., 1st Dist. 1967); see also, Dosdourian v. Carsten, 624 So.2d 241 (Fla. 1993); Whitney v. Capullo, No. CV 92-029-53-47, 1995 WL 459263 (Conn. Super., 1995). Although many would find such an agreement distasteful, Mary Carter Agreements are not unknown in Connecticut practice. See id. The existence of such a pact would not be out of the question in this case.

Donald Day stands accused of misconduct that might be held to have been "willful" and/or "wanton"; perhaps outside the course and scope of his employment. The City has not undertaken to defend him, it has not offered any form of indemnification to him if damages are awarded to Plaintiffs, and it is unlikely to be required to reimburse him under the applicable state statutes. See Conn. Gen. Stat. §§ 7-308(b), 7-465(a). It might even seek to recover any losses it incurs from him personally.

In many ways Donald Day stands alone in facing the very serious charges and claims for damages lodged against him by the Plaintiffs in this suit. He is the primary "bad actor" in the

scenario that led to this case. It is not beyond reasonable imagination to raise a question as to whether he has agreed to assist Plaintiffs in return for an explicit or implicit, written or unwritten agreement not to pursue any damages award they might receive against him in return for his cooperation in pursuing their case against his co-defendants. It is very appropriate to question Day as to his exchanges with Plaintiffs' counsel (including whether there is some undertaking to represent him or the Firebirds in this or any other legal matter by Plaintiffs' counsel in return for Day's giving Plaintiffs and their counsel aid in prosecuting this suit).

It is also relevant to determine whether Plaintiffs' counsel has reached any other arrangement with either the Firebirds or the Hispanic Firefighters Association that has compromised this case, has created a conflict of interest, or has made Plaintiffs' counsel a necessary witness against her own clients' interests. Defense counsel hastens to add that it is not making or implying anything of such a nature at this time. The defense submits only that the circumstances of the connection already claimed between Plaintiffs' counsel and Donald Day make a wider inquiry into their exchanges a matter of substantial need for which there is no less intrusive an option available than to question Day, and to review the relevant documents in his possession.

4. **There Is Nothing In the Law That Renders the Questioned Subpoena Violative of Either the First Amendment or Any Equal Employment Opportunity Anti-Retaliation Provision.**

Plaintiffs raise two final and related points to support their motion to quash. First, they argue that allowing inquiry into Day's interactions with Plaintiffs' counsel would chill his first amendment right to comment on matters of public concern. Second, they argue that such an inquiry

would constitute retaliation against Day in violation of the federal and Connecticut state equal employment opportunity laws' anti-retaliation provisions, and so, also, of 42 U.S.C. § 1983. These arguments are without merit. They have no foundation in law at all.

    a.    <u>The Plaintiffs' Constitutional Claims</u>

Plaintiffs cite a series of cases to show that the issues in this matter may be matters of public import, and, thus, that their clients are entitled to speak out on them. This may all be true, but that is not the issue. The claim Plaintiffs make in the Motion to Quash is that any remarks made to Donald Day by their legal counsel, or by Day to their lawyer regarding this case, are entitled to a cloak of absolute secrecy from the defense because any other result might infringe Day's First Amendment rights. They offer no support for such a patently ridiculous proposition. Not one of their cited cases even hints at such a conclusion. Plaintiffs appear to feel that they are the only ones who have a right to the protection of the law and the processes of this Court. They would use the First Amendment as a sword to deny Defendants these same protections. Their position is more than meritless; it is offensive to the fundamental sense of equal justice that motivates our very system of government under law.

These Plaintiffs have sued, not only the City of Bridgeport, but also Chief Maglione and retired Deputy Chief Pettway. They have sued these two individuals in both their official and personal capacities. They have exposed them and their families to loss of personal and professional reputation, and to possible financial ruin. They have exposed the taxpaying citizens of Bridgeport to a threat of substantial economic damages that would be absorbed by a municipal budget already

stretched to the breaking point; payment of which would almost certainly require curtailment of other urgently needed programs in a City already suffering from severe economic malaise.

No one contends that this situation would or should prevent Plaintiffs from pursuing any meritorious claims they might have, but neither can the fact that the City stands as a party defendant be used as an reason to deny either the City or any individual defendant the basic procedural rights of investigation and inquiry provided for by the Federal Rules of Civil Procedure. Not one case cited by Plaintiffs supports a contrary position.

White v. Lee, 227 F.3d 1214 (9th Cir. 2000), cited at several points over the long course of the instant litigation, does not support Plaintiffs' claims of an impermissible First Amendment chilling. In our case, we face the question of a subpoena for information about an exchange of information between Plaintiffs' counsel and a co-defendant in a suit brought ***against*** the City and individual defendants in the first instance ***by*** Plaintiffs. In White, by contrast, the claimed violation was an eight-month long HUD investigation ***initiated*** by the government ***against*** the White plaintiffs, specifically because of their opposition to a public housing project.

The Ninth Circuit's decision was entered in response to cross-motions for summary judgment filed by the various parties in an action brought against HUD and various other social service agency administrators for threatening the White Plaintiffs with severe personal economic sanctions, for issuing overbroad and burdensome informational requests, and issuing an administrative complaint against them for their opposition. The HUD process was admittedly meant to stop the White Plaintiffs' opposition to the housing project. This, in fact, was its stated purpose. White, however, has nothing to do with Plaintiffs' motion to quash the Day subpoena

which represents a legitimate inquiry into relevant facts surrounding a lawsuit brought by the Plaintiffs themselves.

    b.    <u>EEO Anti-Retaliation Provisions Are Not Violated By the Day Subpoena.</u>

The Plaintiffs' state that the Day subpoena somehow implicates the anti-retaliation provisions of the federal and Connecticut fair employment practices laws. They provide no support for this proposition. They cannot support it. Nothing in the federal and State anti-discrimination laws shields parties or witnesses to an employment discrimination suit from reasonable discovery.

The subpoena served upon Day is more than reasonable. As is discussed above, he is a party defendant in this case who is in a precarious position if Plaintiffs succeed in their suit. He has every reason to provide them with assistance in return for favorable consideration as to his potential liability on their part - - perhaps even in return for the hope of such consideration. Even were this not true, part of discovery is finding out about the factual basis of the plaintiff's and defendant's claims; what they know or do not know, and what they find out is highly relevant in itself and most certainly can lead to the discovery of relevant evidence. Defendants are entitled to know what Day has said to Plaintiffs' counsel, what she might have said to him, and why.

    c.    <u>The Plaintiffs Do Not Have Standing To Raise Issues Of Constitutional Or Statutory Right On Day's Behalf.</u>

While Plaintiffs have standing to move to quash the Day subpoena on the basis that it intrudes upon some privilege or work product that is personal to them (claims which, as discussed above, Defendants believe are substantively meritless), they do not have standing to assert Donald Day's personal constitutional or statutory anti-retaliation rights to support their motion.

As the Federal Rules of Civil Procedure provide, a party may seek to depose any witness who has, or may have, evidence relevant to the case at hand. Fed. R. Civ. P. 30; Fed. R. Civ. P. 45. Moreover, although such depositions or subpoenas may be quashed under limited circumstances, the courts have held that, generally, a party does not have standing to quash the subpoena of a non-party witness. Chazin v. Lieberman, 129 F.R.D. 97, 98 (S.D.N.Y. 1990); U.S. v. International Business Machines Corp., 81 F.R.D. 628, 630 (S.D.N.Y. 1979); Vogue Instrument Corp. v. Lem Instruments Corp., 41 F.R.D. 346, 348 (S.D.N.Y. 1967). Even if the opposing party manages to establish standing by showing a personal right or privilege with regard to the information sought, the party must still show that there is some legal reason for quashing the subpoena. Fed. R. Civ. P. 45(c); U.S. v. International Business Machines Corp., 81 F.R.D. 628, 630 (S.D.N.Y. 1979).

Thus, even if the party has some personal right to the information, the party must still show some privilege protecting the information from disclosure, or show that its privacy interest in the material outweighs the other party's right to pursue the relevant material. Id.; see also Chazin v. Lieberman, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (holding that party's privacy interest in information did not so outweigh opposing party's right to pursue relevant material that the subpoena must be quashed). No such privilege or privacy interest exists in this case.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' request to quash should be denied and the City should be awarded its costs and attorneys' fees for opposing this motion.

CITY OF BRIDGEPORT,

By: *[signature]*
Robert B. Mitchell, ct02662
Margaret M. Sheahan, ct05862
Gwen P. Weisberg, ct08740
For: Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
Facsimile (203) 576-8888

ATTORNEYS FOR:
CITY OF BRIDGEPORT,
EARL PETTWAY and
MICHAEL MAGLIONE

## CERTIFICATION

Pursuant to Fed. R. Civ. P.5 (b), I hereby certify that a copy of the above was mailed on November 18, 2003 to all counsel and *pro se* parties of record.

Susan V. Wallace, Esquire
11 Blue Orchard Drive
Middletown, CT 06457

John R. Mitola, Esquire
John P. Bohannon, Jr., Esquire
Office of the City Attorney
999 Broad Street
Bridgeport, CT 06604

_____
Gwen P. Weisberg

STFD/67551.1/AMB/310332v1