UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH SCHILLER AND JOHANNA S. GEORGIA,<br>    Plaintiffs, | :<br>:<br>: |
| v. | : Civil No. 3:01CV452(AVC) |
| CITY OF BRIDGEPORT, DONALD DAY, MICHAEL MAGLIONE, EARL PETTWAY,<br>    Defendants. | :<br>:<br>:<br>: |

**RULING ON THE PLAINTIFFS' MOTION TO QUASH SUBPOENA TO DONALD DAY BY CITY OF BRIDGEPORT**

This is an action for damages and equitable relief brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, Conn. Gen. Stat. § 46a-60, the Connecticut constitution, and common law tenets concerning intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing. On October 15, 2003 the defendants noticed the deposition of Donald Day, a defendant in this action.[1] The defendants also served Day with a subpoena requiring him to bring "all documents, correspondence, memoranda, notes, audio or video recording which you have received from or produced to Johanna Georgia, Elizabeth Schiller or Susan V. Wallace, or which refer to Johanna Georgia, Elizabeth Schiller or

---

[1] Day is a named defendant in the plaintiffs' amended complaint. Nevertheless, the plaintiffs refer to Day as a "non-party" throughout their motion papers. Because there is no indication otherwise, for purposes of this motion, the court assumes that Day remains as a defendant in this action.

Susan V. Wallace" to the deposition.[2] On October 28, 2003, the plaintiffs filed the within motion to quash the subpoena. For the reasons that hereinafter follow, the plaintiffs' motion to quash defendant's subpoena to Donald Day (document no. 116) is DENIED.

1.  Standing

As a threshold matter, the court first addresses the plaintiffs' standing to challenge the subpoena. The plaintiff's motion seeks to quash a subpoena served upon a named defendant. Generally speaking, only the party served with the subpoena has standing to challenge a subpoena. See United States v. Nachamie, 91 F.Supp.2d 552, 558 (S.D.N.Y. 2000). Nevertheless, a party may challenge a subpoena if they demonstrate some personal right or privilege with regard to the documents or materials at issue. See Langford v. Chrysler Motors Corp., 213 F.2d 1121, 1126 (2d Cir. 1975). In this case, the plaintiffs allege that the materials sought by the subpoena are privileged pursuant to the work product doctrine. Therefore, the plaintiffs have standing to challenge the motion with regard to these materials. See Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau, 183 F.R.D. 627, 629 (N.D. Ill. 1999) (party asserting work product privilege in materials requested from third party has standing to challenge subpoena). Having concluded that the plaintiffs have standing to challenge the subpoena, the court

---

[2] Schiller and Georgia are plaintiffs in this action and Wallace is counsel for the plaintiffs.

now turns to the merits of the motion.

2.  <u>Plaintiffs' Challenge to Subpoena</u>

The plaintiffs contend that the subpoena should be quashed because: (1) it seeks "materials that are privileged as the work product of the plaintiffs' attorney;" (2) it seeks irrelevant material; and (3) it "impermissibly burden[s] and chill[s] the exercise of the plaintiffs' fundamental and statutory federal and state rights."

With regard to the work-product privilege, the court concludes that the plaintiffs' argument is without merit. Generally stated, "[t]he attorney work product doctrine . . . provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. <u>In Re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379, 383 (2d Cir. 2003); <u>see also</u> Fed. R. Civ. P. 26(b)(3). Nevertheless, "[i]t is . . . well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand. . . . The burden is a heavy one, because privileges are neither lightly created nor expansively construed. . . . Instead, privileges are recognized only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." <u>In Re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379,

384 (2d Cir. 2003) (internal citations and quotation marks omitted). Consequently, as a threshold matter, the party asserting the privilege must present a factual basis for the existence of the privilege. See Bowne of New York City v. AmBASE Corp., 150 F.R.D. 465, 471-72 (S.D.N.Y. 1993).

In the instant case, the plaintiffs make conclusory statements that the materials sought by the defendants are privileged. The plaintiffs have not submitted a privilege log, affidavits, or any type of deposition testimony to provide the factual foundation for their contention. Put simply, the plaintiffs have failed to carry their initial burden. Moreover, the materials that Day provided to the plaintiffs are presumably materials created by Day, a third party, and not created in anticipation for litigation. Therefore, those materials are not protected by the work-product privilege. See In Re Grand Jury Subpoenas dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 384-85 (2d Cir. 2003) ("the work product doctrine does not extend to documents in an attorney's possession that were prepared by a third party in the ordinary course of business and that would have been created in essentially similar form irrespective of any litigation anticipated by counsel").

The subpoena also seeks any materials that Day may have which refers to the plaintiffs or plaintiffs' counsel, but which Day did not receive from the plaintiffs nor provide to the plaintiffs. No viable claim of work product privilege can be

made with regard to this material. By its description, this is material that has always been in the sole possession of Day and has never been reviewed by plaintiffs' counsel. Consequently, no claim of work product can be made with regard to this material. The court therefore concludes that the materials sought by the subpoena are not privileged.

The court also concludes that the plaintiffs' contention that the materials are irrelevant is without merit. The amended complaint in this matter indicates that Day's alleged derogatory comments regarding female firefighters serve as part of the factual foundation of the plaintiffs' causes of action against the Bridgeport fire department. In other words, it is the acts and words of Day that serve, at least in part, as the basis of the lawsuit. Consequently, the discovery sought from Day could lead to relevant material and therefore should be permitted. See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir.1992) ("scope of discovery under FED. R. CIV. P. 26(b) is very broad, encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (internal citation and quotation marks omitted; alteration in original).

The plaintiffs also contend that the subpoena should be quashed because it "impermissibly burden[s] and chill[s] the exercise of the plaintiffs' fundamental and statutory federal and state rights" and "is aimed at chilling further communications

between Day and plaintiffs' counsel . . . ." Additionally, the plaintiffs contend that the subpoena is violative of the anti-retaliation provision of Title VII. The court disagrees.

First, with regard to the alleged chilling of the plaintiffs' First Amendment rights, although there is limited case law on the issue, it is generally agreed that there is a qualified First Amendment privilege in the context of discovery. See NAACP v. Alabama, 357 U.S. 449, 462-63; Wyoming v. U.S. Department of Agriculture, 239 F. Supp.2d. 1219, 1236 (D. Wyo. 2002). Nevertheless, the plaintiffs have failed to demonstrate in what manner the subpoena burdens or chills the rights that the qualified privilege is intended to protect. More specifically, in cases where the privilege has been found to exist, the materials sought are of the type traditionally considered protected by the First Amendment, such as: membership and volunteer lists; contributor lists; and past political activities of organizations and of those persons with whom they have been affiliated. See Wyoming v. U.S. Department of Agriculture, 239 F. Supp.2d 1219, 1237 (D. Wyo. 2002); see also Wilkinson v. Federal Bureau of Investigations, 111 F.R.D. 432, 436 (C.D. Cal. 1986). In the instant case, the plaintiffs do not contend that such materials are sought. Rather, the plaintiffs claim that all of the materials sought by the subpoena are subject to the First Amendment privilege because they relate to the alleged discrimination of a public agency and therefore are matters of

public concern. This broad assertion, if credited, would essentially deny any public litigant from conducting discovery. Accordingly, the court rejects the plaintiffs' claim of First Amendment privilege.[3]

With regard to the plaintiffs' contention that the subpoena violates the plaintiffs' rights under Title VII, the court likewise rejects this contention. The plaintiffs contend that the subpoena was issued in retaliation for bringing this lawsuit. Aside from their conclusory allegations, the plaintiffs provide no evidence to support this contention.

Therefore, the motion to quash (document no. 116) is DENIED.

It is so ordered this 3rd day of December, 2003, at Hartford, Connecticut.

Alfred V. Covello,
United States District Judge

---

[3] The plaintiffs nevertheless contend that White v. Lee, 227 F.3d 1214 (9th Cir. 2000) requires a different conclusion. The court disagrees. White stands for the proposition that a public agency may be liable under 42 U.S.C. § 1983 for a violation of an individual's First Amendment rights when the agency employs its subpoena power to effectively silence the individual's opposition to the government. White v. Lee, 227 F.3d 1214, 1228-29. White does not, however, stand for the proposition that all discovery conducted by a public agency is subject to the strict scrutiny standard of review. Moreover, nothing in the White opinion alters the traditional scope of the qualified First Amendment privilege in the context of discovery. Consequently, the plaintiffs' reliance on White is misplaced.