

FILED

2003 DEC -3  P 4: 02

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH SCHILLER<br>**Plaintiff** | : | NO: 3:01cv00452(AVC)<br>(ALL CASES) |
| | : | |
| JOHANNA S. GEORGIA<br>**Plaintiff** | : | |
| | : | |
| v. | : | |
| | | |
| CITY OF BRIDGEPORT; ET AL.<br>**Defendants** | : | DECEMBER 3, 2003 |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO MOTION TO QUASH DEFENDANTS'
SUBPOENA DUCES TECUM TO NONPARTY DONALD DAY**

The Plaintiffs filed a Motion to Quash directed at only limited material sought by the defense in their subpoena duces tecum[1] accompanying their Notice of Deposition of Donald Day. The gravamen of Plaintiffs' Motion is protection of the work product privilege of their counsel. The Plaintiff also requested limiting instructions as to the oral examination of Mr. Day.

In their Opposition, the defendants reveal their motives for deposing Day this late in the process, when Day, a retired Fire Department officer, has always been known to the defense, and his alleged sexist comment was in fact the subject of a lengthy internal investigation and State Labor Relations Board grievance hearing, with a public record containing his sworn testimony

---

[1] Defendants' Notice of Deposition for Day dated October 15, 2003 (Exh. A of Plaintiffs' Motion to Quash) includes a subpoena duces tecum commanding Day to produce "[a]ll documents, correspondence, memoranda, notes, audio, he has furnished to and received from the undersigned plaintiffs' counsel.

admitting making the comment, all of which was disclosed to the Plaintiffs by the defendants in discovery in the instant action.

The defendants reveal in their Opposition Memorandum that they are, in fact, seeking privileged work product, to wit, all materials and conversations between Plaintiffs' counsel and witness in Donald Day, and that their reason for wanting this information is completely unfounded conjecture that the Plaintiffs and their counsel may have entered into a so-called "Mary Carter agreement" with Mr. Day, i.e., some sort of pecuniary arrangement with Mr. Day.

<u>Plaintiffs and their counsel represent without reservation or qualification that they have made no such agreement or promise of any release or money or pecuniary benefit to Mr. Day, or even discussed or contemplated making one.</u>

The defendants proffer nothing beyond "reasonable imagination" to prove the existence of a "Mary Carter" agreement, and even say so. Df Opp Memo, pp. 8-9. This is an outrageous violation of Rule 11's good faith pleading requirements. So is the fact that the essential ingredient of a "Mary Carter" agreement, that Mr. Day is a party defendant in this lawsuit, is lacking.

To wit, despite the Court's order granting the Plaintiffs' request for *permission* to join Day as a party defendant, it is axiomatic that Day does not become a party until he is served process, for two reasons – the constitutional requirement of Due Process, and the Court's lack of personal jurisdiction over him until he is properly served. See, e.g., <u>Gaynor V. Martin</u>, 77 F. Supp.3d 272 (D. Conn. 1999) (no personal jurisdiction where no service of process accomplished). While federal lawsuits are initiated by the filing of a complaint under Rule 3 and 4m, a person is not a

party until the Court obtains jurisdiction over him or her, either by a voluntary submission to jurisdiction or service with process. Certainly, if defense counsel were representing Mr. Day in this action (which defense counsel John Mitola and Robert Mitchell have represented to Plaintiff's counsel that the City has refused to do), he would be arguing that Day is not a defendant because he was never served.

In fact, the only reason the defendants are now for the first time asserting the legal fiction that Mr. Day is a defendant is to be able to make the claim about a possible "Mary Carter" agreement as justification for breaching privileges, in an attempt to trump up an appearance of "criminal or fraudulent activity" that would justify breaching the privilege, which the Plaintiffs discuss at page 5 of their Motion to Quash.[2]

However, the defendants admit that "Mary Carter" agreements are not a crime in Connecticut. Opp. Memo., p. 8. The only other exception or privilege waiver argument they have is for fraud, which they cannot show either. The best they can do is raise the propriety, the "distastefulness" (Opp. Memo p. 8) of the Plaintiffs' declining to sue Donald Day.

The Plaintiffs do not have to articulate a reason for deciding not to sue someone; that is their choice as litigants, plain and simple – they decide who they want to sue and what claims they want to pursue, and the Plaintiffs can hardly be faulted for narrowing their defendants and claims! There are, in fact, cogent reasons for their decision not to sue Mr. Day, which are a

---

[2] Citing Richard Roe, Inc., v. Richard Roe, Inc., 68 F.3d 38, 39 (2d Cir. 1995) ("Roe I"); In re Richard Roe, Inc. ("Roe II"), ___ F.2d ___ (2d Cir. 1999) (reversing, finding no crime-fraud exception justifying

matter of attorney-client and work-product privilege, but essentially, the situation is this -- after the Plaintiffs obtained permission from the Court to add Day as a defendant, evidence developed in the case, and the nature of the defense became known, which convinced the Plaintiffs not to sue him, so they simply declined to serve him process and took no action against him. This has been known to the defense since at least June 10, 2003,[3] when in a settlement conference, P.J.O. Murphy inquired about Day's status, and Plaintiffs' counsel said he was not a party because he was never served. Defense counsel raised no concerns at that time, or in any of the discovery conferences[4] where this was mentioned.

In an attempt to resolve this matter, on December 1, 2003, in the presence of a court reporter, the undersigned Plaintiffs' counsel informed defense counsel Robert Mitchell, Esq., of the benign motive in not suing Mr. Day, and the fact that there has been no release or benefit given or promised to Mr. Day, or even contemplated, and that the undersigned counsel is willing to take the oath on that. Plaintiffs' counsel asked Attorney Mitchell to withdraw his clients' misleading, spurious and defamatory accusations about a "Mary Carter" agreement from his Opposition Memorandum. Mitchell flatly refused, stating his belief that this is not defamatory

---

breach of the privilege); United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989) (Ruth Bader Ginsburg, J.).

[3] And is a matter of the court file in this action, no return of service ever having been filed for Donald Day.

[4] Plaintiff' counsel is not sure and does not want to misrepresent the record, but to the best of her recollection, the fact that Day was not a defendant because he was never served was mentioned on the record at the July 5, 2003 discovery conference, and in at least one other of the series of conference in chambers thereafter.

4

because he believes that Plaintiffs' counsel "is capable of doing it," (i.e., entering into such an unsavory arrangement). Mitchell offered no facts, evidence, or any good faith basis for his purported belief that Plaintiffs' counsel "is capable of" making a "Mary Carter" agreement.

Whatever Mitchell's personal opinion of Plaintiffs' counsel, first, any such arrangement would have to be sanctioned by the clients, of whose actions he can say nothing in reproach, and secondly, his personal opinions about counsel are not "good cause" for breaching privilege.

Moreover, even if there were a "Mary Carter" agreement, what does it matter in this case? To wit, assuming purely *arguendo*, that Day ultimately provides an affidavit on summary judgment, or testifies at trial in this matter that the plaintiffs gave him a release or money in exchange for his testimony, if his testimony is truthful, what different effect is there on the defendants from the same truthful testimony having been freely given? Moreover, the much if not all of the testimony Day is expected to give is about the allegations that he made a sexist comment about women firefighters, and Day admitted that he made the exact comment under oath on the public record in his Labor Relations grievance hearing, which was disclosed by the defendants in the discovery in the instant action.

As to the defendants' assertion in footnote 1 of their Opposition Memorandum that "it can be said that without such allegations [as to Donald Day's sexist conduct] Plaintiffs' entire case would have been dismissed previously." This is a blatant misrepresentation -- there is <u>nothing</u> in the CCHRO, EEOC or Court record indicating that, and the Plaintiffs allege far more than just Donald Day's conduct, including disparate treatment in uniforms, quartering, assignments,

5

hiring, training, advancement, and sexual harassment by dozens of members of the Fire Department, including sexual pinup pictures, sexist comments on a website used by the employees to discuss the job and accessed on City computers, etc.

Thus, the defendants fail to show the "substantial need" and inability to reasonably obtain the information elsewhere to breach the work product privilege of Plaintiffs' counsel.

More troubling, defense counsel raises in footnote 2 of their Opposition Memorandum, and Attorney Mitchell indicated in the December 1st conversation, that they are representing to the Court that they need to inquire into a "Mary Carter" agreement as justification for subpoenaing any materials that may have been exchanged between Day and Plaintiffs' counsel, in order to discover what defense counsel believes is an "inappropriate relationship" between Plaintiffs' counsel and the two firefighters' fraternal organizations, the Firebird Society of Bridgeport, Inc., and Bridgeport Hispanic Firefighters Association that retained Plaintiffs' counsel to seek a limited intervention in this case to oppose a protective order sought by the defendants.

Attorney Mitchell asserted that Plaintiffs' counsel has an impermissible conflict of interest in representing the Firebird Society for the following reasons: (a) Mr. Day is a defendant in this action; (b) Day is "identified as a wrongdoer" by the Plaintiffs in this lawsuit; (c) Day is listed on the Firebird Society's internet website as its Vice President, and (d) inquiry into these attorney-client relationships is justified by the Plaintiffs' representations in various pleadings[5] in the instant

---

[5] See, e.g., "Plaintiffs' Memorandum in Support of: Opposition to Motion for Protective Order dated August 27, 2003, and Opposition to Motion for Protective Order and Objection to Disclosure dated September 4, 2003."

action that substantially all the White male officers of the Bridgeport Fire Department belong to an unrelated organization, the Bridgeport Firefighters for Merit Employment, Inc. ("BFME"), a organization which the Second Circuit found is "a nonprofit organization representing nonminority firefighters within the Bridgeport Fire Department"; that BFME opposed the remedy ordered by the U.S. District Court for Connecticut (Daly, U.S.D.J.) "principally on grounds that [it] would increase the number of minority candidates hired by the City," and deemed "all of BFME's attacks on that order ... entirely meritless." Assoc. Against Discrimination in Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 98 (2d Cir. 1983).

In fact, as Plaintiff's counsel expressly informed Attorney Mitchell in their December 1st conversation, Mr. Day is not a defendant in this action; Mr. Day ceased being an officer of the Firebird Society since before Plaintiffs' counsel undertook representation of the organization[6]; it matters not that Mr. Day was or is a "member" of the Firebird Society, as counsel represents the corporation Firebird Society; and even if Day is a defendant or an alleged wrongdoer, it matters not, because he is not alleged to have acted as a representative or agent of the Firebird Society -- the allegations are that Day made the comments and committed any other discriminatory acts on duty as an officer of the Bridgeport Fire Department. See Schiller's Amended Complaint, ¶¶ 54 and 76, and Georgia's Schiller's Amended Complaint, ¶¶ 62 through 73.

---

[6] Plaintiffs' counsel has since been informed by the current President of the Firebird Society that Donald Day ceased being Vice President some three years ago, albeit that the website is not updated.

Attorney Mitchell did not articulate his rationale set forth on page 9 of the Opposition Memorandum, for wanting to examine and obtain documents from Donald Day to inquire into the undersigned counsel's attorney-client relationship with the independent Bridgeport Hispanic Firefighters Association, which Donald Day has never been a member or officer of.

It is unclear how Plaintiffs' representations in prior pleadings as to BFME's discriminatory agenda influencing decision-making and operations in the Fire Department in any way justifies inquiry by the City's and Fire Chief's counsel into the attorney-client relationship between Plaintiffs' counsel and the Firebird Society and the Hispanic Firefighters Association. The "good cause" requirement of F.R.C.P 26(b) requires that the matter sought to be discovered is "relevant." The defendants make no showing of what relevance those other attorney-client relationships have to the claims and defenses in this lawsuit.

However, like any pretext, its irrationality and lack of factual support are sufficient to raise a reasonable inference of discriminatory animus and retaliation. To wit, Donald Day, a Black man, was one of the original plaintiffs in the series of lawsuits in this Court in the 1970's and 1980's in which this Court (Daly, U.S.D.J.) found that the City committed racial discrimination in hiring and promotions and ordered persons of color, including Mr. Day, to be hired and advanced.[7] So, too, were all the founding members of the Firebird Society, including a

---

[7] Bridgeport Firebird Society v. City of Bridgeport, 88CV146 (Daly, U.S.D.J.) (ordering consent decree); Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 83CV7042 (Daly, U.S.D.J.) (order modifying prior order remedying race discrimination in hiring), aff'd, 710 F.2d 69 (2d Cir. 1983); Association Against Discrimination in Employment, Inc., et al., v. Panuzio, et al., nos. 79CV7650, 79CV7652, 79CV7709 (Daly, U.S.D.J.), rehearing and rehearing en banc denied, 647 F.2d 256 (2d Cir. 1981); Association Against Discrimination in Employment, Inc., et al. v. City of Bridgeport,

number of its present officers and members. The Firebird Society is entitled to protection under the Constitution and Title VII for speech and activities in opposition to unlawful discrimination, and in support of the Plaintiffs' efforts to protect their civil rights through this lawsuit. The undersigned counsel does not represent Mr. Day, but in the interest of justice asks the Court to take note of his right to be free of harassment and retaliation for protected speech and activities.

The burden is on the defendants to make the requisite showing of relevance and "substantial need" and unavailability by other means of materials sought by their subpoena duces tecum. There is no waiver, criminal or fraudulent activity alleged or supported by any evidence. If the defendants' reason for seeking work product is a belief that Donald Day is a witness and the work product contains relevant substantive facts, Mr. Day's availability to the defendants for deposition on relevant substantive facts obviates the need to violate the privilege. See In re Grand Jury Proceedings, 473 F.2d 840, 849 (8th Cir. 1973). If the defendants and their counsel indeed have serious ethical concerns about the conduct of Plaintiffs' counsel, they may bring those concerns to the Statewide Grievance Committee for the Connecticut Bar.[8]

The defendants' representations in their Opposition Memorandum of a "Mary Carter" agreement violate the good faith requirements of F.R.C.P. Rule 11(b), to wit, there is sufficient cause to find that the representations made by defense counsel in are "presented for [an]

---

et al., nos. 78CV7400, 78CV7406, 78CV7431 (Daly, U.S.D.J.), vacated and remanded, 594 F.2d 306 (2d Cir. 1979); Association Against Discrimination in Employment, Inc., et al., v. Weeks, et al., no. 75CV268 (Daly, U.S.D.J.), see 454 F. Supp. 751 (D. Conn. 1978), 454 F. Supp. 758 (D. Conn. 1978), 479 F. Supp. 101 (D. Conn. 1978) (judgment for plaintiffs; Bridgeport Fire Department's entry level firefighter examination violated Title VII, and that all hiring over prior decade was discriminatory).

improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," in violation of Rule 11(b)(1); that the legal contentions therein are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, in violation of Rule 11(b)(2); that their factual contentions lack evidentiary support" and are not "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," in violation of Rule 11(b)(3).

In sum, the irrational and admittedly unsupported misrepresentations to this Court by the defendants and their counsel violate the good faith pleading requirement of Rule 11, and support a reasonable inference of discriminatory animus and acts in furtherance of retaliation prohibited by Title VII and the Connecticut Fair Employment Practices Act. It is inappropriate for the defendants and their counsel to use the discovery process in this action to pursue a witch hunt against Plaintiffs and their counsel in retaliation for their activities in protection of their, and in the case of counsel, protection of others' civil rights. Plaintiffs and their counsel appeal to the Court to issue orders to protect them in their protected activity of pursuing the instant action seeking redress for violations of their civil rights.

---

[8] Moreover, any conflict of interest in Plaintiffs' counsel also representing the Firebirds and the Hispanic Firefighters is the concern of those clients, not the defendants.

**FOR THE PLAINTIFFS,**

Dated_____

_____
Susan V. Wallace
~ *Attorney at Law* ~
11 Blue Orchard Drive
Middletown, CT 06457
Tel: (860) 704-0472 | Fax: -0490
law4us@rcn.com
Fed Bar No. CT08134

FOR THE PLAINTIFFS,

Dated 12/3/03

*(signature)*
Susan V. Wallace
~ *Attorney at Law* ~
11 Blue Orchard Drive
Middletown, CT 06457
Tel: (860) 704-0472 Fax: -0490
law4us@rcn.com
Fed Bar No. CT08134

11

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing "Plaintiffs' Reply to Defendants' Opposition to Motion to Quash Defendants' Subpoena Duces Tecum to Donald Day" has been served upon:

Robert B. Mitchell, Esq.
Margaret M. Sheahan, Esq.
Thomas F. Maxwell, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

John Mitola, Esq.
John Bohannon, Jr., Esq.
Office of the City Attorney
City Hall Annex
999 Broad Street
Bridgeport, CT 06604

Richard L. Albrecht, Esq.
Cohen & Wolf, P.C.
115 Broad Street
P.O. Box 1821
Bridgeport, CT 06601-1821

on this 3rd day of December, 2003, via:

   ✓   Regular U.S. Mail, first class, postage prepaid

   ___   U.S. Priority Mail

   ___   U.S. Express Mail or other overnight mail service

   ___   Facsimile

   ___   Hand-delivery

*/s/ Susan V. Wallace*
Susan V. Wallace, Esq.