UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH SCHILLER<br>Plaintiff | : | NO: 3:01cv00452(AVC)<br>(ALL CASES) |
| | : | |
| JOHANNA S. GEORGIA<br>Plaintiff | : | |
| v. | : | |
| CITY OF BRIDGEPORT; ET AL.<br>Defendants | : | JANUARY 8, 2004 |

### PLAINTIFFS' MOTION FOR ORDERS, FEES AND COSTS
### RE: BRIDGEPORT FIREFIGHTERS ASSOCIATION/LOCAL 834

1. Plaintiffs served a subpoena duces tecum for April 21, 2003, upon nonparty Roger Kergaravat, President, Bridgeport Firefighters Association, Local 834. Kergaravat/Local 834 refused to comply with the subpoena, filed a Motion to Quash (no. 60), and the Plaintiffs filed a Motion for Contempt and Sanctions (no. 57).

2. On July 2, 2003, a discovery conference having been held, the Court (Covello, U.S.D.J.) denied Local 834's Motion to Quash, ordered an *in camera* review of its documents sought by the subpoena duces tecum, and on August 21, 2003, ordered (no. 89) the Local 834 to produce specifically listed documents to the Plaintiffs on or before September 5, 2003.

3. After receiving no documents or communication from Local 834, on September 2, 2003, Plaintiffs' counsel faxed a letter to its counsel of record Richard Albrecht asking when the

union's documents would be produced as per the Court's order. Albrecht never responded or produced anything in compliance with the order.

4. On September 5, 2003, on the deadline for producing the documents, Local 834 filed a Motion for Protective Order (no. 94) for its documents, without producing anything. Together with the defendants, the union sought and obtained (in a chambers discovery conference) a stay of its compliance pending disposition of its Motion.

5. On October 31, 2003, the Court granted Local 834 a protective order, ending the stay on compliance.

6. Plaintiffs received no documents, and no communication from Local 834 until a faxed letter on November 10, 2003 (Exh. A, appended hereto), directing that the documents could be "inspected" in Attorney Albrecht's office at a mutually convenient time. The letter did not offer any times convenient to Attorney Albrecht.

7. By letter faxed to Albrecht on November 13, 2003 (Exh. B), Plaintiffs' counsel informed him that inspection in his office was not acceptable for the following reasons:

    a. Mere inspection is not enough and not what was ordered. Plaintiffs sought, were granted, need, and are entitled by F.R.C.P. Rule 45 to obtain copies for use in this lawsuit;

    b. The subpoena directed that these documents be produced at the union office at 30 Congress Street, consistent with F.R.C.P. Rule 45(d)(1);

    c. At the July 2, 2003 discovery conference, the Court directed Albrecht to return all union documents in question to the union office, Albrecht expressly agreed to

do so, and, to the best of counsel's recollection, represented at the September discovery conference that it had already been done;

    d. Plaintiff's counsel is unwilling to submit herself and her clients (who also have the right to be present at the execution of their subpoena, but were not invited to Albrecht's office to do so) to a repeat of his misconduct toward her the last time she went to his office at his direction upon his express promise that the documents would be produced, to wit, Albrecht's yelling demeaning and sexist comments, berating Plaintiffs' counsel as he reneged on his promise made minutes before, which misconduct the Plaintiffs have previously complained to this Court about.

8. In the November 13th letter, Plaintiffs' counsel offered a compromise, to pay the prevailing state agency rate for copies made by Albrecht's office. Counsel offered this, as she expressly stated in her November 13th letter, under the impression that the documents "are not voluminous", to wit, in prior discovery discussions, the Court described the documents it ordered produced as only around one hundred pages, so the cost and ease of copying were projected to be modest.

9. On November 18, 2003, Attorney Albrecht faxed a letter (Exh. C) to Plaintiff's counsel stating that his office would send the documents to a print shop of his own selection in Bridgeport "Upon notification to this office that you have made arrangements with them for direct payment of the cost thereof," and that Plaintiff's counsel "may make arrangements to pick up [plaintiffs'] copy with that facility."

3

10. Attorney Albrecht never told Plaintiff's counsel how many documents he would be delivering or the printer. He never corrected her expressed belief that the documents "are not voluminous."

11. On November 25, 2003, still believing the documents were not voluminous, Plaintiff's informed Attorney Albrecht (Exh. D) that a printer was acceptable, but that her clients needed an estimate of cost, which the printer he designated could not do without a page count and without the documents unstapled or unbound, both for a cost estimate, but also for a quote on completion time. The printer charges substantial extra per page costs plus a labor charge for having to unstaple any documents, the rate also determined by page count.

12. Receiving no response from Attorney Albrecht, on November 26, 2003, Plaintiff's counsel approached him when they were appearing on another matter in the Superior Court in Bridgeport, and repeated the substance of her correspondence as to the printer's requirements. Attorney Albrecht represented that he would speak to his paralegal about it and get it done right away. Albrecht made no objection to meeting the requirements of the printer that he selected.

13. Receiving no response from Attorney Albrecht, on December 1, 2003, Plaintiff's counsel faxed a letter to him (Exh. E) following up on her contacts with him on November 25th and November 26th.

14. Receiving no response from Attorney Albrecht, on December 4, 2003, Plaintiff's counsel faxed a letter to him (Exh. F) asking for a response to her letters of November 25th and December 1st, noting that the printer had notified her just before 5:00 p.m. that day that Albrecht's office had dropped off a huge number of documents, estimated to <u>be one thousand or</u>

4

more, but not counted, un-indexed, still stapled and bound. The printer (Reprographics) would not start the job without hearing from Attorney Albrecht's office as to preparation of the documents so that it could quote cost and completion time and obtain a payment agreement.

15. Attorney Albrecht acted contrary to his representations to counsel in his November 18th letter and to their agreement, to wit, Albrecht proceeded to deliver the documents to the printer before Plaintiff's counsel could make payment arrangements with the printer or notify him that this had been accomplished, and despite her several notifications to Albrecht that she could not make payment arrangements (or determine if the Plaintiffs even wanted to or could afford to expend monies on this printer's services) until he gave the printer a page count and prepared the documents for printing.

16. Receiving no response from Attorney Albrecht, on December 10, 2003, Plaintiff's counsel faxed a letter to him (Exh. G) asking for a response to her letter of December 4th.

17. On December 11, 2003, at 3:00 p.m., Attorney Albrecht faxed a letter to Plaintiff's counsel (Exh. H) stating that he "did not get" the December 4th letter (but see, proof of fax transmission of December 4th, Exh. F), and stating that the printer "picked up a small box and binder of documents which are original documents which I have no intention of altering. May I suggest that you go to their offices, select the documents you need to have copied and have them copied and return the documents to this office."

18. No one asked Attorney Albrecht to "alter" documents, and his response failed to address how many pages there were, or whether all the voluminous documents sent to the printer were those the Court ordered to be produced.

19. At 1:46 p.m. on December 12, 2003, Plaintiff's counsel faxed a letter to Attorney Albrecht referring again to the requirements for the printer. Exh. I.

20. At 5:01 p.m., on December 12, 2003, Attorney Albrecht's paralegal faxed a letter (Exh. J), signed by her, to Plaintiff's counsel stating only that "The documents you requested to be photocopied were delivered to Reprographics at the beginning of the week. Reprographics is waiting for your copying instructions for the documents that they are holding. If arrangements are not made by Wednesday, December 17, 2003, they will return the documents to our office." Plaintiff's counsel immediately faxed the letter back, with a notation asking if Attorney Albrecht had seen her earlier fax that day. Exh. J. Plaintiffs' counsel received no response.

21. The Plaintiffs could not do what Albrecht was now asking, for the following reasons:

    a. The subpoena duces tecum called for production of the documents at the union office, where the Plaintiffs could make the copies themselves with their own portable copiers at considerably less cost than using a commercial service;

    b. At a discovery conference on July 2, 2003, and to the best of counsel's recollection on or about September 10, 2003, Attorney Albrecht assured the Court and counsel that all the documents subject to the subpoena would, then had been, <u>returned</u> from Attorney Albrecht's office (where the Plaintiffs contend there was no legal right to have removed union records upon service of the subpoena or at any time since), <u>to the union office</u>. The reason for this so that the Court could conduct its *in camera* inspection on site, of the documents as they may be inspected, i.e., as kept in the ordinary course of business. See Fed. R. Civ. Pro. 45(d)(1). The Court did just that, and indexed the relevant

documents for disclosure by location in the union office. With no other referent list provided to the Plaintiffs, and the documents removed from the indexed locations and sent to the printer placed un-indexed and un-segregated in a box, the Plaintiffs, and possibly the Court, cannot determine if there is complete compliance;

    c.  Given that the Court indicated at the September discovery conference that there were not anywhere near the number of documents to be disclosed as the printer indicated were delivered to it – to the best of Plaintiffs' counsel's recollection, the Court opined 100 pages, while the printer indicated, in repeated conversations, one thousand or more – Attorney Albrecht seeks to burden the Plaintiffs with incurring the cost of their counsel traveling to Bridgeport to search for a needle in a haystack, without knowing what documents the Court actually ordered produced, and already determined to be relevant. If this is done, Plaintiffs will have to return to the Court to file a request to verify the documents against the Court's list or have some other determination as to relevancy and compliance;

    d.  Albrecht made no prior arrangements for any inspection at the printer, which has no facility, or obligation, to allow the Plaintiffs and their counsel to use its premises to inspect thousands of documents -- indeed, as Albrecht correctly states in his letter to the Court dated December 23, 2003, this printer hasn't room or responsibility for the documents. If any documents went missing after an off-site inspection in an unsecured location by Plaintiffs and their counsel, there could be some serious evidentiary and other

legal issues. This all the more curious after the lengths to which Local 834 went to obtain a protective order;

    e. The Plaintiffs, firefighters of modest means, have expended and incurred great sums trying to obtain compliance with discovery orders in this case, including from their own union, Local 834, and should not bear to bear the burden created solely by Attorney Albrecht's conduct, of their counsel traveling from Middletown to a printer in Bridgeport to sift through these documents and prepare them for printing, or agree to incur a substantial undeterminable cost to a printer selected by Albrecht for what may be irrelevant documents mixed in, especially when they could accomplish the copying for far less themselves at their own union's office, using their own personal equipment, at no cost to the union.

22. On 4:43 p.m. on December 18, 2003, Attorney Albrecht faxed Plaintiff's counsel a letter (Exh. K) advising that the documents were "back in his office." This violates the Court's order of July 2, 2003, what the subpoena called for, and F.R.C.P. 45(d)(1). Albrecht also advised that he would be keeping the documents in his office "until the end of the year at which point in time they will be returned to my client and I will assume that you waived inspection." Exh. K.

23. The Plaintiffs have never agreed or acted to waive inspection and Attorney Albrecht and his client cannot unilaterally achieve that in the face of a court order for compliance with a subpoena duces tecum.

24. On December 19, 2003, the Plaintiff wrote to the Court requesting a discovery conference "on the issues of the defendants' and the unions' production compliance." Exh. L.

8

25. On December 23, 2003 (Exh. M hereto), Attorney Albrecht wrote to the Court attaching his letter of December 18th, each containing misleading statements and omissions, to wit:

    a. Albrecht did not deliver the documents "to a third party professional copier service for inspection and copying *as Attorney Wallace saw fit*." In fact, this was not what Plaintiff's counsel "saw fit"; she requested that the documents be inspected where they were represented to the Court to be, and where the Court indexed them -- in the union office. Atorney Albrecht omits her letter of November 13, 2003 (Exh. B) stating that, and detailing why she made the offer to pay *the prevailing state agency rate* for copies -- as an alternative to Albrecht's demand that she merely inspect them in his law office, and expressing her belief that there were not many pages. It was Albrecht who demanded an outside printer and who chose the printer, knowing how voluminous the documents he was sending to the printer were;

    b. Albrecht made no prior arrangements for any inspection at the printer, which has no facility, or obligation, to allow the Plaintiffs and their counsel to use its premises to inspect thousands of documents -- indeed, as Albrecht correctly states in his 12/23/03 letter to the Court, this printer hasn't room or responsibility for the documents; and

    c. Albrecht's letter of 12/18/03 to Plaintiffs' counsel states that "By letter dated November 25, 2003, you advised that I should furnish the copier with a page count and remove all staples and clips from the documents. I did not agree to do that." The accurate facts of what transpired have been set forth above, to wit, that this was the printer's

9

requirement and that Plaintiff's counsel so informed Albrecht of the document preparations needed on 11/10/03, 11/25/03 and 11/26/03, and at no time did he object in any way to making these reasonable efforts to facilitate the services of the printer, *that he designated,* until 12/11/03 and 12/12/03, which was four weeks after Plaintiff's counsel first so informed him, and six weeks after the court's disposition of the discovery stay.

26. Despite his protestations of compliance and accusations of unreasonable demands by Plaintiff's counsel, Attorney Albrecht clearly has done everything he could to impede and prevent the Plaintiffs from getting his client's documents. All delays have been occasioned by Local 834's counsel, not by the Plaintiffs or their counsel.

27. The facts are that the Plaintiffs served a subpoena in good faith based on statements by the union's president that there were relevant documents; the Court has found relevant materials; the Plaintiffs have diligently waded through several Motions, Oppositions, conferences, at great cost since April 2003 to get these documents, yet nine months later, they still don't have them, and are here with yet another Motion and discovery conference.

28. As a result of this continuing noncompliance and abusive tactics by Bridgeport Firefighters Association/Local 834, committed with knowledge that the deadline for depositions using these documents of City officials was approaching (January 15, 2004), the Plaintiffs have suffered the following:

    a. They have been deprived of evidence found by this Court to be relevant, have not had them for depositions or in time to seek production from the party defendants and

witnesses of further materials the documents may indicate exists, or to verify the completeness and accuracy of the defendants' disclosures -- the very reasons that the union records were subpoenaed; and

      b. They have incurred attorney's fees and expended costs to bring this Motion, and another Motion (no. 143) requesting amendment of the discovery closing date.

29. F.R.C.P. 45(e) provides for a finding of contempt for "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person ..." There is no adequate excuse for the failure here to not only obey the original subpoena, but also to fail to comply with two Court orders for compliance, with the assurance of a protective order.

30. The Plaintiffs are agreeable to having the exact documents listed in this Court's Order no. 89 of August 21, 2003, indexed as per the index in the Order, copied by Local 834 at no cost to the Plaintiffs, or, to inspect <u>and copy</u> the documents in the union office, in the locations per the Court's index in Order no. 89.

**WHEREFORE,** the Plaintiffs seek the following orders:

1) That Bridgeport Firefighters Association/Local 834 produce to the Plaintiffs the exact documents indexed as indexed in this Court's Order no. 89 of August 21, 2003, without cost to the Plaintiffs, by no later than three business days after the date of this Order, or make the documents available for Plaintiffs to inspect and copy in the union office at 30 Congress Street, Bridgeport, in the documents' respective locations as indicated in the Order no. 89;

2) A finding of contempt against Bridgeport Firefighters Association/Local 834 and its counsel;

3) That Bridgeport Firefighters Association/Local 834 shall pay to the Plaintiffs their reasonable attorney's fees and costs for having to bring this Motion and Motion no. 143.

**FOR THE PLAINTIFFS,**

Dated 1/8/04

Susan V. Wallace
~ *Attorney at Law* ~
11 Blue Orchard Drive
Middletown, CT 06457
Tel: (860) 704-0472  Fax: -0490
law4us@rcn.com
Fed Bar No. CT08134

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing "" Plaintiffs' Motion For Orders, Fees and Costs Re: Bridgeport Firefighters Association/Local 834" has been served upon:

Robert B. Mitchell, Esq.
Margaret M. Sheahan, Esq.
Thomas F. Maxwell, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

John Mitola, Esq.
John Bohannon, Jr., Esq.
Office of the City Attorney
City Hall Annex
999 Broad Street
Bridgeport, CT 06604

Richard Albrecht, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604

on this _8th_ day of January, 2004, via

    _X_ Regular U.S. Mail, first class, postage prepaid

    ____ U.S. Priority Mail

    ____ U.S. Express Mail or other overnight mail service

    ____ Facsimile

    _X_ Email

    ____ Hand-delivery

/s/ Wallace
Susan V. Wallace, Esq.