FILED

2004 FEB 10 P 1:49

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH SCHILLER<br>Plaintiff | : | NO: 3:01cv00452(AVC)<br>(ALL CASES) |
| | : | |
| JOHANNA S. GEORGIA<br>Plaintiff | : | |
| | : | |
| v. | : | |
| | | |
| CITY OF BRIDGEPORT; ET AL.<br>Defendants | : | FEBRUARY 9, 2004 |

PLAINTIFFS' MOTIONS FOR AMENDMENT OF
DISCOVERY CLOSING DATE AND PRETRIAL ORDERS
AND FOR ORDERS RE: DEPOSITIONS

1. The present discovery closing date is February 13, 2004.

2. At present, the poor weather, the Court's schedule, availability of the court reporter, of a room in the courthouse, of counsel, and of the nine Rule 30(b)(6) representatives, and the several depositions scheduled by the defense during the most recent extended discovery period (which was extended upon Motion of the Plaintiffs to be able to take the City's deposition) has made it impossible to complete the City's deposition within the current discovery closing date.

3. The most recent deposition session with some of the City's representatives was scheduled for February 5th, but was postponed due to weather. Counsel tried until the afternoon of Friday, February 6th to find dates to complete the deposition of the City by the present

discovery closing date, but have been unable to accomplish it. To wit, Plaintiff's counsel is not available February 9th, the court reporter is not available the 10th and 11th, and the Court has no room available on the 13th. Defense counsel Robert Mitchell and Margaret Sheahan represent that they are not available on the 11th and 12th and that most of the City's 30(b)(6) representatives not yet deposed (all but one being City employees) are not available before discovery closes on February 13, 2004, or their availability is unknown. Exh. A appended hereto (Attorney Sheahan's email dated 2/5/04).

4.  The Plaintiffs have made diligent efforts to depose the City, as follows:

a)  Plaintiffs first noticed the City's deposition, after discussion with defense counsel, on March 31, 2003, for a date of April 15, 2003. On the afternoon of April 15, defense counsel informed Plaintiffs' counsel that the City would not be appearing for its deposition because it had not yet designated its 30(b)(6) representatives;

b)  The defendants made little discovery compliance, despite having made no objections to the requests, until the Court ordered compliance after a hearing on July 2, 2003. Since then, as detailed in numerous Motions and discovery conferences seeking compliance, the defense has continued to engage in protracted delay, late, "needle in a haystack," piecemeal disclosures of un-indexed, unorganized boxes of hundreds/thousands of documents," and continuing failure to provide specific documents identified by the Plaintiffs, all of which has delayed the Plaintiffs from being able to complete its deposition of the City;

c)  In September, over Plaintiffs' objections, the defense obtained a stay of all discovery and depositions for two of the past six months while it pursued a frivolous protective or "gag"

order on all discovery, even public records (denied on grounds that the defendants had failed to make any showing of need therefor), further delaying the City's deposition;

d) Since March 2003, defense counsel have refused to state -- first, how many representatives they designated and their identities, then, what subjects each would testify to, until approximately 5 p.m. the evening before the Court-ordered start of the City's deposition on January 16, 2004, leaving Plaintiffs' counsel virtually no time to adequately prepare;

e) The Plaintiffs have to date deposed the City a total of 8 hours and 8 minutes.[1] However, a substantial portion of that time was expended by defense counsel with argumentative and suggestive "objections," instructions not to answer, and two terminations of the deposition by the City's counsel, all in violation of Rule 30(d)(1), to wit:

(i) On May 29, 2003, on less than a day's notice to Plaintiff's counsel, the City produced its attorney John Mitola as its designated representative to commence its deposition. At that time, the City refused to provide a breakdown or description of what matters each of its representatives would testify to, or to have all the representatives present at one time, or to name them in advance. Plaintiffs' counsel could only guess as to what matters Mitola was designated to testify about. In 24 minutes of deposition, Attorney Mitola and defense counsel Margaret Sheahan engaged in extended argument and colloquy about the City's refusal to disclose what subjects Mitola would testify about (Exh. B, Transcript of 5/29/03, 5:17-25 through page 13) and suggestive "objections" and

---

[1] 24 minutes on May 29, 2003; 3 hours, 45 minutes on January 16, 2004; 3 hours, 59 minutes on January 30, 2004.

interruptions (Exh. B, 20:8-25, 21:1-3, 23:1-5, 23:12-25, 24:1-4). After a total of 24 minutes and two inappropriate tirades at Plaintiff's counsel (Exh. B, 14:17-25, 15:1, 24:5-10), defense counsel terminated the deposition, without grounds therefor. Exh. B, 24:5-19. Plaintiff had to seek an Order compelling the City to reconvene (Plaintiffs' Motion dated May 21, 2003);

(ii)    After a year trying to obtain simple discovery compliance from the City, and a two-month stay of all discovery which the defense obtained over Plaintiffs' objection, and the sixth (?) discovery conference over the defendants' noncompliance, the Court directed the City to appear for its deposition on January 16, 2004, only to have defense counsel once again expended deposition time and costs with colloquy and instructions to the deponent not to answer 12 questions (Exh. C, Transcript of 1/16/04 and 1/30/04, pp. 41 through 52:1-5) -- most or all on grounds of form, which the Court has heard and ordered 8 out of the 12 to be answered. The Plaintiffs were able to ask their questions, but at a price of a repetitive expenditure of time and cost. Defense counsel expended more time with suggestive "objections" ("answer if you can," see, e.g., Exh. C, 177:9-11, 177:17-19, 189:11-14, 202:10-13, 203:1-3, 205:22-24, 228:24-25, 234:18-19, 246:18-19, 277:22-25), insisting that the deponent be shown his own prior testimony when being examined, directing the deponent to what he needs to review to formulate his answer and contradicting instructions by examining counsel as to what portion of the prior testimony the current testimony was sought on (Exh. C, 277:12-23, 278:1-4, 278:9-12), and providing answers (Exh. C, 235:13-14, 277:12-19, 323:21-25, 324:1-3, 235:12-

23, 253:2-3). Defense counsel Robert Mitchell repeatedly "objected" or declared that the deponent was not testifying on behalf of the City for certain questions, becoming increasingly interruptive until he worked himself into a rage and terminated the deposition. Exh. C, 262:8-9, 262:21-22, 263:22-25, 264:1-6, 265:13-23, 266:18-25, 267:1-25, 268:1-25), only to resume the deposition with the same "objection" that at times the deponent was not testifying for the City. Exh. C, 231:23-25, 232:1-25, 233:1-25; 254:1-4. If this is so, then the Plaintiffs would be owed deposition time with the City for the time that various deponents proffered as the City's 30(b)(6) representatives are not in fact testifying as such.

(iii)   Attorney Mitchell's bullying (Exh. C, 48 through 52:1-4), uncontrolled temper tantrums, and vicious *ad hominum* attacks upon Plaintiffs' counsel (Exh. C, 49:14-17, 51:11-13, 263:7-10, 267:1-25, 268:1-25, 277:12-19, 277:22-25, 278:1-4, 232:25, 233:1)[2] are a completely unjustifiable abuse, they are in no way justified by any conduct

---

[2] In this one deposition alone, Attorney Robert Mitchell of Pullman & Comley, dismissed Plaintiffs' counsel's request that he stop his abusive misconduct short of having to go the presiding judge, stating "I am not interested in listening to your silliness" (Exh. C, 49:14-17). When Plaintiffs' counsel merely tried to examine the deponent as to what matters were within the scope of his testimonial abilities, after defense counsel had objected to the scope of examination as "beyond the scope" of the 30(b)(6) designation, Attorney Mitchell told counsel "You're the most insulting and insufferable individual I've run into in years." Exh. C, 51:11-13. He went on to comment that Plaintiffs' counsel "wouldn't know the meaning of the word [appropriate]" in terms of conduct. Exh. C, 263:7-10. He commented that her examination "questions wasted time and don't matter." Exh. C. 232:25, 233:1. He accused her of deliberately misstating testimony to mislead the deponent. Exh. C, 277:12-19, 277:22-25. 278:1-4. In a completely uncontrolled tirade, in which his co-counsel Margaret Sheahan had to sooth him to get him to sit down and stop yelling, he accused Plaintiffs' counsel of instructing the deponent to disregard his advice. Exh. C, 268:10-12. On this last matter, the record clearly shows that Mitchell jumped the gun, without so much as waiting for the whole question to come out of counsel's mouth before he launched a tirade. Exh. C, 267:1-2. In fact, Plaintiffs' counsel was not even attempting to instruct the deponent to ignore his (the City's) counsel's advice, but was starting to ask him something quite different. Plaintiffs' counsel tried to tell

5

on the part of Plaintiffs' counsel. Attorney Mitchell has actually admitted in prior pleadings in this matter that he has on more than one occasion lost his temper, raised his voice, and threatened to sue and "squash" Plaintiff's counsel. No lawyer should be subjected to threats and tirades, especially not in this very courthouse. The reason the court ordered the deposition of the City to be conducted in the courthouse was at the complaints of Plaintiffs' counsel of this very behavior by defense counsel. Unfortunately, there has been no one supervising the deposition as was anticipated would be the case, and the abuse has continued unabated. The Plaintiffs and their counsel repeat earlier pleas to the Court to take appropriate action against defense counsel's misconduct, and protect the right of Plaintiff's counsel to perform her duties free of abuse and with appropriate decorum.

    (iv)    When the deposition reconvened on January 30th, defense counsel again engaged in more episodes of extended, argumentative, and suggestive "objections," expending considerable deposition time, and a protracted angry outburst of yelling, berating, while standing and finger-pointing at Plaintiff's counsel, all expending considerable deposition time, ending with defense counsel's termination of the deposition (transcript not yet available). The Court directed the City to reconvene;

---

Mitchell this, but he would not even let her get that out of her mouth without cutting her off with ultimatums and baseless accusations. Exh. C, 267:17-20, 268:8-12. The record will show that Plaintiffs' counsel did not respond in kind, was more than patients, frequently ignored disruptive commentary, and repeatedly asked Mitchell to behave appropriately, and persevered without terminating the deposition until the defense walked out.

6

(v)     On January 30th, the Plaintiffs deposed Thomas Connor, the City's designated representative for the issues of "(1) job duties, evaluations, promotions, discipline, medical leave and training within the BFD; and (2) the training, evaluations, terms and conditions of employment, medical and maternity leaves of the Plaintiffs themselves." However, Mr. Connor testified to almost total lack of knowledge of the topics he was proffered to testify about. He testified that he had been placed in a position where he might have some of this knowledge only 5 months ago – years after alleged events. Asked if he could testify "about any issues regarding [the Plaintiffs'] ... qualifications within the fire department," he testified that his only knowledge was his *personal* observations of their initial firefighter and hazmat training when he was the training supervisor – matters that may or may not be the City's knowledge, as he was designated to provide. Exh. D, 15:21-25, 16:1-15. He testified that he had not even seen the Plaintiffs' personnel records, knew little or nothing of their work or leave status which are subjects of this action and which he is designated to testify about. Exh. D, Transcript of 1/30/04, 8:2-810:1-25, 11:1-10, 20:13-25, 21:1, 21:13-25, 32:1-25, 33:1-25, 34:1-3, 52:25, 53:1-2. He repeatedly testified to a lack of knowledge or guessed at the matters he was designated to provide the City's knowledge of, i.e., official City policies and procedures for EEO complaints, employee discipline, administration of light duty/accommodation, and the definition of sexual harassment, training of current probationary firefighters, and qualified his answers as being his own, i.e., his *personal* (not necessarily the City's) "understanding," "belief," "knowledge," or how he *personally*

7

would act. Exh. D, 3:22-25, 4:1-8, 4:22-25, 5:1-25, 6:1-14, 9:13-25, 11:20-25, 12:1-15, 13:1-15, 14:1-20, 15:11-13, 21:13-25, 23:12-16, 28:17-25, 29:1-7, 45:19-25, 46:1-13, 56:17-19, 54:2-6, 72:20-25, 73:1-5. Asked whether he could in fact "testify about any policies, practices or procedures in the Bridgeport Fire Department before the time that [he] became executive officer" only five months ago, Connor answered "Probably not." Exh. D, 15:14-20. The designation of Connor as a Fed. R. Civ. Pro. 30(b)(6) representative was in bad faith and a violation of the requirement of the Rule that "persons so designated shall testify as to matters known or reasonably available to the organization";

f) A large amount of deposition time was spent having the City's civil service/personnel director (John Colligan) identify thousands of pages of documents that the defendants produced unidentified and unindexed to what they are or in relation to any discovery request.[3] Plaintiffs have repeatedly sought an order that document production be indexed to what discovery request(s) they are responsive to, but the Court has declined to issue such an order. As it stands, it is anticipated that, in order to make the documents useful for summary judgment and admissible at trial, additional deposition time will be required to have the remaining hundreds of pages of documents identified by the City's various representatives at deposition.

5. After Plaintiff's counsel agreed to provide the defendants an additional two hours more than the Rule provides (for 9 1/2 hours total) of deposition time with the plaintiff Johanna

---

[3] Even with an off-the-record review, it still took considerable time to identify the documents on the record before examination could occur.

Georgia, defense counsel Robert Mitchell and Margaret Sheahan agreed to allow the Plaintiffs the same 9 1/2 hours total to depose the City's nine representatives, which leaves 1 hour and 22 minutes to depose 7 more representatives, which it is not possible to do adequately.

6. The Plaintiffs, as rank and file employees, and their solo practicing counsel, ever mindful of litigation costs, have taken only a reasonable number of depositions, i.e., for the two cases, a total of only nine, a number of which were brief, in addition to deposing the three defendants. Plaintiffs have conducted depositions in these consolidated cases jointly, i.e., deposing any witness and defendant only once to serve for both cases. However, the Rules allow each Plaintiff seven hours each to depose any witness or party.

7. Mr. Connor, see above, was not originally designated as a 30(b)(6) representative, but was recently substituted for the person originally designated, one Patrick Shevlin, whom the Court may take notice from prior pleadings in this case, was the second in command of the Fire Department and the person whom the defendants offered in a chambers discovery conference as "the person who knows where the documents are" a person with substantial knowledge of Department policies and practices, and a witness to many alleged acts, policies and practices.

8. Mr. Shevlin's deposition as an individual fact witness was not completed, pending document production, before he retired and left the state this Fall. In a Chambers conference in September 2003, Plaintiff's counsel requested that the Court direct defense counsel to disclose his out-of-state residence. With agreement of defense counsel, the Court directed that defense counsel would make Mr. Shevlin available to be deposed at a future date. The Court deferred the request for the address until such time as defense counsel should fail to make Mr. Shevlin

available. Plaintiff's counsel has since inquired of defense counsel of Mr. Shevlin's availability. Defense counsel stated on February 6th that there was no court order that they make him available, said that they "will endeavor" to make him available, and offered no date. Plaintiffs have so far deposed Mr. Shevlin for 2 hours and 11 minutes.

9. The deposition of defendant Chief Michael Maglione was also suspended pending document production. Despite several requests since December for a date to reconvene with Maglione, defense counsel did not respond until February 5th, agreeing that he "probably" can be deposed on a day when the City's deposition resumes; however, as detailed above, it will not be possible to reconvene the City's deposition within the present discovery closing date.

10. The Plaintiffs have determined that they need to depose more fact witnesses, which was ascertained after counsel were able to review thousands of documents inexplicably not produced until December, January, up until February 5, 2004 (after the City believed its limit of 9 ½ hours for its deposition was nearly expired).[4] Those additional fact witnesses are:

    a) Brian Rooney, the Dep. Chief of Operations of the Bridgeport Fire Department;

    b) Manuel Firpi, Bridgeport Fire Captain;

    c) Deborah "Debbie" Ramos, Bridgeport Firefighter;

    d) Bruce Daveys, a consultant who created, directed, administered, and validated the civil service test and hiring list that the Plaintiffs complain of.

---

[4] And despite several representations by defense counsel to the Court since September that they had produced "everything they have."

10

11. Even with the above additional fact witnesses, Plaintiff would still be under 10 depositions apiece.

12. The Plaintiffs need to depose the defendants' expert witness. The defendants did not disclose their expert's report until January 22, 2004, and did not provide dates the expert, who is in South Carolina, would be available until January 31st. One of those dates was already scheduled for the City's deposition, one is a conflict for Plaintiffs' counsel. That left two days, February 10th and 13th. At 2:30 p.m. on February 5th, defense counsel reported that the 13th was no longer available, leaving only February 10th. Plaintiffs' solo counsel was otherwise occupied on the 6th, was still trying to discuss the expert's fees and obtain consent from her clients before arranging a costly out-of-state expert deposition, and will be occupied with other court matters, an agency hearing, and travel all day on the 9th, and therefore cannot make the arrangements for the 10th. Thus, the defendants' late disclosure of the out-of-state expert's report left Plaintiffs without adequate time to within the present discovery closing date to depose him.

13. Defense counsel Robert Mitchell and Margaret Sheahan represented on and before February 6, 2004, that the defendants do not agree to an extension of the present discovery closing date, nor to any more than a total of 9 ½ hours to depose the City's nine representatives.

14. Albeit that discovery has been extended multiple times in these cases, the Plaintiffs should not be penalized on account of the delays occasioned by the defendants' numerous obstructionist tactics, piecemeal, late disclosures, and by the stay they obtained while they put the Plaintiffs through the distraction and costs of an entirely unfounded Motion for Protective

Order,[5] and order after order for compliance – which is still substantially lacking.[6]

---

[5] Denied on grounds that this municipality made no showing whatsoever of need or justification for a protective order cloaking all discovery in a civil rights case.

[6] In addition, the defendants made little discovery compliance until the Court ordered it on July 2, 2003. Since then, as has previously been the subject of numerous Motions and discovery conferences, the defense has engaged in protracted noncompliance and "needle in a haystack" piecemeal disclosures of unindexed boxes of documents. The CITY produced the bulk of their documents and several critical documents only *after* the Plaintiffs have completed most depositions. Late-disclosed documents have been received by Plaintiff's counsel in January 2004, and as late as February 5, 2004 – following the deposition of the designated representatives on the subjects of the documents, all of which had been ordered produced since July 2, 2003, having been requested February 18, 2003. These late-disclosures are relevant and material to the Plaintiffs' Title VII claims, to wit, they include EEO-1 reports by the CITY to EEOC about the gender and racial composition of its workplace, and a letter from test consultant (Bruce Daveys) whom the CITY engaged to conduct and compile test grades and rank placement for the hiring list which the Plaintiffs allege was discriminatory (Schiller's Amended Complaint, ¶¶ 16-24 and Georgia's Amended Complaint ¶¶ 16 - 26). In addition, substantial production is still owed, which will be detailed in another Motion.

**WHEREFORE,** the Plaintiffs seek the following Orders:

1) That discovery shall close March 12, 2004, with the exception of any depositions previously commenced but not completed as of that date, which shall be completed within a reasonable time thereafter, without prejudice to the rights of any party to conduct such depositions; and

2) That the Plaintiffs be allowed a total of 14 hours of time, including time already expended, to depose the CITY OF BRIDGEPORT; and

3) That the defendants pay the Plaintiffs' reasonable attorney's fees and costs of the additional time required to depose the City as a result of its noncompliance and their counsel's misconduct in its deposition; and

4) That the Plaintiffs be permitted and afforded adequate time to depose Brian Rooney, Manuel Firpi, Deborah "Debbie" Ramos, and Bruce Davey; and

5) That the Plaintiffs be permitted and afforded adequate time to depose Patrick Shevlin or another person able to testify to the City's knowledge of the matters of "(1) job duties, evaluations, promotions, discipline, medical leave and training within the BFD; and (2) the training, evaluations, terms and conditions of employment, medical and maternity leaves of the Plaintiffs themselves" as the City's designated 30(b)(6) representative; and

6) That Plaintiffs be permitted and afforded adequate time to conclude the deposition of Michael Maglione;

7) That defense counsel produce Patrick Shevlin to conclude his deposition;

8) That the defendant CITY OF BRIDGEPORT and its counsel shall pay the Plaintiffs' reasonable attorney's fees and costs of bringing this Motion.

FOR THE PLAINTIFFS,

Dated 2/9/04

*signature*

Susan V. Wallace
~ Attorney at Law ~
11 Blue Orchard Drive
Middletown, CT 06457
Tel: (860) 704-0472  Fax: -0490
law4us@rcn.com
Fed Bar No. CT08134

## CERTIFICATION OF SERVICE

The undersigned counsel certifies that a copy of the foregoing "Plaintiffs' Motions For Amendment of Discovery Closing Date and Pretrial Orders And For Orders Re: Depositions" has been served upon:

Robert B. Mitchell, Esq.  
Margaret M. Sheahan, Esq.  
Thomas F. Maxwell, Esq.  
Pullman & Comley, LLC  
850 Main Street  
P.O. Box 7006  
Bridgeport, CT 06601-7006  

John Mitola, Esq.  
John Bohannon, Jr., Esq.  
Office of the City Attorney  
City Hall Annex  
999 Broad Street  
Bridgeport, CT 06604  

Richard Albrecht, Esq.  
Cohen & Wolf, P.C.  
1115 Broad Street  
Bridgeport, CT 06604  

on this 9th day of February, 2004, via

____✓____ Regular U.S. Mail, first class, postage prepaid

_____ U.S. Priority Mail

_____ U.S. Express Mail or other overnight mail service

_____ Facsimile

_____ Hand-delivery

_____  
Susan V. Wallace, Esq.