UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHANNA S. GEORGIA,<br>              Plaintiff,<br>VS. | CIVIL ACTION<br>NO. 3:01 CV-00717 (AVC) |
| ELIZABETH SCHILLER,<br>              Plaintiff,<br>VS. | CIVIL ACTION<br>NO. 3:01 CV-00452 (AVC) |
| CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br><br>              Defendants. | (CONSOLIDATED)<br><br><br><br><br><br>February 20, 2004 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO SET ASIDE COURT ORDER GRANTING
PLAINTIFFS' MOTIONS FOR AMENDMENT OF DISCOVERY CLOSING
DATE AND PRETRIAL ORDERS AND FOR ORDERS RE: DEPOSITIONS**

Defendants oppose Plaintiffs' receiving yet additional time within which to conduct their seemingly never-ending discovery process. Defendants believe that discovery should conclude now, and that the City should not be victimized by allowing the Plaintiffs further deposition time in this case. If the Court maintains its position granting the Plaintiffs' motions the Defendants must request that it also set a conference to discuss and reset the

summary judgment and trial dates. Granting the Plaintiffs more time within which to conduct discovery would not only threaten to delay trial, it will serve unnecessarily to increase the Defendants' litigation costs without adding anything of value to the litigation process. Plaintiffs' Motion inaccurately portrays the status of discovery in general and the course of the City's Rule 30(b)(6) deposition in particular. The misrepresentations contained in the Plaintiffs' papers require that this memorandum be submitted if for no other purpose than to correct the record.

I.      DISCOVERY HAS LASTED LONG ENOUGH

Plaintiffs' Motions suggest that diligent, reasonable discovery efforts by Plaintiffs have been unfairly stonewalled by Defendants, who have, at best, ignored their obligations and, at worst, misled the Plaintiffs and the Court. ***Nothing could be further from the truth***. Those representations are gross, inexcusable distortions of the truth. The actual facts are far different.

Plaintiffs filed the Amended Complaints in these consolidated actions on July 9, 2001. Plaintiffs' First Sets of Interrogatories and Production Requests were filed nearly one and a half *years* later on February 18, 2003, ***only twenty days prior to the scheduled March 10, 2003 close of discovery***. When Plaintiffs' request to enlarge the discovery period was granted, Defendants answered their discovery and filed objections on March 20, 2003[1]. On

---

[1]   Compare Plaintiffs' allegations at page 2, paragraph 4(b) that Defendants never objected, with Exhibits B and C, Objections with Discovery Requests, and Exhibit D, Deposition Notice Schedule A and Objections.

March 31, 2003. Plaintiffs noticed a deposition of the City under Fed. R. Civ. P. 30(b)(6), attaching a Schedule of documents to be produced at deposition. Defendant objected to this Schedule of documents on April 30, 2003[1].

Those documents not subject to objection were sought out by the City and produced as they were found. It took more than a few weeks for Defendant City of Bridgeport, an underfunded, overburdened municipality, to gather the such a vast number of documents covering as they did a huge scope of time and the broadly defined activities of many different arms of an administration that had undergone multiple personnel changes and reorganizations during the time period covered. As material was identified and collected, it was made available for Plaintiffs' inspection, which began on May 1, 2003.

Thus, *within five weeks of serving the City's deposition notice and eleven weeks of serving their interrogatories and production requests*, Plaintiffs were examining documents. This examination occupied part or all of six different days in May for a total of over 30 hours[2], during which Plaintiffs' counsel and one or both of the Plaintiffs participated.

Plaintiffs' Motions correctly point out that a July 2 Court event, in which various outstanding objections and discovery motions were resolved, sparked further production by the City, but Plaintiffs' workweek's worth of document review in May belies the implication

---

[2]   Compare Affidavit of Elisa M. Paliani, Exhibit A, paragraph 4 with Plaintiffs' Motion at page 2, ¶ 4(b) "little . . . compliance . . . until . . . July 2, 2003."

that only skimpy efforts preceded July 2, 2003[3]. Notably, Plaintiffs and their counsel spent part of two days in August examining produced documents again.

Plaintiffs' Motions suggest that Defendants' seeking an order to protect the confidentiality of discovery material was an extraordinary and dastardly act. Plaintiffs' Memo, pp. 2-3, ¶ 4(c), pp. 11-12, ¶ 14. In fact, however, protective orders in employment litigation are common as dirt. What is uncommon is a fight over a protective order, as most often parties jointly request the Court to enter a mutually aeeptable order. When the matter is disputed, a stay of disclosure while disposition is pending is both fair and commonplace. The two-month length of the stay certainly was not Defendants' doing. If any litigant contributed to the delay, it was the intervention motions filed and re-filed by Plaintiffs' counsel on behalf of two organizations without direct connection to this case.

The protective order dispute was ultimately resolved, and on November 6, 2003[4], the very day notice reached the parties, Defendants asked Plaintiffs to resume inspection. Remarkably, however, Plaintiffs did not do so until more than a month had passed. On two

---

[3] The July 2 event

days in mid-December and one in early January, they spent full or partial business days inspecting produced documents. Exhibit A, Paliani Aff. at ¶¶ 4 and 5, Attachment 1.

In this, their motion for a fifth extension of the discovery deadline, in mid-February, 2004, Plaintiffs for the first time ever announce their desire to depose four additional fact witnesses. Plaintiffs' Memo, p. 10, ¶ 10. Although the language could suggest that Plaintiffs had their first opportunity to examine thousand of produced documents in the last nine weeks, this is clearly not the case. See n. 4, supra. To be perfectly clear, Defendants have made several supplemental disclosures this year. Exhibit A, Paliani Aff. at ¶ 5, Attachment 2. None of them was extensive, however, and none would be reason for Plaintiffs to first discover an interest in the named fact witnesses.[5]

Plaintiffs spent considerable time compiling a list of documents they believed should have appeared in the production but did not. Defendant City devoted significant human resources to investigating each one of these items to determine whether they were in the City's possession and an affidavit has been submitted to Plaintiffs describing the nature and results of those efforts. Connor Affidavit, Exhibit E, served to Plaintiffs' counsel on December 16, 2003 when she appeared to continue inspection of documents.

Plaintiffs' disappointment that they do not have more damning documents to support their case is not the same as Defendants' noncompliance, no matter how often or vehemently

---

[5] The last named witness, identified by Plaintiffs as a hiring consultant to the City, is a curious choice for deposition by two firefighters who obviously were successful in the hiring process!

they insist that it is. Neither is it a justification for extending discovery beyond the more than two and one-half years it has now consumed.

In addition to pretending that the City has not produced documents, Plaintiffs' Motions argue that Defendants prevented the completion of the depositions of Defendant Maglione and nonparty Patrick Shevlin, contending that their numerous requests for deposition dates went unanswered. Plaintiffs' Memo, p. 9-10, ¶¶ 8 and 9. In fact, this is not the case.

Every request Plaintiff made to have Chief Maglione's deposition resumed occurred in the last few weeks and was answered in the affirmative. Exhibit A, Paliani Aff. at ¶ 5, Attachment 3. The most recent of these requests were in the form of asking that this individual deposition be convened on a day when the City's Rule 30(b)(6) deposition was going forward. Both actually did occur on February 13, 2004.[6]

Patrick Shevlin retired from the City's employ and moved out of State in 2003 and Defendants' counsel represented to the Court and to Plaintiffs' counsel that Mr. Shevlin had agreed to make himself available to complete his deposition testimony. Plaintiffs did not request a resumption of Mr. Shevlin's deposition until this month. When this occurred,

---

[6] Unfortunately, because of witness abuse by Plaintiffs' counsel, Defendants suspended the Maglione deposition in order to seek a protective order, which will be filed in short order.

Defendants' counsel provided three dates within the discovery period on which his deposition by telephone could be arranged. Exhibit A, Paliani Aff. at ¶ 5, Attachment 4.

Plaintiffs' Memo (p. 11, ¶ 12) suggests that their failure to depose Defendants' expert supports a wholesale discovery extension, implying that Defendants were tardy in disclosing the expert and supplying his report. In fact, this Court granted Defendants permission to disclose their expert's report on the date they did in recognition that Plaintiffs' motion for class certification had to be resolved before the expert's work could be properly defined. In truth, the time for Plaintiffs to complete this deposition before the most recent deadline was short. If other matters had been timely addressed by Plaintiffs, however, this scheduling issue would not have presented such a challenge.

Plaintiffs' Motion also asserts (p. 1, ¶ 2) that "several depositions scheduled by the defense during the most recent extended discovery period" contributed to Plaintiffs' failure to complete the City's deposition. A January 12, 2004 order of this Court moved the discovery deadline from January 15 to February 13. In that period, Defendants noticed only one deposition, which did not take place[7]. On January 13, Defendants concluded Plaintiff Georgia's deposition. On January 14, they concluded Donald Day's deposition, which had been stopped for Court recourse on December 23. Neither event lasted three hours. The remainder of the 30 day period should have sufficed for Plaintiffs' completion of discovery.

---

[7] Neither Roger Kergaravat nor Plaintiffs' counsel appeared for his noticed deposition on February 3, 2004. Clearly, this proposed event did not divert Plaintiffs from anything at all, let alone specifically impede their ability to complete discovery.

In sum, Plaintiffs slept on their discovery rights for well over a year, woke up and tore into furious action, got timely objections and reasonable response from the City and extra time from the Court several times, fell into discovery inaction again, got excited by a looming deadline and have determined that crying foul and blaming their opponents was their best chance for getting yet another reprieve. This Court should not reward this behavior.

II.   THE CITY'S DEPOSITION IS OVER

Plaintiffs' Memo (p. 1, ¶ 2) cites numerous reasons that their deposition of the City has not been completed, but all of these are straw men.

On February 5, 2004, Plaintiffs did cancel the scheduled February 6 convening of the City's deposition, but this was only for the last few hours of the stipulated 9.5 hours and these were actually completed on February 13.

The Court's schedule affected the scheduling of the City's deposition only once to Defendants' knowledge, and this occurred at the very beginning of 2004, before the latest discovery extension was granted. Exhibit A, Paliani Aff. at ¶ 5, Attachment 5.

The availability of court reporters is certainly essential to taking depositions. Their industry enjoys healthy competition, however, and a modest effort by noticing counsel can get the need met.

Defendant is aware of a single instance of a courthouse location not being available for the City's deposition. That occurred on February 13 and the parties agreed to, and did, go forward at defense counsel's Bridgeport office.

The availability of counsel and the City's designees has been limited in the final week of the discovery period. However, defense counsel was diligent in determining and communicating all availability to Plaintiffs' counsel. Ex. A, Paliani Aff. at ¶ 5, Attachment 6.

Defense counsel's availability <u>was</u> limited in the last week of the discovery period. Plaintiffs' counsel's availability was perhaps less limited that Plaintiffs' Memo implies (p. 2, ¶ 3). Plaintiffs' counsel represented to defense counsel that she could not take City testimony on February 9, in fact chiding defense counsel for informing her of witness availability on that date, since this communication between the City Attorney and Plaintiffs' counsel regarding a different matter showed a copy to defense counsel. Exhibit A, Paliani Aff. at ¶ 5, Attachment 6. The communication Plaintiffs' counsel referenced involved a case Plaintiffs' counsel filed against the City for Richard Tuozzoli in Superior Court, on which the City removed to the United States District Court on February 3, 2004, prompting a remand motion by Plaintiffs' counsel on Wednesday, February 4. Plaintiffs' counsel's purported engagement on Monday, February 9, then, was a preliminary injunction hearing in State Court. In fact, of course, there was no such proceeding and despite asserting to her opponent in that case that she intended to appear and seek State Court action, Plaintiffs' counsel did not do so. Exhibit A, Paliani Aff. at ¶ 5, Attachment 7. Monday, February 9 was not otherwise engaged for Plaintiffs' counsel after all!

The more important information about whether the City's deposition should go forward is how it was conducted in the nine and one-half hours all parties stipulated it should last. Exhibit A, Paliani Aff. at ¶ 5, Attachment 8.

Plaintiffs' Notice of the City's deposition broadly stated topics (Exhibit D). With difficulty, the City identified designees and gave advance notice of the list to Plaintiffs' counsel on May 21, 2003. Exhibit A, Paliani Aff. at ¶ 5, Attachment 9. Contrary to Plaintiffs' contention, Defendant City was not obligated to do so. Fed. R. Civ. P. 30(b)(6). Also contrary to Plaintiffs' Memo's assertion (p. 9, ¶ 7), Thomas Connor was on this list from the beginning. Plaintiffs continuously insisted on a specific assignment to each designee of the particular part of the broad subject description in the notice. Again, the rules impose no such obligation. Moreover, Defendants were loath to infer Plaintiffs' meaning in the notice description, in light of the history of their counsel's virtually universal diametrically opposed interpretations of words, gestures and events. Exhibit A, Paliani Aff. at ¶ 5, Attachment 10. Nevertheless, with difficulty, Defendant City complied with Plaintiffs' request on January 15, 2004. Exhibit A, Paliani Aff. at ¶ 5, Attachment 11. It is absolutely inconceivable that Plaintiffs' counsel was not capable of preparing for the City's deposition without this information. Plaintiffs' Memo, p. 3, ¶ 4(d).

Plaintiffs' Memo refers to this Court's having issued orders and to "defendants' noncompliance," contributing to a false image of the course of this case. Overruling of objections to discovery requests or denials of motions to compel or for protective orders, do

not evidence noncompliance by the objecting or petitioning party, Plaintiffs' penchant for titling documents "Motion for Sanctions" notwithstanding.[8]

The truly crucial question here is this: what happened when Plaintiffs had all the City designees, a reporter, a courthouse room and counsel present to begin the stipulated nine and one-half hours of deposition on January 16? Plaintiffs spent the entire day with one designee, Civil Service Director John Colligan, while the other eight designees sat and waited. The eight were an assistant City Attorney, three of the highest ranking Bridgeport Fire Department officers, representatives of the small Labor Relations Department and the City's Employee and Organizational Development Officer. On the second scheduled day, January 30, virtually all the same designees again sat and waited while Mr. Colligan testified. Near the very end of this second day, Plaintiffs' counsel stopped (but did not finish) with Mr. Colligan and took Mr. Connor's testimony.[9]

Mr. Colligan's questioning explored in depth the City's testing and selection process, including its testing for entry level firefighter positions, something that could not possibly

---

[8] For example, Plaintiffs' Memo, p. 4, ¶ 4(e)(ii) alleges the Court had the City's deposition go forward in the courthouse in response to a defense motion for protective order [Docket #76] which stated the grounds for suspending the deposition on May 29, 2003. Compare Plaintiffs' Memo, p. 4, ¶ 4(e)(i). In further example, on January 30, 2004, the parties voluntarily reconvened after the Court explained to Plaintiffs' counsel that defense counsel could make record objections specifying that a City designee's testimony on topics outside the designated scope was not on behalf of the City. Compare Plaintiffs' Memo, p. 6, ¶ 4(e)(iv).

form the basis for recovery for either Plaintiff, since both made it through the selection process and became Bridgeport firefighters almost five years ago.

Why would Plaintiffs' counsel devote scarce resources in the waning days of an already extended discovery period to such an irrelevant, or at best tangential, subject? One apparent reason is that Plaintiffs' counsel was exploring information relevant to different clients' cased against the City.

The Complaint in Tuozzoli v. City of Bridgeport, et al, filed by Plaintiffs' counsel on January 20, 2004 (Exhibit F) bears striking resemblance to the transcript of Mr. Colligan's testimony for the City on January 16, 2004. (Exhibit G.)[10]

The City should not be subjected to a marathon fishing expedition for potential additional claims in the guise of submitting to deposition in this case.

Plaintiffs' Memo (pp. 7-8, ¶ 4(e)(v)) indicates that Mr. Connor's testimony for the City was not so valuable as had been hoped. Defense counsel was surprised at the subject matter chosen for the questioning of this designee, who had responsibility for firefighter training for many years, including during the time that Plaintiffs were trained. He was asked only general policy questions, primarily concerning leaves and light duty assignments and

---

[9] Plaintiffs' counsel failed to respond to repeated inquiries as to her planned order of designees, preventing a more efficient marshaling of the City's costly human resources. Exhibit A, Paliani Aff. at ¶ 5, Attachment 12.

[10] Compare Tuozzoli Complaint ("TC") ¶ 5 with Colligan's City Deposition ("Depo") p. 122, l. 4-p. 123, l. 14; TC ¶ 6 with Depo p. 167, l. 20-p. 168, l. 3 and p. 187, ll. 11-16; TC
(continued …)

about the Bridgeport Firefighters for Merit Employment. Mr. Connor was not asked to testify about training in general or any of the Plaintiffs' Amended Complaints' allegations concerning their own allegedly discriminatory and harassing training experiences. Georgia's Amended Complaint ¶¶ 35-39; Schiller's Amended Complaint ¶¶ 31-35.

Curious as their choices may have been in conducting the City's deposition, Plaintiffs made them freely, when the likely consequence of running out of time was glaringly obvious. Plaintiffs' desire to escape that consequence should not be requited at the expense of Defendants.

### III. GRANTING PLAINTIFFS' MOTIONS WOULD HAVE SUBSTANTIAL NEGATIVE CONSEQUENCES

This case is approaching its third anniversary. Trial is now scheduled for April of this year. Defense counsel and Defendants have planned other commitments accordingly and will not be available for trial in May, June or July (trial and hearing schedules and nonrefundable family travel commitments made considering military personnel and noncustodial parent's coordination). Delaying trial again would unfairly increase Defendants' costs and cause reverberating scheduling conflicts to many innocent parties.

The Defendants' fear that Plaintiffs will continue unnecessarily to demand more testimony, more irrelevant documents, more court conferences, more orders, more sanctions, and more court and defense resources expenditure until they are definitively ordered to stop.

---

¶ 7 with Depo p. 169, l. 11-p. 171, l. 3 and p. 177, ll. 3-24 and p. 213, l. 10-p. 215, l. 18; TC ¶ 8 with Depo p. 168, l. 16-p. 169, l. 8 and p. 195, ll. 2-6..

-14-

They have run up against the third such order in this case and Defendants respectfully urge this Court to deny them the opportunity to continue their unrelenting, disorganized and burdensome quest to uncover legal hobgoblins and smoking guns where none exist.

>By: s/s Robert B. Mitchell
>    Margaret M. Sheahan, ct05862
>    Robert B. Mitchell, ct02662
>For: Pullman & Comley, LLC
>    850 Main Street, P.O. Box 7006
>    Bridgeport, CT  06601-7006
>    (203) 330-2000
>    Facsimile (203) 576-8888
>
>    ATTORNEYS FOR:
>    CITY OF BRIDGEPORT,
>    EARL PETTWAY and
>    MICHAEL MAGLIONE

**CERTIFICATION**

  Pursuant to Fed. R. Civ. P.5 (b), I hereby certify that a copy of the above was mailed on February 20, 2004 to all counsel and <u>pro</u> <u>se</u> parties of record.

  Susan V. Wallace
  11 Blue Orchard Drive
  Middletown, CT 06457

  John R. Mitola
  John P. Bohannon, Jr.
  Office of the City Attorney
  999 Broad Street
  Bridgeport, CT 06604

  Richard L. Albrecht
  Cohen and Wolf, P.C.
  1115 Broad Street
  P.O. Box 1821
  Bridgeport, CT  06601-1821


            /s/ Robert B. Mitchell
            Robert B. Mitchell


BPRT/67551.1/EMP/507437v1