| | | |
|---|---|---|
| **RETURN DATE:** | : | **SUPERIOR COURT** |
| **RICHARD TUOZZOLI,**<br>　**Plaintiff** | : | **J.D. OF FAIRFIELD** |
| | : | **BRIDGEPORT** |
| **V.** | : | |
| **CITY OF BRIDGEPORT;**<br>**BRIDGEPORT CIVIL SERVICE**<br>**COMMISSION,** | : | |
| 　**Defendants** | : | **JANUARY __, 2004** |

## COMPLAINT

1. On May 31, 2002, the Defendants announced an Open Competitive Exam #2185 ("the Exam") for the classified position of uniformed Firefighter with the City of Bridgeport.

2. Plaintiff RICHARD TUOZZOLI is a person with a disability, to wit, an impairment which substantially impairs one or more major life's activities, namely, his ability to concentrate academically with environmental distraction and reading comprehension, and he is a person with a history of such impairment, or is regarded as having such impairment.

3. Plaintiff holds a high school diploma from the Bridgeport Public Schools and is otherwise qualified to hold take the test for the position of Firefighter with Bridgeport Fire Department and to hold the position of Firefighter.



4. In August 2002, the Plaintiff made a timely application to take the test for Firefighter with the City of Bridgeport.

5. The subject Exam was comprised of a written test, a physical agility test, and an oral interview.

6. There is no requirement of a minimum proficiency on the written test, to wit, the Defendants purport to require applicants to attain a score of at least 75% of the highest scorer's score on the written test (scored out of a possible 100% basis), plus a "pass" the physical agility test to proceed to the oral interview.

7. The oral interview is subjective, being based in whole or in part upon evaluation of each applicant's demeanor, appearance, and manner of answering questions. The oral interview is conducted by a number of different panels of interviewers who are given no training or guidance by or through the Defendants in interview techniques or Equal Employment Opportunity requirements.

8. The Defendants purport to determine applicant hiring rank based upon straight numerical order of the scores on the oral interview only. Under this system, an applicant who achieves the top score on the written test but who is scored low on the subjective oral interview may be denied hire, while an applicant who only meets the minimum written test score to get to the oral interview but who is scored highly on the subjective oral interview may be certified for hire.

9. In addition, the Defendants' announcement for the subject Exam states that "An item analysis will be run on the basis of the test results," i.e., on the written test scores.

10. Item analysis is a test result validation method which considers Access the degree of difficulty of particular test questions, by assessing the percentage or number of persons who answered the item correctly; the differentiation between the performance of high and low ability persons in the group; the validity, i.e., correlation with the criterion measure of the test as a whole; the effectiveness of each item of testing for desired information; and the test-taking speed of each group tested.

11. It is unknown whether the Defendants in fact performed an item analysis to validate the highest written test numerical score by which the minimum numerical score is purportedly set, or to validate what numerical score equals 75% of the highest written test score, or both, or neither.

12. After submitting his application for the subject Exam, Plaintiff notified the Defendants that he needed reasonable accommodation for his disability to take the written test. Plaintiff specifically requested modified time constraints and a reader for the written test.

13. The Defendants' announcement for the subject Exam states "If you need a special accommodation, you must request it in writing, stating what the disability is, and provide proof of the disability." This demand violates the Americans With Disabilities

Act, 42 United States Code § 12131, et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq.

14. In order to be allowed to take the Exam, Plaintiff had to and did timely comply with this demand, and again specifically requested modified time constraints and a reader for the written test.

15. The Defendants then informed Plaintiff in writing prior to the date of the written test that he would be "allowed extra time and a proctor will read the exam while you follow along on your copy."

16. On September 14, 2002, Plaintiff and three other applicants who had also sought or required reasonable accommodation for disabilities, were taken to a separate room from other applicants, with two proctors provided.

17. The applicants with disabilities who were taken to this separate room, including Plaintiff, were informed that there would be no time limit for completing the written test.

18. The Defendants did not provide an individual reader for each applicant. The questions were read by the two proctors taking turns for the group as a whole. This failed to accommodate the individual needs of each applicant's disability.

19. The written test consisted of three sections. The third section of the written examination purportedly tests "Reading Comprehension."

20. During the third section of the written test, the proctors disagreed over the proper way to provide reasonable accommodation. One proctor ("Proctor A") wanted to

4

continue what was done with the first two sections of the exam, i.e., each proctor taking turns reading one question at a time and allowing the applicants as much time as they needed to answer each before moving on to the next question. The other proctor ("Proctor B") expressed his desire to get the test done quickly and wanted to read through the whole test at once then give the applicants an aggregated time equaling one minute for each question to answer.

21. Over the objection of Proctor A, Proctor B directed the applicants with disabilities to vote among themselves as to what method they wanted. The vote was evenly split.

22. The Plaintiff and another applicant with a disability expressed concern over what was happening to their need for accommodation. The proctors then consulted the Defendants' Personnel Director, John "Jack" Colligan. They continued arguing over what Colligan had directed, until Proctor B insisted that, per Colligan's orders, all the questions would be read straight through, then a total time consisting of one minute per question would be allotted for answers.

23. Throughout the written test, there were interruptions, questions and discussions among the applicants and the proctors, which interfered with the Defendants' ability to comprehend and answer the questions due to his disability.

24. Applicants who are not disabled or who did not request reasonable accommodation were not subjected to interruptions, questions and discussions during the written test, or given a one minute time limit for each question, or put to a majority vote

5

as to how the test would be administered, or subjected to changes midstream in how each section of the test was administered.

25. The administration of the written test was so at odds with accepted norms for administering tests for cognitive, psycho-social, and learning disabilities as to be a refusal to provide reasonable accommodation, and intentional discrimination, or reckless disregard for the known rights of persons with disabilities.

26. On October 10, 2002, Plaintiff sent a letter to John Colligan complaining about the manner in which the written examination was administered to him and the lack of reasonable accommodation. The Defendants made no investigation or redress of this complaint.

27. By letter dated November 22, 2002, the Defendants informed Plaintiff that he "failed to attain a grade above the minimum passing points" on the written examination, but never mentioned what percentage of the top score numerical his numerical score is, or what the top numerical score is.

28. Plaintiff believes that his performance on the written examination was scored mathematically incorrectly.

29. In addition, because the Defendants refuse to reveal the highest numerical score achieved on the written examination, Plaintiff cannot determine whether his score on the written examination in fact fails to meet the minimum 75% of the highest score to be eligible to continue on to the physical agility test and the oral interview, and to adequately challenge the Defendants' rejection of his application.

30. § 211 of the Bridgeport City Charter provides that "The markings and test papers of each candidate shall be open to his inspection," and that the candidate may indicate corrections within one month.

31. Plaintiff required reasonable accommodation for his disability to be able to exercise his right to review his test answers and to make corrections.

32. The Defendants provided no reasonable accommodation for Plaintiff's disability to enable him to exercise his right to review his written test answers, and instead limited Plaintiff to reviewing his test in their Civil Service office in the presence of others, with noise and distraction, and without a reader. Plaintiff tried to review his test as best he could during the proscribed time period, but was substantially deprived of his right to do so due to his disability.

33. Upon information and belief, other applicants with disabilities who took the written test with Plaintiff have challenged the test scores or rejection from the hiring process on the basis of failure to accommodate their disabilities, through complaints to the Defendants and/or Charges of Discrimination to CCHRO and EEOC.

34. In December 2003, the Defendants certified a hiring list from the subject test for Firefighter, and in January 2004 commenced hiring for vacant Firefighter positions.

35. The Defendants failed to provide reasonable accommodation to persons with disabilities, including the Plaintiff, to take the subject Exam for Firefighter.

36. The Defendants denied Plaintiff reasonable accommodation for the subject Exam and hiring process, and for reviewing, correcting and challenging his written test results.

37. The manner in which the Defendants administered the subject Exam has a disparate adverse impact upon persons with disabilities.

38. Article first, section 20 of the Connecticut Constitution guarantees the right to Equal Protection of the Law, and to be free of segregation or discrimination in the exercise or enjoyment of civil rights because of physical or mental disability.

39. § 203.1 of the Bridgeport City Charter, entitled "Equal employment opportunity," provides that "No person in the classified service of the city or seeking admission thereto shall be appointed, promoted, reduced, removed or in any way favored or discriminated against because of race, sex, age, national origin or political or religious opinion or affiliation," but fails to guarantee recognition or protection of the rights of persons with disabilities, in violation of federal law, state law, and article first, section 20 of the Connecticut Constitution.

40. § 211.1 of the Bridgeport City Charter, entitled "Prevention of discrimination," provides in pertinent part that "It shall be the duty of the civil service commission and the personnel director to take affirmative steps to insure that examinations conducted under the provisions of this chapter: (1) are non-discriminatory; (2) are based on valid indicators of whether an applicant possesses the skills and abilities

required for the job in question; and (3) comply with all state and federal laws and regulations concerning examinations for public employment."

41. The Defendants' Personnel Director failed to take any of the affirmative steps required by §211.1 of the Bridgeport City Charter, and the subject Exam was not "non-discriminatory"; was not "based on valid indicators of whether an applicant possesses the skills and abilities required for the job in question"; and did not comply with all state and federal laws and regulations concerning examinations for public employment."

42. The subject Exam and hiring process for Firefighter violates the Americans With Disabilities Act, 42 United States Code § 12131, et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq. and article first, section 20 of the Connecticut Constitution.

43. § 211(a) of the Bridgeport City Charter, in pertinent part, directs that "All [competitive civil service] tests shall be practical, and shall consist only of subjects which will fairly determine the capacity of the persons examined to perform the duties of the position to which appointment or promotion is to be made."

44. The subject Exam violates the Bridgeport City Charter, in that it is not practical, because there is no constant minimum required level of proficiency on the written test, and the written test, and upon information and belief, the oral test, are not limited to "subjects which will fairly determine the capacity of the persons examined to perform the duties of the position to which appointment or promotion is to be made," as

those duties are advertised in the announcement for the subject Exam and in the official job description for the position of Firefighter with the Bridgeport Fire Department.

45. Because the best performers on the written test may be rejected for hire based on subjective evaluation in their oral interview, while comparatively poor performers on the written test may be hired over them, the subject Exam and hiring process is arbitrary and capricious.

46. The Defendants' certifications of the results of the subject Exam and of a hiring list therefrom are void *ab initio.*

47. Plaintiff timely filed a Charge of disability discrimination over the subject Exam with the Connecticut Commission on Human Rights and Opportunities and the U.S. Equal Employment Opportunities Commission on December 18, 2003. Said Charge is currently under investigation by said agencies.

48. Plaintiff requires immediate injunctive relief, as he has no adequate administrative or other legal avenue of redress against the Defendants' acts and failures to act complained of, to wit, if CCHRO or this Court finds reasonable cause to believe that unlawful discrimination has occurred, the Court may order the Defendants to hire Plaintiff as a Firefighter. However, if the Defendants proceed to fill all vacant Firefighter positions, due to the constraints of civil service rules and union contract, subsequent "bumping" of another employee to provide Plaintiff his remedy may not be available in the future, and the Exam for Firefighter is historically given infrequently, perhaps twice a decade.

49. Plaintiff will suffer substantial irreparable harm without immediate injunctive relief, to wit, loss of the opportunity to be hired as a Firefighter in the Bridgeport Fire Department, and the attendant compensation, status, seniority, and retirement benefits.

50. Plaintiff avers that he has a substantial probability of success on the merits of this Complaint based upon the Bridgeport City Charter, the Americans With Disabilities Act, 42 United States Code § 12131, et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq., and the Connecticut Constitution.

***WHEREFORE,*** the Plaintiff seeks the following relief:

1) A declaration that the Defendants failed to provide reasonable accommodation to the Plaintiff's disability to take the subject test for Firefighter with the Bridgeport Fire Department; and

2) A declaration that the Defendants committed unlawful discrimination against the Plaintiff and other applicants with disabilities on the basis of disability in the administration of the subject test and hiring process for Firefighter in the Bridgeport Fire Department; and

3) A declaration that the Defendants' current test for Firefighter is not sufficiently job-related and is arbitrary and capricious; and

4) A declaration that the City's certification of the test results and hiring list for the subject test for Firefighter in the Bridgeport Fire Department violate the Bridgeport City Charter and are void *ab initio*; and

5) An ex parte temporary injunction prohibiting the Defendants from conducting further hiring of Firefighters until after Plaintiff's Applications for injunctive relief are finally disposed of; and

6) An ex parte temporary mandatory injunction ordering the Defendants to immediately place Plaintiff in the next class or group of persons it hires as Firefighters, with reasonable accommodation for his disability; and

7) A permanent mandatory injunction ordering the Defendants to hire and employ Plaintiff-Applicant as a Firefighter, with reasonable accommodation for his disability; and

8) A permanent mandatory injunction ordering the Defendants to cease and desist from any practice declared by the Court to violate the Bridgeport City Charter, the Americans With Disabilities Act, 42 United States Code § 12131, et seq., the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq., the Connecticut Constitution, and any other laws or rights, and strictly comply with all requirements of said laws in their testing and hiring processes for the position of Firefighter; and

9) Attorney's fees and costs for having to bring this action and seek appropriate relief; and

10) Such other relief to which the Plaintiff is entitled in law or equity.

**FOR THE PLAINTIFF,**

Dated_____

_____
Susan V. Wallace
~ *Attorney at Law* ~
11 Blue Orchard Drive
Middletown, CT 06457
Tel: (860) 704-0472  Fax: -0490
law4us@rcn.com
CT Bar No. 403499