# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ELIZABETH SCHILLER** | : | **NO: 3:01cv00452(AVC)** |
| **Plaintiff** | | **(ALL CASES)** |
| | : | |
| **JOHANNA S. GEORGIA** | | |
| **Plaintiff** | : | |
| | | |
| **v.** | : | |
| | | |
| **CITY OF BRIDGEPORT; ET AL.** | | |
| **Defendants** | : | **MARCH 2, 2004** |

### PLAINTIFFS' MOTION FOR ORDERS AND OPPOSITION TO
### MOTION FOR PROTECTIVE ORDER DATED FEBRUARY 24, 2004

1.     On February 19, 2004, the Court issued an order (no. 161) granting the Plaintiffs' "Motion for Amendment of Discovery Closing Date and Pretrial Orders and for Orders Re: Depositions" dated February 9, 2004, amending the discovery closing date for Plaintiffs to complete depositions, including that of the defendant Michael Maglione.

2.     The defense now comes seeking another frivolous protective order, this time regarding the short completion of the deposition of Michael Maglione. Defense counsel did not consult Plaintiffs' counsel before filing their Motion.

3.    The defendants'  Motion seeks limits on the Plaintiff' s discovery that are unwarranted by any conduct by Plaintiffs'  counsel, without any basis in the Fed. RCiv. Pro. and Local rules, and thus is  frivolous and dilatory.

4.    The record in this action shows that the Plaintiffs have made diligent efforts to depose Maglione since March 2003, to wit, filing several Motions and requesting discovery conferences with counsel and the Court to try to obtain requested production of documents needed to depose Maglione. The record also show several orders of compliance and extensive efforts by the Court to induce compliance by the defense, and repeated filings of frivolous and dilatory Motions and Objections thereto by the defense.

5.    The record also shows that the defense counsel Robert Mitchell and Margaret Sheahan have repeatedly disrupting depositions with suggestive colloquy, and instructing their clients and their clients'  employees not to answer in depositions. The record shows that most of those instructions were made without even an assertion of privilege.

6.    The record also shows that defense counsel have unilaterally terminated depositions four times now without any assertion of privilege.

7.    The record also shows that none of said conduct by the defense was justified or necessitated by any misconduct on the part of Plaintiffs'  counsel, and that on each occasion, having reserved their objections for trial, if the defense had an objections, it could have been simply stated "as to form," and addressed later, with adequate means of redress available therefor.

8.      The disruptive argument and unilateral termination by defense counsel Robert Mitchell of the deposition of Maglione on February 13, 2004, was again purely of defense counsel's own making. Defense counsel fails in his current Motion to append or cite to the transcript, which clearly shows his misconduct and also shows that he has made false and misleading representations to the Court about the conduct of Plaintiffs' counsel in his supporting Memorandum. A copy of the pertinent portion of the transcript is appended to the Plaintiff's supporting Memorandum.

9.      Defense obstruction and abuses are prejudicing the ability of Plaintiffs' counsel, who is a solo practitioner, to obtain discovery needed for Plaintiffs' claims and to be able to adequately rebut defenses, and to devote the time necessary at this late date and as a, adequate time to prepare for dispositive motions, jury selection, trial motions and instructions, and witnesses and evidence for trial itself.

10.     The defendants' proposed protective order as to depositions is fundamentally unfair and unjust, as it would unduly restrict allowable discovery only for the Plaintiffs, who are the only parties who still have depositions to take. The Plaintiffs are the only parties to be exposed to the proposed protective order only because they have been delayed in completing depositions by a year of repeated defense noncompliance and dilatory conduct that has been the subject of several orders of compliance by the Court. The proposed orders are manifestly unjust, because they would allow the defense to reap the benefit of having obtained their discovery with the Plaintiffs' compliance and free of the undue restrictions they seek to impose at this late date.

**WHEREFORE,** the Plaintiffs seek:

1)      An order denying the Defendants'  Motion for Protective Order dated February 24, 2004; and

2)      An order that the Plaintiffs shall be permitted and afforded the amount of time, in addition to what is already allowed by the Fed. R. Civ. Pro., spent deposing Michael Maglione when he failed to comply with document production requests for his deposition sessions in April and May 2003, and for defense counsels'  disruptions of his deposition; and

3)      That the trial of this matter not be held until a reasonable time after the defendants have fully complied with the Court'  s prior orders of compliance with the Plaintiff'  s discovery requests, and the Plaintiff have been able to complete necessary depositions as previously set forth in their Motion dated February 9, 2003, and have adequate time to prepare for trial ; and

4)      An order that the defendants and/or their counsel shall pay to the Plaintiffs' reasonable attorney'  s fees and costs of making this objection, and for the additional time required to depose Maglione as a result of his/his counsel'  s misconduct in his deposition.

**FOR THE PLAINTIFFS,**


Dated_____                     _____
                                        Susan V. Wallace
                                        *~ Attorney at Law ~*
                                        11 Blue Orchard Drive
                                        Middletown, CT 06457
                                        Tel: (860) 704-0472  Fax: -0490
                                        law4us@rcn.com
                                        Fed Bar No. CT08134

## CERTIFICATION OF SERVICE

The undersigned counsel certifies that a copy of the foregoing Opposition and Motion for Orders has been served upon:

Robert B. Mitchell, Esq.                     John Mitola, Esq.
Margaret M. Sheahan, Esq.                    John Bohannon, Jr., Esq.
Thomas F. Maxwell, Esq.                      Office of the City Attorney
Pullman & Comley, LLC                        City Hall Annex
850 Main Street                              999 Broad Street
P.O. Box 7006                                Bridgeport, CT 06604
Bridgeport, CT 06601-7006

Richard Albrecht, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604

on this ___ day of March, 2004, via

        ____     Regular U.S. Mail, first class, postage prepaid

        ____     U.S. Priority Mail

        ____     U.S. Express Mail or other overnight mail service

        ____     Facsimile

        ____     Hand-delivery

_____
  Susan V. Wallace, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ELIZABETH SCHILLER** | : | **NO: 3:01cv00452(AVC)** |
| **Plaintiff** | | **(ALL CASES)** |
| | : | |
| **JOHANNA S. GEORGIA** | | |
| **Plaintiff** | : | |
| | | |
| **v.** | : | |
| | | |
| **CITY OF BRIDGEPORT; ET AL.** | | |
| **Defendants** | : | **MARCH 2, 2004** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDERS AND
OPPOSITION TO MOTION FOR PROTECTIVE ORDER DATED FEBRUARY 24, 2004**

**I.    FACTS AND BACKGROUND**

On February 19, 2004, the Court issued an order (no. 161) granting the Plaintiffs'

"Motion for Amendment of Discovery Closing Date and Pretrial Orders and for Orders Re:

Depositions" dated February 9, 2004, amending the discovery closing date for Plaintiffs to

complete depositions, including that of the defendant Fire Chief Michael Maglione, to March 12,

2004.

The Plaintiffs have diligently tried to complete depositions, including that of Maglione,

but as the transcript clearly shows, that Attorney Mitchell disrupted and unilaterally terminated

the reconvened deposition of Maglione on February 13, 2004, for a frivolous and abusive reason.

The defense now comes with "unclean hands" seeking protective orders over this.

As to what occurred in said session of the deposition of Maglione, lead defense counsel

Robert Mitchell was keeping track of every minute remaining under Fed. R. Civ. Pro. 30(d)(2)

for the Plaintiffs to depose Maglione (Exh. A, Excerpt of Maglione transcript, 7:14-24), and he refused to allow the Plaintiffs any additional record time to complete it. Exh. A at 4:15-18. Plaintiffs' counsel attempted to question Maglione about his sworn response to a Charge of employment discrimination and retaliation that Plaintiff Johanna Georgia filed with CHRO and EEOC <u>against Maglione</u> in August 2003. The document, which <u>bears Maglione's original sworn signature, was marked as a deposition exhibit</u>. The entire exhibit is comprised of 8 single-spaced pages of type, an exhibit index, a certification/oath page, and 62 pages of detailed attachments.

  <u>After Maglione looked over the exhibit</u>, and was merely asked if he recognized it. Exh. A at 2:8. <u>Defense counsel instructed him not to answer</u>, and stated that the deponent and counsel needed to "review" the entire lengthy exhibit before Plaintiffs' counsel could proceed with her examination. Exh. A at 2:9-18. Defense counsels' representations on page 2 of its Motion dated February 24th that Plaintiffs' counsel refused to permit him and his client to review the exhibit are <u>false and misleading</u>. To wit, defense counsel commenced reading the exhibit painstakingly slowly, line-by-line, while the deponent glanced briefly at the first page, over his attorneys' shoulder. Exh. A at 2:12-16. After expending several minutes of the limited deposition time remaining with this, with defense counsel *still reading the first page*, Plaintiffs' counsel tried to discuss with defense counsel how long he would need to read the exhibit. Exh. A at 2:19-22. Defense counsel only responded that he had to right to review the document. Exh. A at pp. 2-3. Plaintiff's counsel then directed the court reporter to go off the record, simply to preserve available deposition time <u>while Attorney Mitchell and Maglione could take as long as they needed to review the exhibit</u>. Exh. A at 3:17. Defense counsel demanded to stay *on* the record

while *he* (not his client) insisted on reading this large exhibit line-by-line. Exh. A at 3:18-19, 22; 5:24-25; 5:1-2

Plaintiffs' counsel tried to explain why she could not allow that. Exh. A at 2:25 3:1-2; 4:5-12. Trying to reach a compromise, Plaintiffs' counsel tried to explain why that she intended to examine only a part of the document, but before she could complete her sentence, defense counsel interrupted with <u>spurious comments about Plaintiffs' counsel</u>.[1] Plaintiffs' counsel tried to reach a compromise, offered that, if defense counsel wanted to stay on the record while he read the exhibit, then the Plaintiffs would be allowed that time to complete the examination (even if it exceeded the time left under the rules). Exh. A at 4:16-17. Defense counsel refused. Exh. A at 4:18. Plaintiff's counsel again stated that she wished allow him to review the exhibit off the record, and defense counsel again instead on expending record time. Exh. A at 4:19-21. Plaintiffs' counsel asked defense counsel to state what rule allowed him to prohibit her from examining the deponent. Exh. A at 3:8-9; 5:11-19. Defense counsel gave none. Exh. A at 3:10-11 and pp. 5-6. Defense counsel then <u>unilaterally terminated the deposition</u>. Exh. A at 6:3-9.

---

[1] Defense counsel suggested that Plaintiff's counsel intended to mislead the deponent:

> Ms. Wallace:  Actually I want to refer him to one particular portion of this.

> Mr. Mitchell:  I know.  That's why I want to see the whole thing because you tend to take things out of context.

Exh. A, excerpt of Maglione transcript, 2:25; 3:1-4

Attorney Mitchell later stated "The question is whether you're going to mislead him as you have frequently by misstating facts." Exh. A, 7:2-4.

Defense counsel cannot be heard to complain of being "unfairly surprised" by never having personally read all of Maglione's CHRO Charge response. It strains credulity for lead defense counsel in this hotly contested action to even attempt to suggest[2] that he did not know his client Maglione has been the named Respondent since August 2003 in a CHRO Charge of disability and <u>sex discrimination, and retaliation for her pursuit of the instant lawsuit</u>, filed by one of the Plaintiffs herein, or that he is not privy to, and never sought to apprise himself of, the *sworn* statements and defenses Maglione offered in response to it.

In fact, there is evidence to the contrary. Since September 2003, co-defense counsel John Mitola copied Mitchell on his correspondence dated September 15 and October 1, 2003, to Plaintiff's counsel addressing Maglione's attempts to remove Georgia from the job and his refusal to provide her reasonable accommodation. In fact, in a letter dated October 3, 2003, Plaintiffs' counsel objected to Attorney Mitola's copying Attorney Mitchell on their correspondence on the matter. The point is, if Attorney Mitchell was not being copied on the matters pertaining to the new CHRO Charge pursuant to his representation of Maglione in the instant lawsuit, <u>then for what purpose was he being included, if not to keep him informed of the progress on Maglione's response to the pending CHRO Charge that he now denies any knowledge of</u>? This is pertinent herein, as what Attorney Mitchell offers to justify his conduct at the Maglione deposition and in

---

[2] On page 2 of his Memorandum, defense counsel represents "This document appeared to be the City's response to a complaint of civil rights violations made to the Connecticut Commission on Human Rights and Opportunities, the document bore a caption that showed Plaintiff Georgia as the Complainant. The matter, however, is not before the Court and is not one in which the City of Bridgeport is being represented by the undersigned."

support of the proposed protective orders is essentially a claim of "unfair surprise." To credit this proffered justification, the Court would have to find one or more of the following occurred:

a)     That Attorney Mitchell did not bother to read or inquire into what his co-counsel copied him on;

b)     That Attorney Mitchell's co-counsel John Mitola, who has an appearance on behalf of the City and Maglione in this action, never bothered to inform or consult with Attorney Mitchell, who is lead defense counsel in the instant lawsuit, about the sex discrimination and retaliation Charge filed against Maglione[3] by one of the Plaintiffs in this hotly contested case, and what he was stating under oath in response -- and that Mitchell never even bothered to inquire. At the very least, Maglione's response to the new charges is material evidence as to whether the City conducted the meaningful investigation and response to the complaints required under Title VII and the state FEPA or,

c)     Assuming the Court believes that defense counsel never communicated about the new discrimination Charges against their mutual client, then the Court would also have to find it credible that Maglione -- who must be credited with some degree of sophistication as the Chief Officer of the largest fire department in the largest municipality in the State of Connecticut, and who has a personal and official interest in these matters as a named defendant in both -- never once bothered through the six months

---

[3] Nor of similar Charges filed by Georgia at the same time against the City and Maglione's Deputy Chief Patrick Shevlin

those Charges have been pending to discuss them with Attorney Mitchell, and filed sworn responses without ever showing them to Attorney Mitchell.

It is inconsequential whether Attorney Mitola was or was not present when Plaintiff's counsel attempted to examine Maglione on his CHRO Charge response. Attorney Mitola could not identify the document for the deponent, was not defending the deposition and so could not interpose an objection, and he could not have provided any ground for an instruction not to answer because there is nothing even suggestive of invasion of a privilege or abuse in the attempt to examine on the document.

Thus, defense counsel submits the instant Motion not out of any good faith belief in its necessity, but rather to excuse or justify or distract from his own unjustifiable misconduct at the deposition of his client Michael Maglione on February 13, 2004. It is obvious that <u>the only reason defense counsel had for insisting that he expend time reading this large document was to run the clock on the deposition of his client.</u> The defense comes to this Court with "unclean hands" to press for relief from their own misconduct, and as part of another in a series of frivolous and dilatory pleadings designed to avoid compliance with discovery orders as they run the clock on yet another discovery closing date.

The Plaintiffs oppose the instant Motion for Protective Order, and seek appropriate Orders to remedy the delay and obstruction of the discovery caused by the misconduct of the defense.

## II.    ARGUMENT

### A.    The proposed protective orders are a fundamentally unfair, manifestly unjust, and necessary restriction on only the Plaintiffs' discovery, without any basis in the discovery rules or fact.

The requested protective orders would punish the Plaintiffs for their diligence in seeking discovery, and reward the defense for its repeated misconduct. The proposed orders would unduly restrict allowable discovery <u>only for the Plaintiffs</u>, who are the only parties who still have depositions to take, and only because they have been delayed by a year of repeated defense noncompliance and dilatory conduct. At the same time, the proposed orders would allow the defense to reap the benefit of having already obtained their discovery *with the Plaintiffs' compliance*, and without the undue restrictions they seek to impose at this late date. Moreover, as set forth below, when they deposed the Plaintiffs and witness, defense counsel committed the very same conduct that they now seek orders to bar the Plaintiffs from utilizing. To wit:

1)    **¶ 3 of the proposed Protective Order** seeks an order that all documents offered must be marked as exhibits. This is complaining just to be heard complaining, as the Plaintiffs' counsel cannot recall a single instance in all the depositions in this case where she has examined on a document without first marking it as an exhibit.

2)    **¶ 4 of the proposed Protective Order** seeks an order that deponent and counsel be allowed to "review fully" documents offered to a deponent before the deponent is questioned. As set forth in the facts, above, the transcript of the incident complained of clearly shows, Plaintiffs'   counsel in fact offered defense counsel and the deponent <u>as much time as they wanted</u> to review the single document complained about – all she asked was that it be done off the

7

record. This request was necessary because defense counsel insisted on strict adherence to the seven hour record time limit for deposing Maglione under Fed. R. Civ. Pro. 30(d)(2), and throughout the session was counting every minute on the record against the time limit, with only a few minutes to spare. It was defense counsel who unreasonably and unfairly insisted on prohibiting the examination to continue while he ran the clock on the remaining time. The record also shows that Plaintiffs'   counsel tried to offer compromises, which defense counsel would not even consider. It is reasonable to conclude that defense counsel stopped the examination and insisted on staying on the record with the intention of running the clock on the deposition before his client could be examined on the document, or whatever else.

The order requested in ¶ 4 is further unnecessary because Plaintiffs'   counsel represents that she cannot recall an instance in the instant litigation in which she has examined on an exhibit without allowing the deponent and opposing counsel to adequately review it; and indeed, the defendants cannot show a single instance in which she has done so.

Moreover, there is no requirement in the F.R.C.P. or the Local rules that the deposing counsel allow the defending counsel, or even the deponent, to review documents in advance of examination. In fact, there may be situations when it is better technique not to do so, or only necessary to focus the deponent on a selective part of a document, such as when the rest is irrelevant.

The opposing party has adequate opportunity to address any perceived discrepancy or omission by simply cross-examining the deponent, or later offering other parts of the document, or any other document that may contradict the testimony, in dispositive Motions or at trial to

correct or impeach testimony, or by offering affidavits or other testimony to supplement the deposition testimony. In addition, defense counsel has their objections reserved for trial. Their proper remedy was not for defense counsel to disrupt a deposition and file a frivolous and dilatory Motion, but rather, to state a simple form (or privilege) objection, and deal with any perceived inequities, apart from violations of a privilege, later.

In fact, <u>this is exactly what the Court has repeatedly ordered defense counsel Robert Mitchell to do</u>. Plaintiffs'  complaints about the disruptive conduct of defense counsel also resulted in an Order that the depositions be conducted in the courthouse with the presiding judge available. The last time the Court plainly directed Attorney Mitchell to make only simple form or privilege objections was after Mitchell repeatedly instructed his client not to answer, without claiming any privilege, and terminated a deposition (of the City of Bridgeport) in the courthouse on January 30, 2004. Plaintiffs'  counsel, trusting that Attorney Mitchell would comply with the Court'  s directive as to the manner of his objections, and with the intention of expediting completion of the depositions, <u>offered</u> to, and did, conduct the next round of depositions <u>conveniently for the deponents and defense counsel at defense counsel'  s Bridgeport office</u> only to be subjected to more of the same misconduct from Attorney Mitchell.

**3)** <u>**¶ 5 of the proposed Protective Order**</u> seeks an order that the party (which again, will now be only the Plaintiffs) taking a deposition either provide a copy to defense counsel 24 hours in advance of conducting examination on it. Read with ¶¶ 3 and 4 of the proposed orders, if Plaintiff'  s counsel fails to provide a document 24 hours in advance, then defense counsel to

9

expend whatever deposition record time (and remaining discovery time) they want to "review" the document and if it is not marked as an exhibit, there can be no examination of it.

First, defense counsel has never provided advance copies of their deposition exhibits to Plaintiffs' counsel, and have examined on documents without a copy for counsel at the time of the examination. Imposing this requirement on the Plaintiffs cannot be fair, as the defendants did not have this burden and they are done conducting their depositions. Moreover, the depositions have frequently been called on short notice due to the many disruptions and running of discovery deadlines, so this requirement would be especially burdensome on Plaintiffs' solo counsel at this late date.

Second, there is no requirement in the rules for any of this. To the contrary, there are perfectly legitimate instances where examining counsel may not know 24 hours in advance of a deposition exactly what documents he or she will need to examine on, due to many factors, such as the pace of the deposition, the deponent's demeanor, the content of his or her answers, information adduced from another person who may have been deposed within the preceding 24 hours, or other new sources of information an documents, or counsel's preference to change course during a deposition for strategic reasons. It is sometimes efficacious and appropriate to surprise a witness for impeachment purposes. Even if counsel provided copies of documents, he or she may later decide *not* to examine on them.

Third, Counsel's choices as to what and not to examine on constitutes her mental impressions, theories, etc., which are privileged work product which she cannot be forced to reveal to opposing parties and counsel.

Thus, an Order that counsel disclose all documents she intends to examine on in advance of a deposition, or face being barred from examining on it, would invade counsel's work product privilege and unduly limit the scope of the examination. An Order that *only* Plaintiffs' counsel reveal her planned examination to the defense in advance of a deposition is fundamentally unfair and unjust. None of this is necessary to preserve anyone's rights, or prevent any unfair prejudice to the defendants.

**B.      The defendants seek the instant protective orders with "unclean hands."**

Plaintiff's counsel had every right to call a break to allow defense counsel and his client to review the exhibit without expending deposition time, especially under the demand of defense counsel that limit the length of the deposition record time. Defending counsel had <u>no</u> right to refuse to allow this or to direct that the Plaintiff expend deposition record time while he and his client took whatever time they wanted reviewing the exhibit. Defending counsel had <u>no</u> right to make disruptive arguments and spurious comments at opposing counsel.

Not only have the defendants failed to show that they will be unfairly prejudiced in any way without the proposed orders, but the delays in the completion of depositions over the past year have been their own doing. The defense's dilatory tactics have cost the Plaintiffs thousands of dollars, dozens of days of their own time, and hundreds of attorney hours. The Plaintiffs' diligent – and much more extensive than should be necessary -- efforts to obtain discovery compliance and depose the defendants is most recently set forth in their "Motion for Amendment

of Discovery Closing Date and Pretrial Orders and for Orders Re: Depositions" dated February 9, 2004,[4] and in numerous prior Motions seeking compliance over the past year.

As to the effort to depose <u>Michael Maglione</u>, the Plaintiffs started deposing him in April 2003. The first session had to be suspended because the City had not complied with most of the interrogatories and production requests (despite having made no objections), and Maglione appeared for his deposition without a single document in response to requests for production served on him with his deposition notice. Maglione then testified to the existence of responsive documents in his office, in the possession of his deputy chiefs and staff, and in particular locations in firehouses and also testified that he made no effort to locate them in response to the production requests served on him. Maglione also responded to having "no recall" and "no knowledge" of a wide range of matters, from alleged incidents, to policies, practices and procedures in his Fire Department. His responses made it clear that the requested disclosures and documents are necessary to refresh his memory and solicit meaningful responses. Maglione agreed to search for and provide responsive documents for his next deposition session.

Maglione's deposition was reconvened in May 2003. He again he appeared with <u>no</u> documents. Defense counsel represented that "everything" responsive had been produced already. Maglione's recall and knowledge had not improved; he responded "no recall" or "no knowledge" numerous  times in this deposition session. It was again clear that the requested disclosures and documents are necessary to refresh Maglione's memory and solicit meaningful

---

[4] Denying relief sought upon claims of discovery violations, without prejudice to refile with Memorandum and Affidavit of counsel pursuant to D. Conn. L. R. Civ. P. 7(a) and 37(b).

responses. By now, the Plaintiffs had expended over most of the allowable seven hours of record time under Fed. R. Civ. Pro. 30(d)(2) to depose Maglione, making it crucial that the remaining time on the record be productive.

Meanwhile, the Plaintiffs had first noticed the City's deposition, after discussion on March 31, 2003 with defense counsel, to take place April 15, 2003. On the afternoon of April 14, defense counsel informed Plaintiffs' counsel that the City would not be appearing for its deposition because it had not yet designated its Fed. R. Civ. Pro. 30(b)(6) representatives.

The Plaintiffs promptly sought compliance orders. Defense counsel refused to make any more compliance or hold depositions until the Court heard the parties' various Motions and Oppositions, so the Plaintiffs could not reconvene Maglione's deposition (or those of the City and its employees) until the Court resolved the matters.

A discovery hearing took place July 2, 2003. The Court issued Orders for the defendants to fully comply with Plaintiffs' interrogatories, production requests, and depositions. The defendants simply did not comply with the Orders. The Plaintiffs again requested the Court's intervention, and were again unable to move forward with deposing Maglione (the City, and its other employees) until the Court ruled.

In August and September 2003, the Court held chambers discovery conferences on said Motions, issued more orders and clarifications of orders for the defendants to comply. At each round, the defendants simply did not comply, again keeping the Plaintiffs from deposing Maglione (the City, and its other employees) while the intervention of the Court was sought.

In a discovery conference in September, the Court designated a letter by Plaintiffs' counsel dated August 18, 2003, which listed documents that were still not produced, to serve as the "source document" of what the defendants needed to produce (or certify did not exist or could not be found after diligent search), and set a date for the defendants to fully comply. On the eve of that deadline, the defense filed a frivolous Motion for a Protective Order on all this municipality's disclosures, which was denied for failure to state any basis for it whatsoever. The defendants then obtained a stay on all discovery proceeding pending decision on said Motion, once again preventing the Plaintiffs from reconvening Maglione's (and any other) deposition.

After the stay lifted at the end of October, the defendants again insisted that all discovery be by inspection of unindexed boxes of documents in defense counsel's Bridgeport offices, and now the firehouse logs from around the City had to be inspected at Fire Department Headquarters. This of course took additional substantial days for Plaintiffs' counsel to travel to Bridgeport and try to ferret out and copy whatever documents were responsive.

Plaintiffs and their counsel had catalogued everything produced as of the time of the stay, and at that time had only to do a more detailed inspection and copying of 2 – 3 boxes of documents (and some audiotapes, building plans and log books). Defense counsel Robert Mitchell and John Mitola had repeatedly expressly represented to the Court in the discovery conferences in August and September 2003 that what the Plaintiffs had been given access to *before the stay* was "all" and "everything" in their clients' possession. By September 2003, the defense had notice of what documents were sought since February 2003, which was certainly sufficient time for them to conduct a search of this municipality's records.

14

Relying on defense counsel's representations to the Court to believe that there was little remaining to be inspected before they could resume depositions, Plaintiffs' counsel scheduled a single day to complete inspection in Bridgeport. However, when she was confirming the arrangements, defense counsel's paralegal mentioned – and only because Plaintiffs' counsel happened to remark on how little there was left to be inspected -- that the defense was making <u>a new disclosure at this late date of numerous documents.</u> At the inspection, Plaintiffs' counsel found several boxes packed with thousands of documents, again, unindexed and not as kept in the ordinary course. There was no justification for not producing these documents -- all of which had been requested in February 2003 and ordered produced July 2, 2003 -- months earlier, or at least informing the Plaintiffs as to their existence so that she could plan inspection and depositions accordingly.

After two days of trying to get through the late disclosures, to try to expedite the inspection, the Plaintiffs spent $623.58 to have it (and a small portion of what had been previously disclosed) copied at a commercial copy service. It took a week to get it all copied, then expend several days trying to ferret out the "needles in the haystacks," trying to organize and attempt to figure out what requests the new documents were responsive to – only to find that it was, once again, comprised mostly of unresponsive and duplicative "chaff." This was despite a specific list furnished by the Plaintiffs in August 2003, which was expressly designated by the Court to serve as the "source document" of what the defendants were to search for and produce. Defense counsel now denies that said list was ever designated by the Court to serve as the

"source document" of missing items ordered to be produced, and has never made a showing that these documents in fact do not exist to be produced.

In early December 2003, the Plaintiffs started asked defense counsel for dates to reconvene depositions, including <u>Maglione'</u>s. Defense counsel did not respond until January 2004, but Court intervention was again required to make the City agree to appear for its deposition, which Attorney Mitchell again disrupted and terminated without any credible claim of privilege or abuse, requiring more Court intervention to reconvene. This preoccupation with the City's deposition prevented the Plaintiffs from being able to depose Maglione, who first had to be deposed as a Rule 30(b)(6) representative for the City, in his individual capacity. The defense finally made Maglione available (as chief and in his personal capacity, not as a Rule 30(b)(6) representative for the City) on the discovery closing date of February 13th, only to disrupt and unilaterally terminate that deposition, without any credible claim of privilege or abuse.

Thus, the defense comes to the Court with "unclean hands," having successfully avoided making full compliance with discovery orders and stalled the depositions of their clients for a year now, through numerous compliance orders and extensions of time for their compliance, and their numerous frivolous and dilatory pleadings. The defense is only furthering those same objectives by disrupting and terminating Maglione's deposition and filing the instant frivolous Motion. Their conduct cannot be rewarded by allowing them to invade the work product of Plaintiffs' counsel and unfairly limit only the Plaintiffs' abilities to adequately depose parties and witnesses.

16

### III.     CONCLUSION

The defendants'   Motion is a "smoke and mirrors" attempt to mislead the Court, by creating the illusion that there is some ongoing, or indeed, *any* misconduct by Plaintiffs'   counsel in depositions that warrants the harsh limitations on (only) the Plaintiff'  s discovery in their proposed protective orders. The defense would mislead the Court into issuing what may appear to be benign orders, but which do not comport with the rules, and which in application will deprive the Plaintiffs -- and only the Plaintiffs -- of  their ability to adequately prepare for dispositive Motions and trial.

The Plaintiffs want an expeditious end to this case, but having expended thousands of dollars and hundreds of attorney hours seeking defendants'   compliance with this Court'  s Orders, it would be manifestly unjust to deprive them of their rights to adduce their evidence at this late date before trial, or to proceed to trial without it and without adequate time to review the defendants'   late disclosures and prepare.

The defendants'   Motion for Protective Order is frivolous and dilatory and must be denied. In addition, the Plaintiffs are entitled to a remedy as claimed in the accompanying Objection with Motion for Orders.

17

**FOR THE PLAINTIFFS,**

Dated_____          _____

                             Susan V. Wallace
                             *~ Attorney at Law ~*
                             11 Blue Orchard Drive
                             Middletown, CT 06457
                             Tel: (860) 704-0472  Fax: -0490
                             law4us@rcn.com
                             Fed Bar No. CT08134

## CERTIFICATION OF SERVICE

The undersigned counsel certifies that a copy of the foregoing Memorandum with exhibits has been served upon:

Robert B. Mitchell, Esq.                         John Mitola, Esq.
Margaret M. Sheahan, Esq.                  John Bohannon, Jr., Esq.
Thomas F. Maxwell, Esq.                       Office of the City Attorney
Pullman & Comley, LLC                        City Hall Annex
850 Main Street                                      999 Broad Street
P.O. Box 7006                                         Bridgeport, CT 06604
Bridgeport, CT 06601-7006

Richard Albrecht, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604


on this ___ day of March, 2004, via

       _____  Regular U.S. Mail, first class, postage prepaid

       _____  U.S. Priority Mail

       _____  U.S. Express Mail or other overnight mail service

       _____  Facsimile

       _____  Hand-delivery


_____
 Susan V. Wallace, Esq.