UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH SCHILLER,<br>          Plaintiff, | CIVIL ACTION<br>NO. 3:01 CV-00452 (AVC) |
| JOHANNA S. GEORGIA,<br>          Plaintiff, | CIVIL ACTION<br>NO. 3:01 CV-00717 (AVC) |
| VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br>          Defendants. | (CONSOLIDATED)<br><br><br><br><br><br>OCTOBER 26, 2004 |

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT

I.   PRELIMINARY STATEMENT

Plaintiffs' opposition to Defendants' motions for summary judgment seeks to create the impression that there are myriad triable issues of fact in these cases. That false impression exists only when Plaintiffs' memorandum and Rule 56(a)(2) statement are taken at face value. It fades when record evidence is checked and no support for Plaintiffs' factual claims is found. It disappears when Plaintiffs' legal assertions are analyzed.

The record evidence supports three central facts. *First*, both Plaintiffs were aware of the BFD's and other (City, State and Union) anti-harassment and discrimination policies and

complaint procedures.[1] ***Second***, both Plaintiffs have exhibited their ability and willingness to use those complaint procedures.[2] ***Third***, whenever any female firefighter has made a harassment or discrimination complaint, or such an issue has come to light outside the formal complaint process, the BFD or City has investigated and, in most cases, resolved it in the complainant's favor.[3]

---

[1] See Defendants' July 23, 2004 Local Rule 56(c)(1) Statement Pertaining to Plaintiff Elizabeth Schiller, Exhibit 4, and Local Rule 56(c)(1) Statement Pertaining to Plaintiff Johanna Georgia, Exhibit 3.

[2] Ms. Schiller has filed an internal complaint regarding Donald Day in February 2000; a union grievance regarding the delay in the Day investigation in or about 5/00; a CHRO charge for sex harassment, sex discrimination and retaliation dated 3/3/00; an internal complaint regarding Donald Day and a poster on 3/5/00; an internal complaint regarding posted material on 3/16/00; an internal complaint regarding use of female quarters on 3/29/00; and internal complaint regarding postings on 5/24/01; a union grievance pertaining to breastfeeding special accommodations on or about 1/31/03; a Freedom of Information Commission complaint regarding the Bridgeport Fire Commissions' failure to hold a particular meeting when Ms. Schiller's breastfeeding grievance was on the agenda. Ms. Georgia has filed an internal complaint regarding Donald Day on 2/28/00; a union grievance to receive compensation for the 5/11/00 and 5/31/00 investigative interviews she refused to participate in; the EEOC charge on 5/11/00 which preceded this lawsuit; a union grievance on 11/17/00 regarding the change in her leave status; an internal complaint regarding sexual harassment/retaliation pertaining to air conditioning on 7/23/01; internal complaint regarding sexual harassment : retaliation pertaining to biohazard exposure on 7/23/01; a CHRO charge for retaliation, sex and disability discrimination on 8/14/03; a Municipal Prohibited Practices (MPP) complaint for retaliation on 6/19/00; an MPP complaint for attempted retirement on 10/10/03. See Composite Exhibit 1 attached.

[3] In the case of complaints, for example, the offending poster or calendar was removed; Donald Day was put on unpaid suspension (from which, indeed, he never returned); locks were put on the doors to the female quarters. Defendants' Local Rule 56(c)(1) Statement Pertaining to Schiller, ¶ 2(b) and Affidavit of David Dunn, ¶¶ 8 and 10; Defendants' Local Rule 56(c)(1) Statement Pertaining to Schiller, ¶ 2(h)(6), Affidavit of Earl Pettway, ¶ 7, and Schiller depo. pg. 130, l.15 – pg. 132, l.14; Defendants' Local Rule 56(c)(1) Statement Pertaining to Schiller, ¶ 2(h)(10) and Petrucelli depo, pg. 93, l.6 – pg. 94, l.21; Defendants' Local Rule 56(c)(1) Statement Pertaining to Schiller, ¶ 2(h)(12) and Schiller

The remainder of this Reply Brief clarifies a very few issues raised by Plaintiffs' opposition papers. Defendants otherwise continue to rely on their original moving papers. A careful analysis of both sides' submissions compels the conclusion that this case should not be tried.

## II. FACTS

Plaintiffs' Rule 56(a)(2) Statement and Memorandum are so replete with factual errors that they can neither be fully enumerated nor fairly disregarded in this page-limited reply memorandum required to be submitted in a short time-frame[4]. Therefore, this brief discusses only exemplars of the kinds of factual and evidentiary fallacies that pepper Plaintiffs' papers. Defendants urge the Court to review Plaintiffs' papers with a critical eye and to follow all references to their source to assess the true state of the record.[5]

---

depo, pg. 138, 1.5 – pg. 146, 1.8, pg. 132, 1.23 – pg. 138, 1.4. Without formal complaints, for example, the Signal 29 website and Engine Company 6's unofficial patch were investigated and resolved to Plaintiffs' favor as soon as practicable after they were discovered. Defendants' Local Rule 56(c)(1) Statement Pertaining to Schiller, ¶ 2(c), Affidavit of Michael Maglione, ¶¶ 9-11, Affidavit of Earl Pettway, ¶¶ 3-4, Affidavit of Larry Bussell, ¶¶ 5-6. See also, Affidavit of Thomas Connor attached hereto as Exhibit 2 and attachments.

[4] Defendants draw the Court's attention to their pending Motion To Strike some exhibits referenced in Plaintiffs' papers because they have not been provided to Defendants despite diligent efforts to persuade Plaintiffs to deliver them.

[5] In our own careful review of Plaintiffs' papers, Defendants have recognized two minor misstatements of fact in the moving papers on these motions, which we here acknowledge and for which we offer our apologies. First, Defendants' statement that the Signal 29 website was first brought to the attention of the management of the Bridgeport Fire Department ("BFD") by the filing of the first complaint in this action is in error. Some officers were aware of the website prior to that time. Second, there were three, not two, persons permitted to have union representation when interviewed in the investigation of the complaints against Captain Day: Lt. Fossesigurani, Capt. Day and

-3-

A.  Reference to documents not there. Plaintiffs' papers sometimes refer to an exhibit as containing some document, representation or fact that does not actually appear in the document.[6] For example, Plaintiffs' papers refer the reader to their Exhibit 3 for doctors' notes evidencing Plaintiff Georgia's fitness to return to duty. Plaintiffs' Rule 56(a)(2) Statement, pg. 60, ¶ 108. There is not a single doctor's note in Plaintiffs' Exhibit 3.

B.  Misleading references to deposition testimony. Repeatedly, Plaintiffs' references to deposition testimony limit the page and line references to distort the substance of the witness's testimony. For example, Chief Maglione's testimony about the design of the firehouse under construction, when read in its entirety, does not support the notion that quartering opportunities for women are rationed, although that is the proposition for which it is cited. Compare Plaintiffs' Rule 56(a)(2) Statement pg. 45, ¶¶ 34 and 35 with Plaintiffs' Ex. 51, Maglione Dep. pg. 86, l.4 – pg. 96, l.12.

C.  Mischaracterization of Defense Exhibits. Plaintiffs represent that the content of referenced defense exhibits is different, sometimes diametrically opposed, to what it actually is. *These cannot be categorized as differences of interpretation.* For example, Plaintiffs state that the transcript of the tape recording of Plaintiff Schiller's interview by City investigators in connection with Captain Day's offensive statement is inaccurate in that it

---

Lt. Nash. Like Fossesigurani and Day, Nash (mention of whom was omitted in Defendants' moving papers) faced possible discipline for his own conduct that was to be covered in the interview.

[6] In fact, Plaintiffs' Memorandum makes no references to the record whatsoever, leaving the reader to wander through the Exhibits and Rule 56 Statements of both sides without guidance to find any relevant record.

omits part of the interview during which Schiller was refused a request to restate for the tape the substance of what she related while the tape was not recording. In fact, the transcript reflects the investigators' acknowledgement that the tape had not been running for approximately ten minutes of the interview, the efforts of the investigators and Ms. Schiller to restate what was said in that interval and a specific invitation by the investigators to Ms. Schiller to add anything else she thought had been mentioned in that interval. Defendants' Local Rule 56(c)(1) Statement Pertaining to Schiller, Affidavit of David Dunn, Attachment F, pg. 28, ll. 2-23.

      D.     <u>Mischaracterization of Their Own Exhibits.</u> Plaintiffs refer the reader to their own exhibits to support propositions that the exhibits either refute or to which they do not relate. For example, Plaintiffs refer to their own Exhibit 39 to support the proposition that turnout gear sizing is only "best guess" when the exhibit itself shows "best guess" as only one of four alternatives for size ordering and each entry shows that an actual size identification or measurement, other alternatives on the form, was entered for each firefighter listed on the form.

      E.     <u>Reliance on Inadmissible Evidence.</u> Plaintiffs include inadmissible evidence in their attempts to create triable issues of fact in the face of Defendants' summary judgment evidence. For example, the complaint of Kathy Denton in an action brought in this Court and settled without admission of liability by the defense or adjudication of the facts is offered for the truth of its allegations, a clear violation of the rule against hearsay (as well as questionable under any relevancy standard). Plaintiffs' Memo. pg. 16, ¶ 2(h)(10), pg. 18, ¶

2(h)(16)(b), pg. 35, ¶ 2(h)(13)(b), pg. 54, ¶ 79. pg. 55, ¶ 80, pg. 56, ¶ 88, pg. 57, ¶ 90, pg. 58, ¶ 95.

  F. <u>Incomplete and Misleading Exhibits.</u> Plaintiffs use parts of available documents or groups of documents to give a false impression that is unquestionably wrong when the whole exhibit is examined. For example, they submit for the truth of its allegations a State administrative complaint of sex discrimination filed by Ina Anderson (another hearsay issue in any case). Plaintiffs' Memo. pg. 52, ¶ 74, pg. 63, ¶ 125. They fail to disclose to the reader, however, that the Commission on Human Rights and Opportunities dismissed that complaint for lack of reasonable cause to believe that discrimination had occurred. Affidavit of John Mitola, attached as Exhibit 3 and attachment thereto (executed Affidavit to follow).

  G. <u>Misleading References to Timing.</u> Plaintiffs refer to events in a jumble giving the impression that some occurred as a result of events that did not actually predate them or that multiple events were occasions of different complaints when there was only one event complained of multiple times. For example, in denying that "No one has filed a complaint that anything of the nature of the Day 'cunt' remark has occurred in the BFD, since February, 2000," Plaintiffs refer to their own exhibits 23, 24, 27, 30 and 52, suggesting that five other complaints have been filed about such remarks made since that time. Plaintiffs' Rule 56(a)(2) Statement, pg. 6. In fact, however, two of the cited exhibits (27 and 30) reference complaints about the very same remark; three (23, 24 and 52) reference complaints made many years *before* February 2000; and two (24 and 52) reference incidents not involving any remark at all. In short, *none* of the cited exhibits support the denial for which they are cited.

-6-

H.   <u>Complete Lack of Submitted Evidence.</u>  Plaintiffs' Memorandum recites great numbers of purported facts ***of which no evidence whatsoever is even suggested***. See, e.g., pages 2-4, referring to test scores, refused assignment requests, position eliminations, intentionally poor career advice, forced medical retirements and other actions allegedly experienced by female firefighters in BFD for which ***absolutely no evidentiary support*** is offered.

## III.   LEGAL ARGUMENT

Plaintiffs' legal arguments in response to Defendants' are generally inadequate or nonexistent. The following few points are raised on issues where Plaintiffs' Memorandum might create confusion or doubt.

### A.   **Summary Judgment Standard**

Plaintiffs mistake the standard for summary judgment, proposing that it is the Defendants' burden to prove negatives to defeat their bare allegations. See, e.g. Plaintiffs' Rule 56(a)(2) Statement at p.15, ¶ **2(h)(5)(c)**, "Defendants provide no evidence that the incident did not happen." Of course, it is black letter law that the opponent of a summary judgment motion must provide evidence to support the complaint's allegations and cannot rely at this stage of litigation on bare assertions or reiterations of the allegations of the pleadings. <u>Birdsall v. City of Hartford</u>, 249 F. Supp. 2d. 163, 168-9 (D. Conn. 2003).

Repeatedly, Plaintiffs answer Defendants' admissible evidence of a fact with inadmissible assertions of their disbelief of that evidence. For example, in response to the evidence of BFD's inquiry into Ms. Georgia's allegation that an inappropriate cadence was used in training, Plaintiffs offer their failure to recollect the inquiry's occurrence. Plaintiffs'

Memo. pgs. 8-9, ¶¶ 2(d)(1)(b) and (c), Ex. 1, ¶ 8 and Ex. 2, ¶ 8. Similarly, Plaintiffs' Rule 56(a)(2) Statement repeatedly refers the reader to paragraphs of the operative Amended Complaints. This is not evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), cert. denied, 484 U.S. 1066 (1988). Nor are the many unsupported allegations of the Memorandum. Id.

Plaintiffs have not met their burden to carry their claims to trial.

### B. Summary Judgment Is Not Forbidden In Hostile Environment Sexual Harassment Claims

Plaintiffs extraordinary assertion that "summary judgment is not appropriate on hostile environment claims" is not supported by the law. See, e.g., Clark County School District v. Breeden, 533 U.S. 912 (2001) (reversing reversal of summary judgment in hostile environment case); Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004) ( upholding summary judgment in hostile environment case); Deters v. Lafuente, 368 F.3d 185 (2d Cir. 2004) (same); Mormol v. Costco Wholesale Corp., 364 F.3d 54 (2d Cir. 2004) (same). Summary judgment is available in any case where there is no genuine issue of material fact. Celotex, supra; Birdsall, supra.

### C. Defendants Do Not Argue Title VII Bars Plaintiffs' Claims Under 42 U.S.C. §§ 1983, 1985 and 1986

Plaintiffs devote considerable effort and many citations (several with inaccurate parenthetical descriptions) to refute an argument Defendants have not made. Plaintiffs' Memorandum pgs. 33-35. To prevent any confusion to the Court, Defendants here affirm that they do not claim that Title VII provides an exclusive remedy for the claims Plaintiffs assert. The point made in Defendants' Memoranda in support of their summary judgment

motions (Schiller, pg. 41; Georgia, pg. 61) is eloquently stated in a case Plaintiffs cite, <u>Day v. Wayne County Bd. of Auditors</u>, 749 F. 2d 1199 (6th Cir. 1984):

> Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by Sec. 1983 in addition to those created by Title VII.

<u>Id</u>. at 1205 (Citations omitted).

### D. Claims Under the Equal Protection Component of the Fifth Amendment Require a Federal Actor

Plaintiffs' Memorandum points out that cases cited by Defendants for the proposition that a Section 1983, 1985 or 1986 action premised on a violation of the Fifth Amendment to the U.S. Constitution deal with the Amendment's due process clause and not expressly with its equal protection element. Plaintiffs' Memorandum pgs. 35-36. This is because the Fifth Amendment's equal protection element is read into its due process clause, as it contains no express equal protection clause. It is indeed the law, nevertheless, that federal governmental action must be present for an equal protection violation of the Fifth Amendment to be stated. <u>Schweiker v. Wilson</u>, 450 U.S. 221, 227 (1981); <u>Lee v. County of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001).

By: *Margaret M. Sheahan*
Margaret M. Sheahan, ct05862
Robert B. Mitchell, ct02662
For: Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
Facsimile (203) 576-8888

ATTORNEYS FOR:
CITY OF BRIDGEPORT,
EARL PETTWAY and
MICHAEL MAGLIONE

## **CERTIFICATION**

     Pursuant to Fed. R. Civ. P.5 (b), I hereby certify that a copy of the above was mailed on October 26, 2004, to all counsel and pro se parties of record.

Susan V. Wallace
11 Blue Orchard Drive
Middletown, CT 06457

John R. Mitola
Office of the City Attorney
999 Broad Street
Bridgeport, CT 06604

_____
Margaret M. Sheahan

BPRT/67551.1/MMS/535142v1