> evidenced by a decrease in wage or salary, a less
> distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices . . . unique to a particular situation.

Sanders v. NY City Human Resources Admin., 361 F.3d 749 (2d Cir. 2004)(citing Terry v. Ashcroft, 336 F.3d 128, 138, 141 (2d Cir. 2003)).

The court concludes that the plaintiffs have raised genuine issues of material fact as to whether the lack of female firefighting gear and alleged differences in the housing of female firefighters resulted in a "material change in working conditions." A jury might reasonably find that the lack of female gear, for example, was "more disruptive than a mere inconvenience." See Wanamaker v. Columbian Rope Company, 108 F.3d 462, 466 (2d Cir. 1997) (noting that "[B]ecause there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches to level of 'adverse'"). In addition, Georgia has put forth evidence of an adverse employment action in the form of the BFD's alleged refusal to return her to work.

### 2. Circumstances Giving Rise to an Inference of Discrimination

The fourth element of the prima facie case requires that the plaintiffs present evidence that "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan Dist. Comm., 134 F. Supp. 2d 470 (D. Conn, 2001)(internal citations and quotations omitted). The Supreme Court has stated that "proof of discriminatory motive is critical, although it can in some situations be inferred from the

21

mere fact of the differences in treatment." Teamsters v. United States, 431 U.S. 324 (1977).

Here, the plaintiffs have presented evidence from which a jury could infer from the mere fact of differences in treatment that discriminatory animus existed. The evidence includes, but is not limited to, Day's comment about female firefighters and the various postings in the firehouses.

The defendants satisfy their burden of proffering a nondiscriminatory reason for refusing to take Georgia back to work. The June 2004 letter from the BFD to Georgia states that the nondiscriminatory reason for not allowing Georgia back to work is that "it is still unclear whether those [medical] restrictions interfere with [Georgia's] ability to perform the duties of a firefighter."

Nonetheless, the court concludes that despite the BFD's nondiscriminatory reasons, a reasonable jury could find that in the context of the other alleged sexual harassment "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan Dist. Comm., 134 F. Supp. 2d 470 (D. Conn, 2001).

Therefore, the motions are denied with respect to the Title VII disparate treatment claims.

**C.   Retaliation**

The defendants next move for summary judgment on the plaintiffs' Title VII retaliation claims. Specifically, the defendants argue that the plaintiffs have not presented evidence of "adverse

22

employment actions" or that the events are the "result from the motivation necessary to establish" a retaliation claim. The plaintiffs respond that "there is ample evidence and disputed facts . . . to send the retaliation claims to the jury."

Title VII makes it unlawful for an employer to retaliate against an employee for having "opposed any [unlawful employment] practice . . . or because he has made a charge, testified, assisted or participated . . . in an investigation" of unlawful employment practices. 42 U.S.C. § 2000e-(3)(a).

Pursuant to McDonnell Douglas, the plaintiffs have the initial burden of establishing a prima facie case of Title VII retaliation. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir. 1996). A prima facie claim of retaliation requires that the plaintiff show:

> (I) participation in a protected activity known to the defendant; (ii) an employment action disadvantaging the plaintiff; (iii) a casual connection between the protected activity and the adverse employment action.

Tomka v. Sheiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995). See also Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). It is undisputed that the plaintiffs meet the first requirement of the prima facie case.[6] The defendants argue that the plaintiffs have failed to raise a genuine issue as to the second and third parts of the prima facie case.

---

[6] The plaintiffs' formal and informal complaints about alleged sexual harassment in the BFD "were undoubtably forms of protected activity." Gregory v. Daly, 243 F.3d 687, 701, 700 (2d Cir. 2001)(noting "[t]he law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management")(quoting Matima v. Celli, 228 F.3d 68,78 (2d Cir. 2000).

23

### 1. An Employment Action Disadvantaging the Plaintiff

The second prong of the prima facie case, requires the plaintiff to set forth evidence of a "materially adverse change in the terms or conditions of employment." Both plaintiffs allege that the City engaged in "[i]ntimidating and threatening" behavior "in the course of the 'investigation' into complaints." Specifically, the plaintiffs allege that the City denied "female firefighters union and legal representation in 'investigatory hearings.'" Furthermore, Georgia alleges that the City has not allowed her to return to work in retaliation for her complaints.

In <u>Richardson</u> v. <u>New York Dep't of Correctional Serv.</u>, 180 F.3d 426 (2d Cir. 1999), the Second Circuit held that a plaintiff established a prima facie case of retaliation "based on . . . allegations" that the defendant correctional facility's personnel "were aware of and harassed her because of the protected activities which she engaged in her attempts to fight harassment she perceived" in the workplace. 180 F.3d 426, 445 (2d Cir. 1999). The Second Circuit adopted the "view that unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action" to satisfy the prima facie case's second prong. 180 F.3d 426, 446 (2d Cir. 1999).

Here, the plaintiffs allege that the BFD intimidated them during the investigation. Specifically, Schiller alleges that the defendants did not allow her to bring her union representative to the investigatory interview. Georgia alleges intimidating and harassing behavior during the investigation. The court concludes that a jury might reasonably find that the alleged conduct during the

24

investigation of the plaintiffs' complaints constituted retaliatory adverse employment action.

### 2. Causal Connection

The fourth prong of the prima facie case requires evidence of a "casual connection between the protected activity and the adverse employment action." Tomka v. Sheiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995). Specifically:

> Proof of a causal connection can be established directly through evidence of retaliatory animus directed against the plaintiff . . . or indirectly by showing that the protected activity was followed closely by the discriminatory treatment.

Richardson v. New York Dep't of Correctional Serv., 180 F.3d 426, 44y (2d Cir. 1999). Furthermore, "a substantial time lapse between an employee's protected activity and the adverse employment action is counter-evidence of retaliatory conduct." Reed v. Conn. Dep't of Trans., 161 F. Supp. 2d 73, 83 (D. Conn. 2001)(citations omitted).

In Richardson v. New York Dep't of Correctional Serv., a case concerning claims of Title VII retaliatory constructive discharge, the Second Circuit held that a "two year gap is too wide to support the inference that she was terminated in retaliation for complaining about discrimination." The court also stated that the plaintiff had "failed to adduce any other evidence to indicate that her discharge was the product of retaliatory animus." 180 F.3d 426, 447 (2d Cir. 1999).

Here, the plaintiffs allege that the retaliation for their complaints occurred during the investigation into Day's comment and conduct. The court concludes that a reasonable jury could find the

25

proximity between the protected activity and the alleged retaliation is sufficient circumstantial evidence of a causal connection.

Accordingly, the motions are denied as to the plaintiffs' claims of Title VII retaliation.

### D. Hostile Work Environment: Sexual Harassment

The defendants next argue that they are entitled to judgment as a matter of law on the plaintiffs' hostile work environment claims. Specifically, the defendants argue that the incidents "were infrequent and episodic and the majority of them lacked sexual overtone at all" and that there is no "evidence giving rise to an inference of discriminatory intent." Furthermore, the defendants argue that the City cannot be liable because the "events giving rise to the complaints were not the actions of the Department taken officially through its supervisory employees" and the fire department's "reaction was always appropriate." The plaintiffs respond that "[t]he harassment of women in the BFD is both severe and pervasive."

The Second Circuit recently reiterated in Petrosino v. Atlantic, 2004 WL 2177044, *8 (2d Cir. Sept. 24, 2004), that, "Title VII's prohibition of sex discrimination extends to sexual harassment." A plaintiff may prevail on a hostile work claim "notwithstanding . . . no 'tangible employment action . . .[that] itself constitutes a change in the terms and conditions of employment' by formally altering a worker's employment status." Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001).

26

Specifically, to prevail on a Title VII claim premised on "sexual harassment based on a hostile work environment," a plaintiff must show:

> (1) that the work place was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.

Petrosino v. Atlantic, 2004 WL 2177044, *7 (2d Cir. Sept. 24, 2004)(citations omitted).

The Second Circuit has rejected the argument that "common exposure of male and female workers to sexually offensive material necessarily precludes women from relying on such evidence to establish a hostile work environment based on sex." Petrosino v. Atlantic, 2004 WL 2177044, *7 (2d Cir. Sept. 24, 2004). Furthermore, the Second Circuit has noted that simply because "offensive material was not directed specifically" at the plaintiff "does not, as a matter of law, preclude a jury from finding" a "hostile work environment based on sex." Petrosino v. Atlantic, 2004 WL 2177044, *9 (2d Cir. Sept. 24, 2004).

### 1. Severe and Pervasive Discriminatory Intimidation

As to the first element of the prima facie case, whether the "work place was permeated with discriminatory intimidation that was sufficiently severe or pervasive," the court concludes that there are questions of fact precluding summary judgment. The issues of fact include, but are not limited to, whether instances from 1999 through 2004, such as Day's "cunt" comment, the presence of various posters and calenders, and availability of adult television channels at the

27

firehouses, permeated the work place with discriminatory intimidation sufficiently severe to alter the conditions of the plaintiffs' work environment. See Petrosino v. Atlantic, 2004 WL 2177044, *10 (2d Cir. Sept. 24, 2004)(reversing district court's grant of summary judgment to the defendant employers on Title VII sexual harassment claim).

### 2.   Employer Liability

As to the second element, whether "a specific basis exists for imputing the conduct that created the hostile environment to the employer," the court concludes that genuine issues of material fact preclude the entry of summary judgment.

In Petrosino v. Atlantic, the Second Circuit set forth two standards for Title VII employer liability for hostile work environment claims. The standard for employer liability depends on who allegedly committed the sexual harassment. 2004 WL 2177044 (2d Cir. Sept. 24, 2004). When "non-supervisory co-workers" commit acts of discrimination, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate action." Petrosino v. Atlantic, 2004 WL 2177044, *12 (2d Cir. 2004)(citations omitted).

On the other hand, when a "supervisor with immediate or successively higher authority over the employee" allegedly commits acts of discrimination, "a court looks first to whether the supervisor's behavior 'culminate[d] in a tangible employment action' against the employee." If a tangible employment action did occur, then "the employer will, *ipso facto*, be vicariously liable."

Petrosino v. Atlantic, 2004 WL 2177044, *12 (2d Cir. Sept. 24, 2004). If no tangible employment action occurred, the employer will still be liable unless the employer succeeds in establishing "as an affirmative defense that:"

> (a) it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (b) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'

2004 WL 2177044, *12 (2d Cir. Sept. 24, 2004).

In this case, the plaintiffs allege that both non-supervisory and supervisory BFD employees participated in the creation of the hostile work environment. Accordingly, the court must analyze this case under both liability standards. The court concludes that issues of fact exist under both standards of liability.

Under the liability standard for non-supervisory employee discrimination, a reasonable jury could find that the employer knew or reasonably should have known about the harassment but failed to take appropriate action. Issues of fact include, but are not limited to, whether the BFD's reaction to repeated postings of inappropriate materials in the firehouses were sufficient.

Similarly, under the standard of liability for supervisory employee discrimination, the court cannot find as a matter of law that the plaintiffs unreasonably failed to take advantage of the fire department's preventative or corrective opportunities. For example, on March 5, 2000, Schiller wrote a letter to Pettway complaining about Day's comments and asking to be

29

removed from his command. On February 28, 2000, Georgia filed an internal complaint regarding Day's comment. While the defendants argue that "[i]n every instance in which Plaintiff[s] complained to BFD or the City Labor Relations Office, investigation and correction followed as promptly as possible . . .," a reasonable jury might find that the department failed to remedy various allegedly sexually harassing aspects of the work environment.

Accordingly, the motions are denied with respect to the Title VII hostile work environment claims.

III.   **Section 1983 Claims Against All Defendants** [7]

The defendants argue that they are entitled to summary judgment on all of the plaintiffs' 42 U.S.C. § 1983 claims. The plaintiffs argue that each of the claims should go to the jury.

A.   **First Amendment**

As to the First Amendment, the defendants argue that "each of the examples Plaintiff cites of supposed violation of her rights . . . utterly lacks legal and/or factual value." In response, the plaintiffs state that "material fact issues over the retaliation being in dispute, the § 1983 claims for speech deprivations must go to the jury."

---

[7] Title 42 of the United States Code, section 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

To make out a prima facie case of First Amendment retaliation under § 1983, a plaintiff show that:

> (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination.

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)(internal citations omitted). The McDonnell Douglas burden shifting framework applies to § 1983 claims. See e.g. Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 123 (2d Cir. 2004). Therefore, the plaintiff has the burden of setting forth a *de minimus* prima facie case.

### 1. Constitutionally Protected Speech

The plaintiffs clearly engaged in constitutionally protected speech when they filed complaints about department-wide sexual harassment. See Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134 (2d Cir. 2003)(stating that if a plaintiffs "complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.'").

### 2. Adverse Employment Decision

In Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999), the Second Circuit noted that in addition to "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand,"

> lesser actions may also be considered adverse employment actions . . . .adverse employment actions may include negative evaluation letters, express accusations of lying, assignment to lunchroom duty, reduction in class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion

196 F.3d at 110 (citing Bernheim b. Litt, 79 F.3d 318, 327 (2d Cir. 1996). Based on the totality of the circumstances evident here, a

31

reasonable juror could conclude that Schiller and Georgia suffered adverse employment actions.

### 3.   Causal Connection

The Second Circuit has stated that "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action" Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

"Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). The court concludes that questions regarding the defendants' motives predominate the inquiry regarding how important a role the plaintiffs' speech played in the alleged adverse employment actions. For example, it is unclear why the BFD did not allow the Schiller to take a representative into the investigatory interviews.

Accordingly, the motions are denied with respect to the § 1983 First Amendment retaliation claims.

### B.   Equal Protection

The defendants argue that they are entitled to summary judgment on the plaintiffs' § 1983 equal protection claims because "[t]he Fifth Amendment . . . only applies to the federal government." The plaintiffs respond that "the material issues of fact over the disparate treatment being in dispute, the § 1983 claims about Equal Protection must go to the jury."

In count two, the plaintiffs state that the defendants have violated their rights to "Equal Protection of the Law, guaranteed by

32

the Fifth Amendment." The court concludes that the reference to the Fifth Amendment was a scrivener's error. The plaintiffs are clearly arguing under § 1983 that the City and individual defendants have violated the Fourteenth Amendment's Equal Protection clause. For example, earlier in count two, the plaintiffs refer to the Fourteenth Amendment when they assert "rights . . . under the Fifth and Fourteenth Amendments to the U.S. Constitution to Equal Protection of the Law and Due Process of the law." Because count two refers to the Fourteenth Amendment, the court rejects the defendants' argument that the court should dismiss the plaintiffs' § 1983 equal protection claims simply because the count refers to the Fifth Amendment.

Furthermore, "[i]ndividuals have a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 118 (2d Cir. 2004). See also Annis v. County of Westchester, New York, 36 F.3d 251, 254 (2d Cir. 1994). Specifically, the Second Circuit has stated that "sexual harassment of women constitutes disparate treatment because of gender, and is actionable under Section 1983." Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 143-44 (2d Cir. 2003)(internal citations and quotation marks omitted). To succeed on a § 1983 claim based on sexual harassment, "the plaintiff must prove that she suffered purposeful or intentional discrimination." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 118 (2d Cir. 2004).

The court concludes that the plaintiffs have presented evidence from which a reasonable juror could find that the defendants were responsible for sexual harassment in violation of the plaintiffs'

33

Fourteenth Amendment rights to equal protection. See Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 124 (2d Cir. 2004)(noting that on § 1983 equal protection claim, the female plaintiff "has made out her prima facie case by offering evidence of discriminatory comments, which constitute 'direct evidence,' and are adequate to make out a prima facie case, even when uncorroborated.") The evidence includes, but is not limited to, Day's comments, the allegations of the inappropriate cadence, and the repeated postings of inappropriate material in the firehouses.

Therefore, the motions are denied with respect to the § 1983 equal protection claims.

### C.  Due Process

The defendants argue that the plaintiffs have failed to "articulate a property interest of which the Plaintiff was deprived, a necessary element of any § 1983 due process claim." The plaintiffs respond that "as tenured permanent civil service employees, [they] have classic property interests in their employment" encompassing the "terms and conditions, status, and job itself."

To prevail on a claim of deprivation of procedural due process pursuant to § 1983, "the plaintiff must show that [the plaintiff] possessed a protected liberty or property interest, and that he was deprived of that interest without due process." McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001)(internal quotation marks and citation omitted).

The plaintiffs put forth potential bases for a due process

violation.[8]  First, the plaintiffs argue that "unequal quartering and assignments deprives the women of overtime earnings, denial of "acting" assignments deprives them of a pay differential."  Second, the plaintiffs argue that  "being kept off the job on perpetual 'sick leave' deprives Georgia of compensatory time, overpay time, and 'acting pay."

### 1. Lost Pay

The plaintiffs argue that "loss of pay" "can support a due process claim by a public employee."  Even assuming that the plaintiffs have set forth a valid property interest in the form of lost pay, the plaintiffs have failed to present any evidence that the defendants have deprived the plaintiffs of pay.

While the plaintiffs argue that "unequal quartering and assignments deprives" them of "overtime earnings," they have failed to put forth any evidence in support of this claim.  Maglione has testified that the BFD does not assign female firefighters to firehouse 10's for the night shift because there are no female sleeping quarters in firehouse 10's.  There are also a limited number of female beds in the other BFD firehouses.  However, the plaintiffs

---

[8] The plaintiffs also seem to argue that the alleged failure of the BFD to hire them in 1997-98 violated due process.  However, the plaintiffs have presented no evidence, nor have they cited any authority, for the proposition that they had a property interest in prospective employment with the BFD in 1997-1998.  "In order to have an interest protectible under the Constitution, a person must have a "legitimate claim of entitlement to it." Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577(2d Cir. 2002).  An abstract need, desire or unilateral expectation is not enough." Abramson v. Pataki 278 F.3d 93, 100 (2d Cir. 2002).  Accordingly, the court finds that the plaintiffs have failed to set forth a property interest in prospective employment with the BFD.  The plaintiffs' failure to hire claim cannot, as a matter of law, provide the basis for the § 1983 due process claims.

have not presented any evidence that this arrangement has personally deprived Schiller or Georgia of overtime pay or assignments necessary for promotion.

Accordingly, the motions are granted with respect to Schiller's § 1983 due process claim.

### 2.    Failure to Return to Work

In contrast, Georgia has set forth a potential violation of due process in the form of her allegation that the BFD has refused to allow her to return to work. The court assumes without deciding, that Georgia, as a permanent municipal firefighter for the City of Bridgeport, has a property interest in her employment. See Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)(finding a property interest in employment where "[t]he collective bargaining agreement between the Town and the police union to which [the plaintiff] belonged guaranteed that he could not be fired without just cause").

Furthermore, Georgia has presented evidence that the BFD has deprived her of this property interest in employment without due process. As set forth above, Georgia has presented evidence that she has attempted to return to work and that the BFD has not allowed her to do so. The BFD's nondiscriminatory reason for not taking Georgia back is that she remains on sick leave. Despite this explanation, the court concludes that Georgia has put forth sufficient evidence from which a jury could find that the BFD's refusal to allow Georgia to return to work constituted a deprivation of her property interest

in her employment in violation of the Fourteenth Amendment.[9]

Accordingly, the motions are denied as to Georgia's § 1983 due process claim.

### D. Section 1983 Liability: City and Maglione

The defendants also argue that neither the City nor Maglione can be liable pursuant to § 1983. The plaintiffs respond that the Maglione "has ordered Georgia to stay out of work" and the City and Maglione "have done no meaningful investigation" into allegations of sexual harassment.

#### 1. The City's Liability

First, the defendants argue that the City cannot be held liable pursuant to § 1983 because the plaintiffs have not presented evidence that the City is "actually responsible for [Plaintiff's] injuries, as through a 'policy or custom.'"

"Municipalities . . . are considered 'persons' within the meaning of § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 128 (2d Cir. 2004). A city can be held liable pursuant to § 1983 "only . . . if its 'policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." However, a city may be held liable for a "practice [that] is so widespread as to have the force of law" Back v. Hastings, 365 F.3d 107, 128 (2d Cir. 2004) (citation omitted). The court concludes that a reasonable jury could

---

[9] Georgia also argues that alleged injury to her "reputation can support a due process claim." Because the court has decided that Georgia has set forth a valid due process claim regarding her employment, the court need not also address her property interest in her reputation.

find that the City allowed a practice of discrimination to continue that was so widespread as to have the force of law. Issues of fact include whether the City knew of sexually inappropriate postings in the firehouses and how the City responded to the plaintiffs' various complaints. Accordingly, motion for summary judgment is denied in this respect.

### 2. Maglione's Liability

Second, as to Maglione, the defendants argue that the plaintiffs "allege[] but ha[ve] no evidence to suggest that Maglione created or allowed to continue, a policy or custom sanctioning conduct constituting a constitutional violation."

The Second Circuit requires "personal involvement of defendants in alleged constitutional deprivations" as a "prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). The Second Circuit has enumerated the various ways that plaintiffs can show personal involvement. The plaintiff must present "evidence that:"

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that the unconstitutional acts were occurring.

Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(quotation marks and citation omitted).

The court concludes that the plaintiff has presented

evidence from which a reasonable jury could find that the Maglione allowed the continuance of a policy or custom under which unconstitutional practices occurred in violation of § 1983. For example, issues of fact exist as to Maglione's reactions to the various postings and complaints. Furthermore, issues of fact exist as to Maglione's involvement in the decision not to allow Geogia back to the BFD.

IV. **Sections 1985(3) and 1986 Claims Against All Defendants**

      A. **Section 1985(3)**

The defendants argue that they are entitled to summary judgement on the plaintiffs' claims pursuant to 42 U.S.C. § 1985(3).[10] Title 42 U.S.C. § 1985(3) provides a cause of action when two or more people conspire to deprive "any person or class of persons of the equal protection of the laws."

The defendants argue that the plaintiffs do not allege "the intent" to "deny or punish a civil rights exercise." In addition, the defendants argue that "[w]here as here . . . municipal employees accused of a § 1985 conspiracy were acting solely in their municipal capacities, both the § 1985 and § 1986

---

[10]Title 42 of the United States Code, section 1985 states in relevant part: "If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

39