claims premised on their conduct fail." The plaintiffs respond
that "this case compels a jury assessment of the evidence of
insidious and concerted conduct . . . to keep Johanna Georgia
out of work for three years on perpetual 'sick' leave."

A § 1985(3) claim has four elements:

> (1) a conspiracy, (2) for the purposes of depriving
> another of the 'equal protection of the laws, or equal
> privileges and immunities under the laws;' (3) an act in
> furtherance of the conspiracy; (4) an injury to a person
> or property, or the deprivation of a legal right.

Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). The court
concludes that the plaintiffs have failed to submit any evidence
of a conspiracy to deprive them of the equal protection of the
laws. Accordingly, the motion, in this respect, is granted.

### 2. Section § 1986

The defendants also move for summary judgment on the
plaintiffs' § 1986 claims.[11]  To prevail in a § 1986 cause of
action, the plaintiff must show that the defendant had "actual
knowledge of the conspiracy [under § 1985(3)], was in a position
to prevent its execution, and failed to take reasonable steps to
do so." See Buck v. Board of Elections, 536 F.2d 522, 524 (2d
Cir. 1976). A "§ 1986 claim must be predicated upon a valid §
1985 claim." Because the plaintiffs' § 1985(3) claims fail,

---

[11] Title 42 U.S.C. of the United States Code, section 1986 states
in relevant part: "Every person who, having knowledge that any of the
wrongs conspired to be done, and mentioned in section 1985 of this
title, are about to be committed, and having the power to prevent or
aid in preventing the commission of the same, neglects or refuses so
to do, if such wrongful act be committed, shall be liable to the
person injured . . . for all damages caused by such wrongful act,
which such person by reasonable diligence could have prevented . . .
." 42 U.S.C. § 1986.

40

their § 1986 claims must also fail.  Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). Accordingly, the motions are granted with respect to § 1986.

V.    **Connecticut Constitutional Claims Against All Defendants**

The defendants move for summary judgment on all five of the plaintiffs' Connecticut constitutional claims.  The plaintiffs only respond to the defendants' arguments regarding the claim pursuant to the Art. 1, § 20 of the Connecticut Constitution.

A.    **Free Speech: Art. 1, § 4**[12]

The defendants argue that they are entitled to summary judgment on the plaintiffs' free speech Connecticut constitutional claims "for the same reasons" as they are entitled to summary judgment on the plaintiffs' First Amendment claims.  The court agrees.

"The Connecticut Supreme Court has recognized a private right of action under the free speech clause of the Connecticut Constitution." Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339, 356 (D. Conn. 2001). For the same reasons that this court denies summary judgment as to the plaintiffs' First Amendment claims, this court denies summary judgment as to the plaintiffs' claims under Article 1, § 4 of the Connecticut Constitution. See Ward v. Housatonic Area Regional Transit Dist., 154 F.Supp. 2d 339, 356 (D. Conn. 2001)(holding that

---

[12] Article 1, § 4 of the Connecticut Constitution states: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

41

"Because the court already denied [the defendant's] motion as to the [plaintiff's] federal First Amendment claims, the court finds that summary judgment should be denied as well as to the claims brought under the Connecticut Constitution").

Accordingly, the motions are, in this respect, denied.

### B.    Equal Rights and Due Process: Art. 1, §§ 1, 8[13]

The defendants argue that they are entitled to summary judgment on the Connecticut constitutional equal protection claims "like [their] parallel . . . Title 42 U.S.C. § 1983 claims."  As to the due process claims, the defendants argue that the Connecticut constitution guarantees "criminal due process" and because the plaintiffs' claims are "solely civil, her reliance on this constitutional provision is fatal."  The plaintiffs do not respond.

"[T]here is no private cause of action for monetary damages under the equal protection and due process provisions . . . of the Connecticut Constitution."  See Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339, 356 (D. Conn. 2001)(citation omitted).  Accordingly, the motions are granted in this respect.

_____

[13] Article 1, § 1 of the Connecticut Constitution states: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."  Article 1, § 8 of the Connecticut constitution states, in part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . ."

42

### C.     Right of Redress, Art. 1, § 10[14]

The defendants argue that the Connecticut Constitution's Art. 1, § 10 "has no relevance to this case at all."  The court agrees.

Section 10 is a "limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818. . ." Dubay v. Irish, 201 Conn. 518, 529 (1986). The Connecticut Supreme Court has held that "it is clear that § 10 is implicated only where a right that existed at common law or by statute prior to 1818 has been infringed upon or abolished." Dubay v. Irish, 201 Conn. 518, 529 (1986).  The plaintiffs have presented no authority to support the proposition that they have been deprived of a common law or statutory right that was in existence prior to 1818. See Dubay v. Irish, 201 Conn. 518, 529 (1986).  Consequently, the motions are granted in this respect.

### D.     Equal Protection: Art. 1, § 20 [15]

Article 1, § 20 of the Connecticut Constitution provides:

> No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability.

Conn. Const. Art.1, § 20.  The plaintiffs concede that "[t]here

---

[14] Article 1, § 10 of the Connecticut Constitution states: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

is no statutory remedy" for the deprivation of an individual's

rights under Art 1, § 20 of the Connecticut Constitution.

The court concludes that the issue of whether there is an

individual right of redress under Art. 1, § 20 of the

Connecticut Constitution is a novel and complex issue of state

law which is better left to the state courts of Connecticut. See

28 U.S.C. § 1367©). Accordingly, the court declines to exercise

supplemental jurisdiction over the plaintiffs' Art. 1, § 20

claim. See 28 U.S.C. § 1367(c)(providing, in part, that

"district courts may decline to exercise supplemental

jurisdiction over a claim . . . if - (1) the claim raises a

novel or complex issue of State law").

## VII. Common Law Claims Against All Defendants

### A.    Intentional Infliction of Emotional Distress

The defendants argue that they are entitled to judgment as

a matter of law on the plaintiffs' claim of intentional

infliction of emotional distress. Specifically, the defendants

argue that the "facts in this case lend[] no support whatsoever

to these charges." The plaintiffs respond that "the question of

whether the facts, including those in dispute, support a finding

of intentional infliction of emotional distress is the province

of the jury."

To make out a prima facie case of intentional infliction

of emotional distress under Connecticut law, the plaintiff must

establish:

> (1) the actor intended to inflict emotional distress;
> or that he knew or should have known that the
> emotional distress was a likely result of his

44

conduct; (2) that the conduct was extreme and
outrageous; (3) that the defendant's conduct was the
cause of the plaintiff's distress; and (4) that the
distress suffered by the plaintiff was severe.

Minor v. Town of Chesire, 126 F. Supp. 2d 184, 194 (D. Conn.

2000); D'Amato v. Southern Conn. Gas Co., 2000 WL 34325258, *4

(D. Conn Sept. 8, 2000).

"Whether the defendant's conduct is sufficient to satisfy

the element of extreme and outrageous conduct is a question, in

the first instance, for the court." Johnson v. Chesebrough-Ponds

USA Co., 918 F. Supp. 543, 552 (D. Conn. 1996).  The standard

for "extreme and outrageous" conduct is difficult to meet:

> Liabilty for intentional infliction of emotional
> distress requires conduct that is so extreme and
> outrageous that it goes beyond all possible bounds of
> decency, is regarded as atrocious, is utterly
> intolerable in a civilized society, and is of a
> nature that is especially calculated to cause, and
> does cause, mental distress of a very serious kind.

Minor v. Town of Chesire, 126 F. Supp.2d 184, 194 (D. Conn.

2000). See also Johnson v. Chesebrough-Ponds USA Co., 918 F.

Supp 543, 552 (D. Conn. 1996).

In Minor v. Town of Chesire, a district court held that a

female police officer had failed to allege conduct "sufficiently

extreme and outrageous to support a claim of intentional

infliction of emotional distress." 126 F. Supp.2d 184, 194 (D.

Conn. 2000).  In a case factually similar to this case, the

plaintiff alleged that the town had: 1) "refused to protect

plaintiff and other women from sexual harassment," 2) "refus[ed]

to take action to protect plaintiff" from harassment by her

shift commander, and 3) "reprimand[ed] plaintiff for asserting

her rights to be free from sexual harassment, forcing plaintiff

45

to resign her position . . . in retaliation." <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn. 2000)

The <u>Minor</u> court held that "as a matter of law, this is not sufficiently extreme and outrageous to support a claim of intentional infliction of emotional distress." <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn. 2000). The court went on to note that the plaintiff had failed to allege that the town "conducted such activities in a humiliating, extreme, or outrageous manner." <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn. 2000).

Similarly, the plaintiffs here have not set forth evidence that the City acted in a "humiliating, extreme, or outrageous manner."

Therefore, the motions are granted with respect to the claims of intentional infliction of emotional distress.[16]

---

[16] Furthermore, the plaintiffs claim "[u]nder a theory of respondent superior, [that] the City is liable to Plaintiff[s] for all conduct by its employees, officials, agents, and representatives and for the emotional distress complained of herein." The City cannot be liable for any emotional distress that the individual plaintiffs may have inflicted on the plaintiffs. As set forth above, the tort of intentional infliction of emotional distress requires that the defendant "intended" to inflict emotional distress. In contrast, Conn. Gen. Stat. § 52-557n provides that, "a political subdivision of the state shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer or agent which constitute . . . <u>willful misconduct</u> . . ." Conn. Gen. Stat. § 52-557n(a)(2)(A)(emphasis added). "Under Connecticut law, the term "willfulness" is synonymous with 'intentional.'" <u>See</u> <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). Therefore, a Connecticut town cannot be held liable for intentional infliction of emotional distress.

## B. Breach of Covenant of Good Faith & Fair Dealing

The defendants argue that the existence of a collective bargaining agreement precludes the plaintiffs from bringing an action for breach of the covenant of good faith and fair dealing.  The plaintiffs respond that "evidence [of] sex discrimination and a hostile environment, failures to investigate and remedy, and retaliation . . . is enough to send that claim to the jury."  The plaintiffs state that the "source of the covenant is the employer-employee *relationship*; the contract is but evidence."  Furthermore, the plaintiffs argue that the collective bargaining agreement "does not speak to sexual harassment by management, or a host of conduct that would breach the common law covenant."  The plaintiffs cite no case law in support of their arguments.

It is clear that a covenant of good faith and fair dealing exists under Connecticut law even when there is a collective bargaining agreement. See Habetz v. Condon, 224 Conn. 231, 238 (1992)(cited in Novicki v. Waterford Bd. of Educ., 1996 WL 684392, *2 (D. Conn. June 4, 1996)).  However, the Connecticut Supreme Court has not ruled on the issue of whether a plaintiff can bring a claim for breach of the covenant of good faith and fair dealing on the basis of alleged sexual harassment and interference "with Plaintiffs very relationship with their union" when a collective bargaining agreement exists.

The court concludes that the question of whether alleged sexual harassment and interference with union representation violate the covenant of good faith and fair dealing is a "novel

47

[question] better left to the Connecticut courts." See 28 U.S.C.
§ 1367©); Novicki v. Waterford Bd. of Educ., 1996 WL 684392, *3
(D. Conn. June 4, 1996)(declining to exercise supplemental
jurisdiction where the Connecticut courts had not "definitively
resolved" "the question of whether a collective bargaining
employee may bring an action . . . for breach of the implied
covenant of good faith and fair dealing").

CONCLUSION

For the foregoing reasons, the motions for summary
judgment (doc. no.184 and no.185) are GRANTED in part and DENIED
in part.[17]

The motions are GRANTED as to the following claims: 1)
both plaintiffs' claims of Title VII disparate impact claims; 2)
Schiller's § 1983 due process claim; 3) both plaintiffs' §
1985(3) and § 1986 claims; 4) both plaintiffs' claims pursuant
to § 1(equal rights), § 8(due process), § 10(right of redress)
of the Connecticut Constitution; and 5) both plaintiffs' claims
of intentional infliction of emotional distress.

The court concludes that two of the plaintiffs' claims
raise novel and complex issues of state law and therefore
declines to exercise supplemental jurisdiction over them: 1) the
plaintiffs' claims pursuant to Art. 1, § 20 (equal protection of
the laws) of the Connecticut Constitution; and 2) the
plaintiffs' claims for breach of the covenant of good faith and
fair dealing.

The motions are denied as to the following claims: 1) both

---

[17] See Appendix 1 (chart outlining which claims have survived
summary judgment).

plaintiffs' claims of Title VII disparate treatment; 2) both

plaintiffs' claims of Title VII retaliation; 2) both plaintiffs'

claims of Title VII hostile work environment; 3) both

plaintiffs' § 1983 equal protection claims; 4) Georgia's § 1983

due process claim; and 5) both plaintiffs' Connecticut

constitutional claims pursuant to Art. 1, § 4 (free speech).

It is so ordered this 3rd day of November, 2004 at

Hartford, CT.

Alfred V. Covello, U.S.D.J.
United States District Judge

## Appendix 1: Claims After Summary Judgment

| Plaintiffs' Claims | Schiller | Georgia |
|---|---|---|
| Title VII disparate impact:<br>Against City | OUT | OUT |
| Title VII[18] disparate treatment:<br>Against City | IN | IN |
| Title VII retaliation:<br>Against City | IN | IN |
| Title VII hostile work environment:<br>Against City | IN | IN |
| § 1983 1st A. retaliation:<br>Against City, Maglione, & Pettway | IN | IN |
| § 1983 Equal Protection:<br>Against City, Maglione, & Pettway | IN | IN |
| § 1983 Due Process:<br>Against City, Maglione, & Pettway | OUT | IN |
| § 1985(3):<br>Against City, Maglione, & Pettway | OUT | OUT |
| § 1986:<br>Against City, Maglione, & Pettway | OUT | OUT |
| Conn. Const. Art. 1 § 4 (free speech):<br>Against City, Maglione, & Pettway | IN | IN |
| Conn. Const. Art. 1 § 1 (equal rights):<br>Against City, Maglione, & Pettway | OUT | OUT |
| Conn. Const. Art. 1 § 8 (due process):<br>Against City, Maglione, & Pettway | OUT | OUT |
| Conn. Const. Art. 1 § 10 (redress):<br>Against City, Maglione, & Pettway | OUT | OUT |
| Conn. Const. Art. 1 § 20 (equal prot.):<br>Against City, Maglione, & Pettway | OUT (novel § 1367(c)) | OUT (novel § 1367(c)) |
| Intentional Infliction Emotional Distress:<br>Against City, Maglione, & Pettway | OUT | OUT |
| Breach of the Covenant of Good Faith & Fair Dealing:<br>Against City, Maglione, & Pettway | OUT (novel § 1367(c)) | OUT (novel § 1367©)) |

---

[18] The plaintiffs also bring parallel claims pursuant to the Connecticut Fair Employment and Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60. The CFEPA claims remain to the same extent that the Title VII claims remain.