UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ELIZABETH SCHILLER,** | : | NO: 3:01cv00452(AVC) |
|     Plaintiff | | (ALL CASES) |
| | : | |
| **JOHANNA S. GEORGIA,** | | |
|     Plaintiff | : | |
| | | |
| v. | : | |
| | | |
| **CITY OF BRIDGEPORT, ET AL.,** | | |
|     Defendants | : | NOVEMBER 24, 2004 |

**PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE
TO EXCLUDE ARGUMENT AND EVIDENCE REGARDING
DEFENSE COUNSEL'S ALLEGEDLY IMPROPER CONDUCT**

"Allegedly improper" is to put it mildly.

There is no dispute that defense counsel Robert Mitchell, Esq., did the deeds, to wit:

    1. Shortly before the last scheduled trial date, at a local Bar function, Attorney Mitchell approached a third person, a female former employer of Plaintiff Johanna Georgia named Francine Link, repeatedly asking Ms. Link for negative information about Ms. Georgia for use in this case, and when Ms. Link refused to provide the same, threatened to "subpoena" her and told her that Ms. Georgia "wants to put a bullet between [his] eyes." Plaintiffs have as a proposed exhibit an affidavit from Ms. Link on this and will call her at trial;

    2. Plaintiffs' counsel also represents female Bridgeport Firefighter Cindy Mattera in a separate EEOC Charge of sex and race discrimination. The City recently ordered her, and the other female firefighters to meet with Attorney Mitchell, ostensibly to prepare for trial of

the instant action. Firefighter Mattera will testify that she was directed by superiors to go alone into a room with Attorney Mitchell, whereupon he told her "I know you have an axe to grind," and that when she asked him what that meant, he said he had a copy of her pending EEOC Charge, which he said he had not read, but could read when he chose to, and would be reading. This was attorney misconduct because, first, a pending EEOC Charge is confidential between EEOC, Ms. Mattera, and the City and the Fire Chief who were respondents, and Attorney Mitchell is <u>not</u> a City employee and has no appearance as counsel for the City or Maglione in that Charge. There is no lawful means by which he could have a copy of her Charge or knowledge of its contents. Second, if Attorney Mitchell in fact had a copy of the Charge, then he would know that Ms. Mattera is represented by the undersigned counsel and that he was therefore prohibited from discussing it with her alone without her counsel's consent. Third, Ms. Mattera will testify that Attorney Mitchell told her "Some people find me [meaning him] intimidating," and asked her if he was in fact intimidating her. Considering the context - this is the attorney for the employer and its chief executive officer in a federal sex discrimination suit by two female employees alleging rampant sex discrimination, harassment, and retaliation by the City and chief officer against them for complaining about the discrimination, harassment, and retaliation by an employer with a long history of discrimination, threats, selective discipline, and retaliation against anyone who is not a White male, getting a low-level co-worker of the same protected class with similar sex discrimination Charges alone and telling her that he has her Charge, that he "knows" she "has an axe to grind" against her employer, then saying that he is known to

2

intimidate people, and personalizing that threatening statement to her. Substitute the words "make people afraid for "intimidate." Clearly, compared to a low-level employee, Attorney Mitchell is an authority figure. The message was clear: testify in support of the plaintiff or against the defendant and you, Ms. Mattera, will suffer; and

    3.  There is the incident in which Attorney Robert Mitchell threatened to "squash" Plaintiffs' counsel "like the bug that she is" and threatening that he and every member of his firm and every officer in the Fire Department would bring all manner of legal action against counsel to "ruin" her. Plaintiffs' counsel has reported these comments to the Court in prior pleadings, and Attorney Mitchell has admitted most of the comments, except that Counsel he claims he said "squish" not "squash." His paralegal Lisa Paliani was a witness to all of that conversation, and the undersigned counsel told her and Attorney Mitchell that she was a witness and would be called to testify about it under oath in the future. This incident and numerous others by Attorney Mitchell toward Plaintiffs' counsel, including one in which he so yelled, berated counsel and pounded his fist across a table at her that counsel had to leave the conference room and seek the court's intervention, have been reported to the presiding judge in letters and pleadings[1] and in conferences, or witnessed by court personnel. Lisa Paliani and Mitchell have never denied his comments or that Paliani witnessed them.

---

[1] See, e.g., Plaintiffs' Opposition to Motion for Protective Order dated September 30, 2003, letter by Plaintiffs' counsel to the Court dated October 27, 2003, and Attorney Mitchell's Motion for Protective Order and his Reply in support of his Motion, in which he admits the threat, and *justifies it as his anger having been "provoked" by unspecified actions by Plaintiffs' counsel.* Contrary to what the Defendants represent in their Memorandum (at p. 2, n. 6), notwithstanding the repeated efforts of Plaintiffs' counsel to bring it to the Court's attention in pleadings, letters and conferences, the matter of Attorney Mitchell's misconduct toward counsel has never been heard in any formal way or in any way addressed by the Court. The conduct toward the other two women, Ms. Link and Ms. Mattera, occurred only recently and has not until the instant Motion

First, it is reasonable to conclude that Attorney Mitchell's acts were designed to threaten and intimidate women who support the Plaintiffs' cases, or who refuse to help the defense, and that it was intended to interfere with the Plaintiffs' attempts to exercise and vindicate known federal rights, or committed in reckless disregard of those rights.

To wit, each target of Attorney Mitchell's threats and intimidation is a woman supporting the Plaintiffs' positions, or with evidence adverse to the defense, or refusing to support the defense in this lawsuit.

Second, Attorney Mitchell's conduct is not "collateral" -- it is material to Plaintiff's case-in-chief, and its probative value outweighs its "prejudicial" effect. Attorney Mitchell committed the conduct as representative and agent of the defendants. His *client's* treatment, through him, of female witnesses and Plaintiffs' female counsel is material to Plaintiffs' claims of systemic sex discrimination, harassment, retaliation, and interference with their fundamental federal rights to Equal Protection and Due Process by the defendants based on Plaintiffs' sex being female.

The crux of the Defendants' Motion in Limine is their premise that Attorney Mitchell's conduct on behalf of the defendants is "legally irrelevant" because "[w]hether Defendants' counsel made the statements alleged by the Plaintiffs does not make the existence of sexual harassment or discrimination or retaliation for complaining of such within the BFD more or less probable." However, the issue is not whether or not counsel made the statements; as discussed above and see the pleadings referenced in footnote 1 herein, that much is largely admitted by Attorney Mitchell.

---

in Limine been brought before the Court. There cannot just be no sanction or consequence whatsoever for the Defendants' conduct. The prospect of admission of their agent's actions into evidence is hardly draconian.

The issue is whether Attorney Mitchell's conduct is cogent evidence of what is complained of. The Defendants fail to show why it cannot be.

The facts of counsel's conduct are these: The Plaintiffs complain of systemic sex discrimination against women trying to work as in the traditionally male and still overwhelmingly male-dominated job of Bridgeport Firefighter. Like the Plaintiffs, each of the women Attorney Mitchell threatened or tried to intimidate occupies a traditionally male job, i.e., Ms. Link is a tavern manager, Ms. Mattera is a firefighter, and there is Plaintiffs' female litigation counsel. The Plaintiffs claim that they were subject not only to discrimination, but to harassment, threats, intimidation and retaliation for trying to enforce their rights the work the job free of sex discrimination and harassment, specifically, for trying to bring their complaints that culminated in this lawsuit forward. Attorney Mitchell committed conduct of the very type that is complained of in this action against these women. Plaintiffs claim that they were subject to threats, intimidation and harassment specifically for trying to pursue their complaints that culminated in this lawsuit, and to try to defeat their complaints at every stage. Each of the three women the Attorney Mitchell threatened or tried to intimidate has something to offer in support of Plaintiffs and their claims, or refused to assist Mitchell's clients, and the only reason Mitchell seems to have even spoken to each of the abovesaid women was to try to defeat the Plaintiffs' claims. What is important to remember is that this attorney need not have said any of what he did in order to adequately prepare his client's defense. His statements were clearly outside the bounds of appropriate professional conduct, and designed to interfere with possible and identified material witnesses, to threaten and intimidate Plaintiffs' counsel into dropping pursuit of her client's cases, and with the course of justice.

Given that Attorney Mitchell's conduct is outside the bounds of appropriate attorney conduct, and was not necessary to an adequate preparation of his client's cases, then what else can it evidence but discriminatory animus? This is consistent with and necessary to Plaintiffs' showing that the defendants' proffered reasons for the adverse employment actions against them and for the disparate treatment are pretextual. Reeves v. Sanderson Plumbing Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000). Once Plaintiffs carry their burden of making a *prima facie* showing of unlawful discrimination (which, presumably they have, having survived summary judgment on their Title VII and other statutory civil rights claims), and the employer's explanation for its challenged actions is incredible, or false, ***or its conduct violates its own personnel rules***, then pretext is established, and the verdict must be for Plaintiffs. Reeves, 530 U.S. at 147. Here, at a minimum, Plaintiffs will show that Attorney Mitchell's conduct violates the City's own alleged anti-harassment and retaliation policies, to wit, that Attorney Mitchell's conduct is cogent evidence in rebuttal to the proffered defense that the City has a meaningful process for investigating and remedying discrimination and harassment complaints, which the Plaintiffs fail to avail themselves of. If the City's legal representative and agent is simultaneously threatening and intimidating female witnesses and Plaintiffs' female attorney in a direct effort to defeat Plaintiffs' complaints, a jury may reasonably find that there is not a meaningful policy being enforced, that it would be futile for the Plaintiffs to try to rely on it or even to use it because it would only (excuse the pun) draw more "fire" on them, and that the Defendants' proffered explanation for the adverse job actions is not a cogent defense, and is pretextual. Reeves, supra; Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995).

One of Plaintiffs' claims is that the Defendants used an internal "sexual harassment investigation" to inflict further harassment and retaliation on them for having utilized that process to report sex discrimination and harassment. The Defendants proffer a defense that the Plaintiffs failed to avail themselves of the City's internal complaint process. Notably, with co-counsel from the City Attorney's office, John Mitola, having withdrawn on the eve of trial as defense counsel in this action with being disclosed as a trial witness by both sides, the defense has not sought to exclude testimony and evidence of Attorney Mitola's involvement in the conduct of the City's investigations and alleged retaliation because of the Plaintiffs' complaints. It may be that the City anticipates defense-favorable testimony by Mitola in terms of the conduct of the City, through its counsel, toward Plaintiffs' complaints. That does not provide grounds for then barring the Plaintiffs from offering contradictory evidence as to the conduct of defense counsel with regard to their witnesses and counsel. If anything, the opposite must be allowed, i.e., that the Plaintiffs must also be allowed to offer evidence of violative conduct by defense attorney, directly bearing on the same issues of harassment and retaliation in response to complaints.

Certainly, the Plaintiffs are entitled to rebut any defense claims of a meaningful equal employment opportunity policy and complaint process by showing that it is not enforced or is a sham. Tomka, supra. Plaintiffs intend to do this, in part, by showing what the Defendants have done, in part through their attorneys' direct involvement in activities *beyond the scope of appropriate or necessary legal representation* to defeat the Plaintiffs' civil rights claims.

This is entirely rationale and reasonable; if a party's representative and agent is using threats and intimidation to thwart a federal civil rights lawsuit against the principal, then what reasonable

prospect is there for resolution of, or protection from further abuses, under the principal's internal policy or process? The Plaintiffs are entitled to have the jury hear and consider that proposition, and all the relevant and material evidence bearing on it, and the defendants are perfectly able to put on testimony and evidence rebutting the meaning or intent of Attorney Mitchell's conduct. In any event, <u>it is not possible for the Court to foresee at this time what relevance testimony and evidence about Attorney Mitchell's conduct will have</u> to anything testified to by Attorney Mitola, or anything else adduced at trial.

In addition to being <u>relevant and material to pretext</u>, and objection to similar evidence about co-defense counsel John Mitola's conduct having been waived by the absence of any defense objection and disclosure of him as a witness, there is no reason that Attorney Mitchell's threatening, intimidating and retaliatory conduct against these women cannot be considered as cogent evidence that the City is rife with a systematic pattern and practice of disparate treatment, harassment and retaliation against women in traditionally male positions in its Fire Department, and a hostile environment for women in the Department. The attorneys having inserted themselves into the hostile environment, their conduct therein is fair game for the jury's consideration.

Evidence of Attorney Mitchell's conduct is also <u>material to and probative of the issues of supervisory liability and strict liability</u> under <u>Burlington Industries, Inc. v. Ellerth</u>, 118 S. Ct. 2257 (1998) and <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275 (1998). Defense counsel's conduct also goes to Plaintiffs' claims of the failure of the defendants to render adequate EEO training of Bridgeport Fire Department employees; the conduct of Defendants' <u>employment law advisor</u> and

8

representative supports a reasonable conclusion that the City is not providing adequate civil rights training to its leaders.

Third, <u>there is no "free pass" for a party's attorney to do what would clearly be actionable conduct if committed by the party itself</u>. See Taylor v. Illinois, 484 U.S. 400, 417-418 (1988) (conduct of counsel is properly imputed to the client; counsel necessarily has full authority to manage the litigation, and "the client must accept the consequences of the lawyer's decisions."). <u>Attorney Mitchell's conduct is in and of itself actionable retaliation and interference with civil rights,</u> in violation of the anti-retaliation provisions of Title VII, CFEPA, and Equal Protection and Due Process rights enforceable through 42 U.S.C. § 1983, <u>et</u> <u>seq</u>.

There is no cognizable justification for Attorney Mitchell's conduct. There is not one published authority for it cited in the Motion in Limine, because there is none. That fact that evidence of his conduct will be "prejudicial" to his client is not enough to keep it out; the standard under F.R.E. 403 is whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice. The Plaintiffs, and Justice, are rightly outraged about their employer's large and powerful law firm subjecting them to the very conduct that they came to this Court to seek relief for. Bridgeport is the largest municipality in Connecticut. A jury may properly be outraged, even "inflamed," without there being a Rule 403 issue. Given the materiality of the anticipated testimony, the Defendants cannot make the necessary showing under Rule 403. The Defendants are adequately protected in the adversarial process by their ability to rebut the testimony, and the Court may also give appropriate limiting instructions if there is any real showing of unfair prejudice or confusion.

But the Defendants' argument is disingenuous from the start; if Attorney Mitchell, who

holds himself out an a specialist in employment law, believes that his conduct is so prejudicial to the interest of his clients that it cannot be presented to a jury, *then he ought to have refrained from that conduct to begin with.* Instead, he did it, and did it repeatedly, even after the Plaintiffs and their counsel repeatedly complained of it to him, his co-counsel, and to the Court in an effort to curtail it. See pleadings references in footnote 1 herein. There being no legal authority for the order sought, the defendants come to the court in equity, but with *unclean hands* asking the Court to exclude evidence of their own (imputed from their agent's actions) knowing and voluntary misconduct from the jury's consideration, without any articulation of why it will *unfairly* prejudice the jury's consideration of all the evidence.

What defense counsel really wants, or what the unintended consequence of granting the Motion in Limine will be, is a rule that treats evidence of an employer's violations of Title VII or the U.S. Constitution through it legal representatives less favorably than evidence of the same misconduct committed by lay persons. Another consequence will be "irreparable harm to the public interest in enforcing the law by deterring others from filing charges"). Garcia v. Lawn, 805 F.2d 1400, 1405 (9th Cir. 1986). "Congress enacted provisions barring retaliation in each of the statutes enforced by the Commission in large part to ensure that employees remain free to report suspected violations to the government. 'Given the instrumental role individual employees play in the statutory scheme, the protection of those individuals from retaliatory acts by the employer 'is essential to accomplish the purpose of Title VII.'" See Veprinsky v. Fluor Daniel. lnc., 87 F.3d 881, 889 (7th Cir. 1996), quoting EEOC v. Pacific Press Pub. Ass'n, 676 F.2d 1272, 1281 (9th Cir. 1982). "Congress has made it clear that it wishes all persons with information about [unlawful

practices] to be completely free from coercion against reporting them … This complete freedom is necessary to prevent the [government's] channels of information from being dried up by employer intimidation of prospective complainants and witnesses.'" <u>NLRB v. Scrivener</u>, 405 U.S. 117, 121-22 (1972) (construing anti-retaliation provisions of the National Labor Relations Act). <u>See</u> EEOC "Enforcement Guidance on Non-Waivable Employee Rights," No. 915.002.

      By his commission by the Connecticut Superior Court, Attorney Mitchell is granted a public trust that he must fully uphold the law. By his status as an attorney and officer of the court, his actions in engaging in violative conduct on behalf of the City and its senior officials tends to <u>legitimize</u> and <u>institutionalize</u> such conduct; it certainly does not send a message discouraging it or upholding the law and the City's purported policy against it.

      The City of Bridgeport, guided by its legal counsel, is not accepting the mandates of the federal civil rights laws. Getting that message through to this employer is the very point of the various Civil Rights statutes conveying a private right of action, i.e., the "private attorney generals" model. The City is being represented by one of the largest and most influential law firms in the State. If there is any employer who should lead the way, it is Bridgeport. If there are any persons whom the public should know are fully subject to the law, includng legal process and rights of action, it is lawyers like Attorney Mitchell, in large, influential law firms.

      No undue prejudice or injustice being threatened to the Defendants by allowing evidence of the "extracurricular" conduct of its counsel in relation to disputed material facts and claims in these cases, there is no basis for the Court to grant the Motion in Limine.

**FOR THE PLAINTIFFS,**

Dated_____          _____
                                 Susan V. Wallace
                                 *~ Attorney at Law ~*
                                 11 Blue Orchard Drive
                                 Middletown, CT 06457
                                 Tel: (860) 704-0472  Fax: -0490
                                 law4us@rcn.com
                                 Fed Bar No. CT08134

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing "Plaintiffs' Opposition to Motion in Limine to Exclude Argument and Evidence Regarding Defense Counsel's Allegedly Improper Conduct Motion for Jury Inspection of Premises" has been served upon:

Robert B. Mitchell, Esq.
Margaret M. Sheahan, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

on this 24th day of November, 2004, via

    _X_    Regular U.S. Mail, first class, postage prepaid

    ____    U.S. Priority Mail

    ____    U.S. Express Mail or other overnight mail service

    ____    Facsimile

    ____    Hand-delivery


_____
 Susan V. Wallace, Esq.