UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH SCHILLER,<br>    Plaintiff | : | NO: 3:01cv00452(AVC)<br>(ALL CASES) |
| | : | |
| JOHANNA S. GEORGIA,<br>    Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF BRIDGEPORT, ET AL.,<br>    Defendants | : | NOVEMBER 29, 2004 |

**PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE**
**TO EXCLUDE EVIDENCE OF CERTAIN ALLEGATIONS,**
**COMPLAINTS, LAWSUITS, AND SETTLEMENTS BROUGHT BY NON-PARTIES**

"A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1484 (3d Cir. 1990). To wit:

> Because a hostile work environment claim is a single cause of action, rather than a sum of discrete claims, each to be judged independently, the focus is the work atmosphere as a whole. If an employer knowingly (actually or constructively) permits a hostile work environment to exist, it is of no import that the collection of incidents comprising the claim were committed by a variety of individuals. Rather, by implicitly condoning harassing behavior, the employer may facilitate its spread by a greater number of harassing employees. As one court has observed, "A hostile work environment is like a disease. It can have many symptoms, some of which change over time, but all of which stem from the same root. The etiology in this case is pure gender bias."

Seymour, Richard T., <u>Equal Employment Law Update</u>, (Spring 2000) "Evidence in Sexual Harassment

Cases" (and review of decisions therein), quoting Hansel v. Public Service Co., 813 F. Supp. 1126, 1132 (D. Colo. 1991); West v. Philadelphia Electric Co., 45 F.3d 744, 756-57 (3d Cir. 1995).

"In order to prevail on a claim that sexual harassment has caused a hostile work environment in violation of Title VII, a plaintiff must establish two elements. The first relates principally to the environment itself and its effect on the plaintiff; the second relates to the employer's response to a complaint about the environment. First, the plaintiff must show that the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was 'extraordinarily severe.' Cruz v. Coach Stores, Inc., 202 F.3d at 570; see also Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2d Cir. 1992)." Howley v. Town of Stratford, 217 F.3d 141, 154-156 (2d Cir. 2000).

"Thus, the plaintiff must demonstrate 'either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.' Cruz v. Coach Stores, Inc., 202 F.3d at 570 (internal quotation marks omitted); see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ('conduct must be extreme to amount to a change in the terms and conditions of employment'); Carrero v. New York City Housing Authority, 890 F.2d 569, 577 (2d Cir. 1989). However, '[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below

2

which a plaintiff fails as a matter of law to state a claim.' <u>Richardson v. New York State Department of Correctional Service</u>, 180 F.3d 426, 439 (2d Cir. 1999) (internal quotation marks omitted). [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. at 23." <u>Howley v. Town of Stratford</u>, <u>supra</u>.

In the seminal <u>Meritor</u> case, <u>supra</u>, the U.S. Supreme Court articulated the hostile work environment theory under Title VII, i.e., a right of action for "working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers." The racial harassment claim in <u>Meritor</u> was proven upon evidence that the employer created a hostile work environment for employees by discriminating against Hispanic *customers*. Thus, "offensive comments need not be directed at a plaintiff in order to constitute conduct violating Title VII." <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647, 659-61 (6th Cir. 1999); <u>see</u> discussion Seymour, Richard T., <u>Equal Employment Law Update</u>, <u>supra</u> (additional citations omitted)).

"When the source of the alleged harassment is a co-worker, the plaintiff must demonstrate that the employer "'failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known about the harassment yet failed to take appropriate remedial action.'" <u>Richardson v. New York State Department of Correctional Service</u>, 180 F.3d at 441 (<u>quoting</u>

3

Kracunas v. Iona College, 119 F.3d 80, 89 (2d Cir. 1997)); see 29 C.F.R §1604.11(d) (1999) (employer is liable for co-worker harassment if 'the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action')." Howley v. Town of Stratford, supra. See also, Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); Murray v. New York University College of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995).

"Evidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the [employer] knew or should have known that sexual harassment was occurring despite the formal existence of an anti-harassment policy. See West v. Philadelphia Elec. Co., 45 F.3d 744, 752 (3d Cir. 1995). Neither of these questions depends on the plaintiff's knowledge of incidents; instead, they go to the motive behind the harassment, which may help the jury interpret otherwise ambiguous acts, and to the employer's liability … This kind of evidence is particularly important given the [employer's] main defenses at trial, which were that the incidents of abuse Hurley suffered were trivial horseplay to which both men and women were subjected and that its written sexual harassment policy was sufficient to insulate it from liability." Hurley v. Atlantic City Police Department, 174 F.3d 95, n. 10 (3d Cir. 1999), cert. denied, __ U.S. __, 120 S. Ct. 786 (2000).

Thus, "[t]he company's notice of racial harassment is always relevant, regardless of its source, because it bears upon the duty of the company to investigate and to remedy a hostile work environment." West v. Philadelphia Electric supra at 756 n. 10. Evidence of harassment of other protected class employees is relevant as tending to show that the plaintiff did not fabricate what is often in these cases bizarre or outrageous workplace conduct; to establish the defendants' prior knowledge of

4

discriminatory animus among their personnel; and to help the trier to judge whether the alleged perpetrator(s) acted with animus. Id. at 757 (evidence of harassment of other African-American workers relevant to proffered defense proposition that co-worker who made a noose did not conceive of it as a racist act). Under the "totality" approach, a hostile environment claim cannot be correctly judged with an "individualized, incident-by-incident approach," with evidence limited to conduct of the "same actor" or the "same form of discrimination." West v. Philadelphia Electric Co., 45 F.3d 744, 755 (3d Cir. 1995).

Accordingly, a broad view of what is admissible to prove Title VII harassment and hostile environmental claims is applied nearly unanimously by the Circuits. See Brown v. Trustees of Boston Univ., 891 F.2d 337, 349 (**1st Cir.** 1989) ("[D]erogatory remarks indicative of a discriminatory attitude are generally admissible to prove discriminatory treatment."); [see discussion of pertinent **2d Cir.** decisions elsewhere in this Opposition); Hurley v. Atlantic City Police Department, supra at 108-12 (**3d Cir**.) (in hostile environment case under Title VII, § 1983, and state FEPA, even though plaintiff was not present for other harassment incidents and only learned of some after filing suit, no abuse of discretion under F.R.E. 401 and 403 in allowing the testimony of four other women --some of whom were not even Police Department employees -- concerning acts directed at them by Police Department employees and supervisors; also finding no error in admission of testimony of eight male police officers, as to the routine use of grossly derogatory comments by male officers about female officers, even though not made in the presence of women and the plaintiff did not learn of them until after filing suit); holding that "Evidence of harassment of other women and widespread sexism is also probative of "whether one of the principal nondiscriminatory reasons asserted by [an employer] for its actions was in

5

fact a pretext for . . . discrimination," and noting "We note that, but for these precepts, clever discriminators might isolate each instance of discrimination and make it seem trivial or neutral." Id. at 110 n. 11 (citations omitted)), and Glass v. Philadelphia Elec. Corp., 34 F.3d 188, 194-195 (**3d Cir.** 1994) (reversible error to exclude as time-barred plaintiff's evidence of past racial harassment offered to explain negative evaluations; evidence of pervasive sexual harassment enhances credibility of *retaliation* claims); Conner v. Schrader-Bridgeport International, Inc., 227 F.3d 179, 193-94 (**4th Cir.** 2000) (reversing judgment as a matter of law for defense on Title VII claims; testimony of other female employees was "highly supportive of the jury's determination of a gender-based hostile work environment" because it showed that plaintiff's treatment was "'not an isolated phenomenon.'" Id. at 200 (citation omitted)); EEOC v. Manville Sales Corp., 27 F.3d 1089, 1094 (**5th Cir.** 1994), cert. denied, 115 S. Ct. 1252 (1995) (supervisor's ageist comments in general, even though not directed at plaintiff, admissible to prove discriminatory intent); Jackson v. Quanex Corp., supra at 659-61 (**6th Cir.**, reversing judgment as a matter of law for defense, based on erroneous exclusion of evidence of racial harassment of other employees; rejecting "extremely narrow view of workplace harassment that [defendant] has advocated both below and before this Court, one in which every single member of a protected class would have to suffer a series of affronts both explicitly racial and personal in nature before she could claim the existence of a racially hostile work environment. In essence, under this view, each minority employee would have to show that the employer had an intent specifically to harass her, and could not proceed on a theory that the employer had a general intent to harass all employees of the minority group. Put another way, this definition of workplace harassment holds the fact that an employer discriminates against other members of the same minority group irrelevant to the question of whether a

particular member of the minority group suffered racial harassment. Moreover, [trial court's] position, which renders less actionable racial incidents in the workplace so common as to constitute, in his mind, 'conventional conditions on the factory floor,' seems inclined, incredibly, to condone racially harassing conduct the more prevalent that conduct becomes"); Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1421 (**7th Cir.** 1986) (evidence of acts against other employees "pertinent, perhaps essential" to determination of employer liability); Morgan, Jr. v. Nat'l Rr. Passenger Corp., 232 F.3d 1108 (**9th Cir.** 2000), aff'd on other grounds, 536 U.S. 101, 122 S. Ct. 2061 (2002) (evidence of "an employer's conduct tending to demonstrate its general hostility towards a group is both relevant and admissible"), Heyne v. Caruso, 69 F.3d 1475, 1480 (**9th Cir.** 1995) ("evidence of the employer's disparaging remarks about women in general [is] relevant" to disparate treatment claim); Deters v. Equifax Credit Information Services, Inc., 202 F.3d 1262, 1273-74 (**10th Cir.** 2000) (affirming judgment for plaintiff; no abuse of discretion in Title VII sexual harassment case in admitting videotape of supervisor describing his own sexually harassing conduct toward employee, and that plaintiff "is entitled to rely on … [employer's] notice of any evidence of sexual harassment by a perpetrator that is similar in nature and near in time to his harassment of … [plaintiff] for purposes of imputing liability," i.e., proper to admit evidence that another supervisor on the videotape also harassed plaintiff, and to show notice to employer that plaintiff was being sexually harassed), Baty v. Willamette Industries, Inc., 172 F.3d 1232, 1247-48 (**10th Cir.** 1999) (no abuse of discretion in allowing testimony by another female employee subjected to sexual harassment and terminated upon company officials suspicion of her and plaintiff in anonymous sexual harassment complaint, as relevant and material to plaintiff's retaliation claim), and Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (**10th Cir.** 1990) ("As a general rule, the testimony of

other employees about their treatment by the defendant [employer] is relevant to the issue of the employer's discriminatory intent."); Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1511 (**11th Cir.** 1989) (acts directed at others can be evidence of discrimination against the plaintiff)' Phillips v. Smalley Maintenance Services, Inc., 711 F.2d 1524, 1532 (**11th Cir.** 1983) (comparison of treatment accorded other employees relevant to quid pro quo claims); Bundy v. Jackson, 641 F.2d 934, 951 (**D.C. Cir.** 1981) (comparison of treatment accorded other employees also relevant to *prima facie* case of discriminatory adverse employment action, requiring, in part, showing that other employees with similar qualifications were treated more favorably).

Only the Eighth Circuit, in only one published decision that could be located, has taken the Defendants' excessively narrow view of evidence of other complaints and acts of discrimination and harassment in a workplace, and even then, it is not as broadly exclusionary as what the defense urges. To wit, in Kline v. City of Kansas City Fire Department, 175 F.3d 660, 668 (8th Cir. 2002), a Title VII disparate treatment and sexually hostile environment case, the Eighth Circuit upheld the exclusion of evidence of discrimination against other women that was purportedly committed by different perpetrators, which the Court reasoned was not probative of the employer's knowledge of how the perpetrators in the case at bar would act against the plaintiffs. The trial court did, however, properly allow evidence of discrimination against other women by the same perpetrators who acted against the plaintiffs, "because it was relevant with respect to the defendant's knowledge of unlawful conduct toward the plaintiffs and its refusal to remedy it":

> We agree with the trial court that the acts of people who did not supervise or allegedly discriminate against the plaintiffs (and who in most cases did not even work in the same area as the plaintiffs) are not probative of the city's motive, opportunity, intent, or knowledge. What

8

little probative value such evidence might have, in any case, would be substantially outweighed by the threat of confusion of the issues and unfair prejudice. See Fed R. Evid. 403.

Kline, supra.

Even at that, the Eighth Circuit has not been entirely consistent. See, e.g., Ogden v. Wax Works, Inc., 214 F.3d 999, 1004 (8th Cir. 2000) (affirming judgment for plaintiff based on evidence of alleged perpetrator's sexual harassment of other employees and favors conferred on those who capitulated to his sexual demands); Howard v. Burns Bros., Inc., 149 F.3d 835, 838 (8th Cir. 1998) (affirming judgment for plaintiff on hostile environment claim, holding "harassment of employees other than the plaintiff to be relevant to show pervasiveness of the hostile environment."); Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574 (8th Cir. 1997) (plaintiff produced evidence of harassing conduct directed at her, and "[t]here was also evidence that [defendants] treated women differently from men and that the conduct upset [plaintiff]."); Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988) (circumstantial evidence of past harassment and discriminatory acts against other employees admissible); Hall v. Gus Const. Co. Inc., 842 F.2d 1010, 1015 (8th Cir. 1988) (evidence of harassment of others is admissible per Meritor).

In Perry v. Ethan Allen, Inc., supra, cited by the Defendants (Df Mot at p. 9) for the proposition that other discrimination/harassment complaints in the Bridgeport Fire Department "are too remote in time to be relevant time [sic] in this case," the Second Circuit found no error in the trial court's refusal to apply the continuing violation theory to evidence of acts outside the plaintiff's statute of limitations,[1] but did find "troubling" the exclusion of evidence of harassment of other female employees:

---

[1] The Court here has already disposed of any timeliness issues on summary judgment.

9

> The propriety of the court's exclusion of post-1988 evidence of sexual harassment not witnessed personally by Perry is more questionable. Since one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant. Thus, as the district court itself noted, "[i]n a hostile workplace case, the trier of fact must examine the totality of the circumstances, including evidence of sexual harassment directed at employees other than the plaintiff...." In Limine Ruling at 2 (internal quotation marks omitted). We are puzzled, therefore, by the court's view that if there was sexual harassment of other women Ethan Allen employees but that harassment was not witnessed by Perry, the evidence was "irrelevant." … And since the issue was not whether Perry had notice of the harassment of others but whether there was a pervasive hostile environment, it is unclear why the court would not allow the other women themselves to testify as to the harassment directed at them.

The Court ultimately found no *harmful* error in the district court's exclusion of the evidence of discrimination and harassment of other employees, and the decision also preceded the high Court's articulation in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S. Ct. 2275, 2292-93 (1998) and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257 (1998), of vicarious liability for harassment committed by supervisory personnel and for failure to have a meaningful anti-discrimination policy and complaint process, and its decision in <u>Desert Palace, Inc. v. Costa</u>, 537 U.S. 1009 (2003), that circumstantial evidence alone may prove pretext and effectively mandate a plaintiffs' verdict (<u>see</u> also <u>Hurley v. Atlantic City Police Department</u>, 174 F.3d 95, n. 10 (3d Cir. 1999), <u>cert</u>. <u>denied</u>, __ U.S. __, 120 S. Ct. 786 (2000), <u>citing</u> <u>Josey v. John R. Hollingsworth Corp.</u>, 996 F.2d 632 (3d Cir. 1993) ("employees' remarks and racially derogatory notes sent by unidentified people were circumstantial evidence that management permitted an atmosphere of prejudice to infect the workplace")). Evidence of the defendants' responses to discrimination and harassment complaints by other employees is relevant and material to rebut that there was a meaningful complaint process, or to show that it was futile or

results in more retaliation.² <u>With the probative value of other complaints under the modern standard, at least as circumstantial evidence of pretext, the evidentiary rulings in Perry would be an abuse of discretion today.</u>

Thus, in a Connecticut municipal Fire Department sex discrimination and harassment case from this district, the Second Circuit discussed the broad view that must be taken of the probative value and admissibility of evidence of harassment of other employees in these cases:

> We note parenthetically that [plaintiff's] opinion as to [the alleged harasser's] likely insubordination may well be buttressed by evidence of [the alleged harasser's] personnel record, some of which is before us. The record includes a number of complaints as to [the alleged harasser's] verbally abusive behavior (including affidavits from a female secretary and from a firefighter who had to restrain [the alleged harasser's] from physically assaulting the secretary after she objected to [the alleged harasser's] use of foul language), his acts of insubordination, and at least two instances of his cavalier on-scene conduct that may have jeopardized the lives or property of persons he was supposed to help.

<u>Howley</u>, <u>supra</u> (reversing dismissal of plaintiff's claims under Title VII and CFEPA, with remand for new trial).

Defense counsel ignores all the numerous controlling authorities from all the Circuits to the Supreme Court cited above, and more. The defense essentially relies on the stand-alone Eighth Circuit decision in <u>Kline v. City of Kansas City Fire Department</u>, which is addressed above, and otherwise makes <u>frivolous</u> representations to the Court and opposing counsel that the cases it cites hold that the subject evidence is inadmissible.

To wit, on the admissibility of evidence of discrimination and harassment of other employees for the proposition that there must be a close temporal connection, the defense cites <u>Ansell v. Green Acres</u>

---

² I.e., the Plaintiffs must rebut the proffered defense under <u>Burlington</u> that they "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

11

Contracting Co., Inc., 347 F.3d 515, 524 (3d Cir. 2003). Df Mot at p. 8. That case involved an admissibility challenge under F.R.E. 404(b) *to evidence put on by the employer of his later good acts* to show his character or propensity not to discriminate, none of which is at issue here, and the Court *allowed* the evidence to go in. Stair v. Lehigh Valley Carpenters Local Union No. 600, 813 F. Supp. 1116, 1119 (E.D. Pa. 1993) (Df Mot at p. 8) also *supports admissibility* of evidence of other allegations, complaints, suits, and acts, holding that "to determine whether a plaintiff has proven a claim for sexual harassment based upon an intimidating, hostile, or offensive work environment, a court must examine the totality of the circumstances. Included in the totality of the circumstances is evidence of sexual harassment directed at employees other than the plaintiff, which is relevant to show a hostile work environment." Garvey v. Dickinson College, 763 F. Supp. 799, 801-02 (M.D. Pa. 1991), also *supports admissibility* of this evidence under Fed. R. Evid. 404, to show discriminatory intent.

     The defense cites Chertkova v. Conn. Gen. Life Ins. Co., 210 F.3d 354 (2d Cir. 2000), cert. denied, 531 U.S. 1192 (2001) regarding other employees' complaints. Df Mot at p. 9. This is an unpublished summary order. Pursuant to Rule 0.23 of the Second Circuit, it "may not be cited as precedential authority to this or any other court, but may be called to the attention of this or any other court in a subsequent stage of this case, in a related case, or in any case for purposes of collateral estoppel or res judicata."

     As to Defendants' argument (Df Motion at pp. 5-6, 8-10) that acts not experienced by the Plaintiffs first-hand are not relevant or are inadmissible hearsay, the Second Circuit does not require

---

Burlington, 524 U.S. at __, 118 S. Ct. at 2270.

first-hand experience of every hostile act that may be admissible to prove a hostile environment, see e.g., Torres v. Pisano, 116 F.3d 625, 633 (2d Cir. 1997), cert. denied, 118 S. Ct. 563 (1997) ("an employee who knows that her boss is saying [sexual and derogatory] things [about her] . . . behind her back may reasonably find her working environment hostile.").

As to Defendants' argument (Df Motion at pp. 10-11) that admission of any records or evidence of prior settlements are "flatly forbidden," that rule only applies -- perhaps -- vis-à-vis *settlement negotiations* in the instant case, not to prior settlements of sex discrimination. Indeed, out of the tens of thousands of Title VII decisions, the defense can cite none under Title VII or any civil rights law to prove this "flat prohibition," offering only a decision from the district court for Eastern Pennsylvania in 1982[3] that concerned admissibility of settlement information regarding apportionment of damages, and one Fifth Circuit decision from 1983[4] affirming exclusion of evidence of plaintiff's settlement with a third party so that the jury would not be misled into concluding that the third party, not the first-party tortfeasor, was liable for the plaintiff's injuries. These decisions clearly have nothing whatsoever to do with the settlement agreements at issue here, which concern sex discrimination, sexual harassment, hostile environment and retaliation claims, which, as a matter of law, implicate the defendants' conduct with regard to others. The settlements at issue here arise only out of the Fire Department, were made while the plaintiffs have been employed and were being subjected to the unlawful conduct they complain of, and are public records of this municipality, voted on by public entities and paid out of the public treasury (the City is entirely self-insured). The jury can give what weight it deems appropriate to

---

[3] Young v. Verson Allsteel Press Co., 539 F. Supp. 193, 195 n. 5 (E.D. Pa. 1982).

13

this evidence vis-à-vis whether it tends to prove discriminatory intent, notice to the employer, a hostile environment, or an adequate or inadequate policy and complaint process. Defense counsel's representation to the Court and opposing counsel that evidence of prior settlements are "flatly forbidden" as a matter of law, and their citation to only two patently inappositive decisions, is <u>frivolous and deserving of sanctions</u>.

As to Defendants' argument (Df Motion at pp. 8-9) that certain evidence is "time-barred," **"[a] statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period.** <u>See</u>, e.g., <u>Sir Speedy, Inc. v. L&P Graphics, Inc.</u>, 957 F.2d 1033, 1038 (2d Cir. 1992); <u>Black Law Enforcement Officers Association v. City of Akron</u>, 824 F.2d 475, 482-83 (6th Cir. 1987); <u>see</u> <u>also</u> <u>United States v. Ashdown</u>, 509 F.2d 793, 798 (5th Cir.) (The statute of limitations is a defense . . . not a rule of evidence. . . . [It] has no bearing on the admissibility of evidence), <u>cert</u>. <u>denied</u>, 423 U.S. 829 (1975)." <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 365 (2d Cir. 2001), <u>cert</u>. <u>denied</u>, 536 U.S. 922 (2002) [emphasis added]. "A suggestion that an item of evidence relates to a period that is too remote goes to both the item's relevance and its weight. Although we would be skeptical as to the relevance . . . if there were a significant hiatus . . . we have no serious doubts as to its relevance where there is evidence of a swift transition from entreaty to retribution. Any question as to the weight to be accorded . . . [the relation of the events] is, of course, a matter for the jury." <u>Id</u>., <u>citing</u> <u>Smith v. Lightning Bolt Productions</u>, 861 F.2d 363, 367 (2d Cir. 1988). <u>See also</u> <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1082 (3d Cir.

---

[4] <u>McHann v. Firestone Tire and Rubber Co.</u>, 713 F.2d 161, 166-67 (5th Cir. 1983).

1996) (evidence of even time-barred harassment and discrimination against other employees relevant); Glass v. Philadelphia Elec. Corp., 34 F.3d 188, 194 (3d Cir. 1994). Again, defense counsel ignores all controlling authorities and makes frivolous representations to the Court and opposing counsel that time-barred evidence is inadmissible.

As to Defendants' argument (Df Motion at pp. 9-10) that any evidence about other employees is not relevant, the Plaintiffs here have already limited their intended presentation of other incidents of discriminatory or harassing conduct to that occurring within the Fire Department, instead of the City's whole workforce, and much of it occurring within or shortly before their employment period, for which they could easily find support for admission in the above-cited caselaw.[5] Moreover, most of the alleged perpetrators in the other complaints by Bridgeport Fire minority employees are still employed as officers, and have moved up to higher ranks and greater responsibility over the Plaintiffs and their co-

---

[5] The intended exhibits to which the defense specifically objects pertain to conduct within the Fire Department starting 11 years ago and running to the pendency of this action, as follows: No. (9) is a Complaint 8/23/00 fr/ Firebird Society to City Labor Relations re: Signal 29 racist threats; No. (19) is FF Kathy Denton's internal complaints of sex discrimination, harassment, retaliation: 4/5/93, 7/12/93, 7/14/93, 8/11/93, 8/12/93; No. (20) is FF Kathy Denton's first CHRO/EEOC Charge re: Sex discrimination, harassment, retaliation; No. (21) is FF Kathy Denton's Complaint in No. 3:96-CV-01938(AWT) and Bridgeport City Council's approval of monetary settlement; No. (22) is Lt. Ina Anderson's CHRO/EEOC Charge of sex discrimination; BFD Notice of Lt. Ina Anderson's resignation; No. (23) is EEOC Notice of mediation, documents that FF Cindy Mattera has filed a Charge of discrimination (still pending confidential agency investigation); No. (24) is internal complaints by FF Nancy Petrucelli (nee Kosma), Ass't Chief Robert Petrucelli about male officer spreading rumor that all female firefighters making sexual harassment complaints; No. (28) is Lt. Michael Caldaroni's CHRO/EEOC Charge of Discrimination/Retaliation and Correspondence re: monetary settlement; No. (29) is correspondence re: Lt. Michael Caldaroni's internal complaint about child porn; No. (30) is Firehouse log notes by Assistant Chief Robert Petrucelli re: Johanna Georgia's internal complaint about policy about air conditioning and women's quartering issues, and Lt Michael Caldaroni's internal complaint about child porn; No. (32) is Ass't Chief John Provost's CHRO/EEOC Charge of retaliation for his attempts to assist Firefighter Kathy Denton with pursuing her sex discrimination and sexual harassment complaints; No. (33) is FF Kathy Denton document re retaliatory termination: Second CHRO/EEOC Charge; testimony at State labor hearing; No. (38) is documents re: tampering with female firefighters' gear – Kathy Denton (8/29/94, 9/5/94, turnout gear); Nancy Petrucelli (12/23/95, helmet); Ina Anderson (a/k/a Williams) (11/14/96, gloves).

workers – including Chief of the Department, who is ultimately responsible for preventing and punishing discrimination and harassment, setting policy, in short, all acts establishing the City's liability under Title VII and 42 U.S.C. § 1983. The facts that those who were complained of as discriminators and harassers by other employees have been retained with impunity and advanced to higher positions of trust and responsibility, and that the City's EEO policies and practices with regard to discrimination and harassment complaints have not changed substantially or at all throughout the various complaints and other legal actions are relevant and material to the disputed issue of whether the City has had and enforced meaningful anti-discrimination and complaint policies. The response of City officials to complaints by other employees is material to the Plaintiff's retaliation claims. Evidence of all of these facts is relevant and material to Plaintiffs' <u>pattern and practice</u> claims.

     Counsels' ethical duty is to alert the Court to all authorities, even those not in its favor, and to address why it is not controlling or well-founded. Defense counsel did not do that to instead mislead and create much unnecessary work on the eve of trial for Plaintiffs; solo counsel and the Court to address frivolous claims.

     As to Defendants' argument (Df Motion at p. 10) of "prejudice and confusion," given the relevance and materiality of the evidence at issue as set forth above, the Defendants cannot make the necessary showing to exclude it under Rule 403. The fact that evidence will be "prejudicial" to a party is not enough to keep it out; a jury may properly be outraged, even "inflamed," without there being a Rule 403 issue. The standard to exclude evidence under Rule 403 is whether its probative value is *substantially* outweighed by the danger -- palpably, not merely in the realm of possibilities -- that it presents of *unfair* prejudice. "The prejudice that Rule 403 is concerned with involves some adverse

effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (internal quotation marks omitted); see, e.g., United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980) (same); Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 618 (5th Cir. 1977), cert. denied, 435 U.S. 996 (1978) ("`[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party . . . The prejudice must be 'unfair.'"). "In performing the 403 balancing, the court should 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" 1 J. Weinstein & M. Burger, Weinstein's Evidence ¶ 403, at 403-25, 403-26 (1982) (citations omitted). Also, F.R.E. 404(b) allows admission of evidence of prior, otherwise inadmissible, acts to show motive, intent, or knowledge.

The Plaintiffs' own limitation of their evidence of other complaints to those occurring within the Fire Department is reasonable under the caselaw cited above, and is as much as the defense has thusfar shown it is entitled to under F.R.E. 403. The Defendants are adequately protected in the adversarial process by their ability to rebut it, and the Court may also give appropriate limiting instructions if there is any real showing of unfair prejudice or confusion. No palpable undue prejudice or injustice being threatened to the defense by allowing allegations, complaints, lawsuits, and settlements evidencing a long and entrenched history of discrimination, harassment and retaliation in the Bridgeport Fire Department, there is no basis for the Court to grant the Motion in Limine.

**FOR THE PLAINTIFFS,**

Dated_____                    _____
                                                 Susan V. Wallace
                                               *~ Attorney at Law ~*
                                               11 Blue Orchard Drive
                                               Middletown, CT 06457
                                               Tel: (860) 704-0472  Fax: -0490
                                               law4us@rcn.com
                                               Fed Bar No. CT08134

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing "Plaintiffs' Opposition to Motion in Limine to Exclude Evidence of Certain Allegations, Complaints, Lawsuits, and Settlements Brought By Non-Parties" has been served upon: Robert B. Mitchell, Esq., Mrgaret M. Sheahan, Esq., Pullman & Comley, LLC, 850 Main Street, P.O. Box 7006, Bridgeport, CT 06601-7006, on this 29th day of November, 2004, via

   _X_   Regular U.S. Mail, first class, postage prepaid

   ____   U.S. Priority Mail

   ____   U.S. Express Mail or other overnight mail service

   ____   Facsimile

   ____   Hand-delivery

_____
Susan V. Wallace, Esq.