UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH SCHILLER,<br><br>      Plaintiff, | CIVIL ACTION<br>NO. 3:01 CV-00452 (AVC) |
| JOHANNA S. GEORGIA,<br><br>      Plaintiff, | CIVIL ACTION<br>NO. 3:01 CV-00717 (AVC) |
|   VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, In His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br><br>      Defendants. | (CONSOLIDATED)<br><br><br><br><br><br>NOVEMBER 30, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE CERTAIN WEB-BASED EVIDENCE**

I. **INTRODUCTION**

  Plaintiffs, female firefighters employed by the Bridgeport Fire Department ("BFD"), seek to support their sex harassment, sex discrimination and retaliation claims with evidence of various Internet postings, many made by unknown third parties on websites not maintained, operated or controlled by any Defendant. This evidence appears primarily in

Plaintiffs' Exhibits 3, 4, 7, 46 and 50. This evidence is largely irrelevant. Much of it is incapable of authentication. A good deal of it is comprised of excerpts of larger documents or series of documents which no longer exist in their entirety and therefore cannot be placed in proper context. For all these reasons and because of the high potential for significant jury confusion and prejudice, Defendants move for an order prohibiting its introduction and any other reference to it at trial, including in opening statements.

II.     **STANDARD OF REVIEW**

A federal district court's authority to manage trials includes the power to exclude evidence pursuant to motions *in limine*. *Falk v. Kimberly Services, Inc.*, No. 92 C 1079, 1997 WL 201568, *1 (N.D. Ill. April 16, 1997). The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984) (noting that, although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996); *U.S. v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002). A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Federal Rules of Evidence ("FRE") 104. *Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.*, No. 01 Civ. 3796 (PKL), 2004 WL 1970144, *4 (S.D.N.Y. Sept. 3, 2004) (citing FRE 104(a) ("Preliminary questions concerning the qualification of a person to be a witness ... or

the admissibility of evidence shall be determined by the court....")).  Evidence should be excluded when the evidence is clearly inadmissible on all potential grounds. *Id.*

### III. FACTS

Plaintiffs challenge their experiences as trainees, probationers and regular firefighters in the Bridgeport Fire Department from their hire in 1999 through the present time.  They cite as evidence of gender discrimination, sex-based harassment and retaliation for complaining about it, numerous events and conditions ranging from the changing facilities provided them in their training in the summer of 1999 to the administration of Plaintiff Georgia's current prolonged injury leave.

Exhibit 3 is a collection of postings to a website called "Signal 29," billed as an "*Unofficial*" website for Bridgeport firefighters.

Exhibit 4 is a collection of downloads from several different Internet sites, including an operator's statement from one and postings by unknown persons.

Exhibit 7 is an August 28, 2003 article from the *Fairfield County Weekly* relating the use of a tee-shirt bearing a BFD logo and fire company name on a website called "Katie's World" and an internet posting under a BFD firefighter's screen name soliciting models for an "adult website."  The article also refers to "the lawsuit moving through federal court right now. . . that alleges the display of pornography in Bridgeport firehouses. . . ."

Exhibit 46 is four photographs and three short sentences of text with the heading "03.01.02 – Bridgeport Fire Department!!!" from the "Katie's World" website, which is referenced in Exhibit 7.

Exhibit 50, every exhibit identified in Plaintiffs' deposition of James Sanquelduce, includes a collection of many postings this Bridgeport firefighter made to many different Internet websites.

## IV. ARGUMENT

### A. Plaintiffs' Web-Based Evidence Is Irrelevant To Their Case

"[E]vidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant." FRE 401. "Evidence which is not relevant is not admissible." FRE 402.

#### 1. *The Standard For Relevance to Plaintiffs' Claims Is Simple.*

To be relevant to a sex discrimination claim, evidence must indicate that gender was the basis for adverse employment actions. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998). To be relevant to a hostile work environment sexual harassment claim, evidence must indicate that the workplace harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment, and in this later instance, that the conduct complained of was sex-based, subjectively offensive to the plaintiff, and objectively offensive to a reasonable person. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). To be relevant to a retaliation claim, evidence must contribute to a showing that it is more likely than not that adverse employment action was motivated by a desire to respond to the subject employee's making a complaint, or participating in an investigation, of unlawful employment practices. *Padilla v. Metro-North*

*Commuter Railroad*, 92 F.3d 117, 122 (2d Cir. 1996), *cert. denied*, 520 U.S. 1274 (1997).  In all such claims, the conduct must be connected to the defendant.  *Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)

### 2.     *Protected speech is not relevant to Plaintiffs' claims.*

Plaintiffs do not allege (and certainly cannot prove) that any Defendant authored or sponsored any of the web postings that are the subject of this motion.  Thus the question becomes whether any Defendant *could* control the postings.

Assuming Plaintiffs' web-based evidence supported a finding of a hostile work environment created by *coworkers,* then liability could attach to Defendants only if the employer provided no reasonable avenue for complaint or knew of the harassment but *did nothing about it.*  *Petrosino v. Bell Atlantic, 385 F.3d 210, 225 (2d Cir. 2004); Murray*, 57 F.3d at 249.  If such an environment in the workplace were the creation of *non-employee* speech, liability could attach to Defendants only if ". . . the employer … kn[ew] or should have known of the conduct and *fail[ed] to take immediate or appropriate corrective action*."  29 C.F.R. § 1604.11(e) [EEOC Guidelines] *quoted in Kudatzky v. Galbreath Co.*, No. 96 Civ. 2693 (HB), 1997 WL 598586, *4 (S.D.N.Y. Sept. 23, 1997) (emphasis added).  In determining whether to impose liability the court should consider "the *extent of the employer's control* and any other *legal responsibility* which the employer may have with respect to the conduct of such non-employees."  *Kudatzky*, 1997 WL 598586 at *4 (emphasis added; quoting EEOC Guidelines).

Thus, for Plaintiffs' web-based evidence to be relevant to Plaintiffs' claims that Defendants are liable for the environment it creates, it must disclose conduct or speech which Defendants had practical[1] and legal capability to control.  Certainly, evidence of ***conduct or speech the law forbids Defendants from preventing or punishing*** is not such evidence.

      **(a)**      **The City could not have restricted its employees'
and others' freedom of expression**

A public employer may not retaliate against an employee for speech protected by the First Amendment.  *Perry v. Sindermann,* 408 U.S. 593, 597 (1972); *see also African Trade & Information Center, Inc. v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (noting that "[f]or many years …, the [Supreme] Court had 'consistently held that while the government enjoys greater latitude when it acts in its capacity as an employer than when it acts as sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech") (citation omitted))[2].

---

[1] As a practical matter, it is important to recognize the ***impossibility*** of monitoring any number of open-to-the-public websites, on which anyone could participate in various discussions, and of attempting to identify anonymous speakers and to reprimand them for their statements.  The very idea is Orwellian; the task, beyond Herculean.  Even if one determined it ***should*** be done – and the law is to the contrary, it is virtually certain that it ***could not*** be done.

[2] *See also* Conn. Gen. Stat. § 31-51q ("employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages …, including punitive damages, and for reasonable attorney's fees …").

If Defendants *had* curtailed a City employee's speech and that curtailment had been challenged, a court would have applied the *Pickering-Connick-Rankin* test to determine whether a public employer had infringed its employee's freedom of expression. *Rankin v. McPherson*, 483 U.S. 378 (1987); *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). Under this framework, the Court must first decide whether the employees' speech may be "fairly characterized as constituting speech on a matter of public concern." *Connick*, 461 U.S. at 146. This is determined by "the ***content, form, and context*** of a given statement, as revealed by the whole record." *Id.* at 147-48 (emphasis added). The Court must then balance the employee's "interest in making [the] statement[s on matters of public concern] against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rankin*, 483 U.S. at 388 (quoting *Pickering*, 391 U.S. at 568).

    (i)  The employees' speech at issue was on a matter of public concern.

    A  *CONTENT*

Plaintiffs' web-based evidence contains opinions expressed on the City's hiring practices (as they relate to race and/or sex), affirmative action in general (both "for" and "against"), the roles of women, and the fitness of women or members of other groups as firefighters. The case law is clear that such expression relates to matters of public concern.[3]

---

[3] Even where a public employee's speech does not touch upon a matter of public concern, that speech is not totally beyond the protection of the First Amendment. *Connick*, 461 U.S. at 147. However, because the speech at issue relates to matters of public concern,

The fitness, abilities and selection of firefighters are inherently matters of public concern. *Beckwith v. City of Daytona Beach Shores, Florida*, 58 F.3d 1554 (11th Cir. 1995) (fire chief disciplined and terminated for public and private opposition to city's paramedic cuts and public safety officer program: "[f]ew subjects are of more public concern to the average citizen than the provision of basic fire and rescue services." *Id.* at 1564). *See also Gillette v. Delmore*, 886 F.2d 1194, 1197-98 (9th Cir. 1989) (firefighter's speech regarding the "manner in which police and fire fighters performed their duties on a particular occasion" is of public concern); *McKinley v. City of Eloy*, 705 F.2d 1110, 1114-15 (9th Cir. 1983) (compensation affects "the ability of the city to attract and retain qualified police personnel, and the competency of the police force is surely a matter of great public concern"[4].)

---

the Court need not decide whether the City could have controlled pure "private" expression under these circumstances. *see DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596-97 (5th Cir. 1995) (noting problems with applying Title VII to "pure expression"); *Flanagan v. Munger*, 890 F.2d 1557, 1562 (10th Cir. 1989) (holding that city could not prevent off-duty speech unrelated to "an internal functioning of the department"); *Johnson v. County of Los Angeles Fire Dept.*, 865 F. Supp. 1430, 1442 (C.D. Cal. 1994) (holding that government-employer may not prohibit private reading and consensual sharing of Playboy magazine by firefighters).

[4] Even if some content of the Exhibits did not relate to matters of public concern, the fact that many do triggers First Amendment protections, and the Court must balance the employees' and employer's interests under the *Pickering-Connick-Rankin* test. *See, e.g., Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992) ("If some part of the communication addresses an issue of public concern, the First Amendment's protections are triggered even though other aspects of the communication do not qualify as a public concern") (citing *Connick*, 461 U.S. at 149); *Lauretano v. Spada*, 339 F. Supp. 2d 391, 413 (D. Conn. 2004) ("[t]he fact that a portion of [the] proposed speech does not touch upon an [*sic*] matter of public concern" does not alter the analysis).

Of course, the "inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." *Rankin*, 483 U.S. at 386-87 (callous statement of hope that the President would be assassinated).[5]

### B    *FORM*

That the speakers chose to use the internet to convey their expression is further evidence that such expression relates to matters of public concern. *See McKinley*, 705 F.2d at 1115 (fact that employee's speech "was specifically and purposefully directed to the public both through city council meetings and a television interview" supported finding of public concern).[6] *See also Pickering*, 391 U.S. at 571 (involving letter to newspaper).

### C    *CONTEXT*

The speakers expressed their viewpoints on the internet, often in chatrooms. These statements were being made on the internet – *outside* the workplace – and Defendants could not control them. *See, e.g., Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998) ("Outside government workplaces, '[t]he First Amendment demands a tolerance of "verbal

---

[5]    *Compare* Jessica M. Karner, *Political Speech, Sexual Harassment, and a Captive Workforce*, 83 Cal. L. Rev. 637, 654-655 (March 1995) (noting that viewpoint regulation is "[e]ven more offensive to the First Amendment than content regulation)" The author opines that, if statements supportive of women on a particular topic would not lead to liability, then statements "hostile to women" on those topics similarly should not lead to liability. *Id.* at 655. This analysis is consistent with Supreme Court jurisprudence. *See, e.g., Rankin*, 483 U.S. at 387 (First Amendment protects speech without regard for the "inappropriate or controversial character" of the expression).

[6]    In other words, the fact that an employee's speech was *not* directed to the public at large does not *preclude* a finding of "public concern," *see Gillette v. Delmore*, 886 F.2d 1194,

tumult, discord, and even offensive utterance," as "necessary side effects of ... the process of open debate....''") (quoting *Waters v. Churchill,* 511 U.S. 661, 672 (1994)) (in turn quoting *Cohen v. California,* 403 U.S. 15, 24-25 (1971)).

       (ii) <u>The interests of the City's employees in expressing their concerns on private websites outweighed any efficiency interest the City may have had in preventing such speech.</u>

Had the City attempted to prevent, or punish employees for, the speech on the websites, a reviewing court would surely have determined that the interests of the employees in freely expressing their opinion on matters of public concern outweighed the City's interests in preventing that expression.[7] The City would have borne the burden of justifying the prohibition on legitimate grounds. *See Rankin*, 483 U.S. at 388; *Johnson*, 865 F. Supp. at

---

  1198 (9th Cir. 1989) (citing *Rankin*, 483 U.S. at 386 n.11), but directing speech to the public at large is a factor weighing in favor of a finding of "public concern."

7 Because Plaintiffs essentially argue that the City should have had a policy in place forbidding such speech, a reviewing court would have had to determine whether such a *prior restraint* was permissible. With respect to prior restraints, the City would have been required to meet an even tougher standard. *U.S. v. National Treasury Employees Union*, 513 U.S. 454, 465 (1995) ("NTEU"); *Latino Officers Ass'n, New York, Inc. v. City of New York*, 196 F.3d 458 (2d Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000) (applying stricter *NTEU* standard where department's parade policy restrained speech before it had occurred); *Harman v. City of New York*, 140 F.3d 111, 118 (2d Cir. 1998) (applying *NTEU* test in employee challenge to agency policy which forbade employees from speaking to the media regarding agency activities without first obtaining permission from the agency's media relations department); *Erickson v. City of Topeka, Kansas*, 209 F. Supp. 2d 1131 (D. Kan. 2002) (applying tougher *NTEU* standard to city policy banning racially insensitive markings on cars in employee parking lots instituted to prevent racial harassment and a hostile work environment). Nevertheless, because it is clear that the City would not have been able to meet even the *Pickering* standard (and thus that Plaintiffs cannot meet that burden now), Defendants do not address the higher *NTEU* standard.

1436. The court would have considered the time, place, and manner of the expression subject to regulation. *Rankin*, 483 U.S. at 388; *Johnson*, 865 F. Supp. at 1436. The court would also have considered the extent to which the regulation was content and/or viewpoint-based, *Rankin*, 483 U.S. at 390; *Johnson*, 865 F. Supp. at 1430, whether the restriction applied to an employee's "free hours," *Johnson*, 865 F. Supp. at 1437 (citing *Flanagan*, 890 F.2d 1557; *Berger*, 779 F.2d 992), and the motive of the speaker, *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2nd Cir.), *cert. denied*, 528 U.S. 823 (1999) (focussing on motive; if speech is not an attempt to redress personal grievances, it is less likely that it can be regulated); *Lauretano v. Spada*, 339 F. Supp. 2d at 411 (D. Conn. 2004) (citing *Lewis*).

Although Plaintiffs obviously stress the City's interests in preventing harassment and promoting positive working relationships and efficiency, the City could not demonstrate that suppressing the speech at issue would accomplish those goals. Furthermore, the case law makes it clear that the City would not prevail on that balancing test. *See, e.g., Saxe v. State College Area School Dist.*, 240 F.3d 200, 211 (3d Cir. 2001) (there is no categorical "harassment exception" from the First Amendment protection of speech); *McKinley*, 705 F.2d at 1115 (claimed impact on "close working relationship[s]" cannot justify "stifling legitimate speech or penalizing public employees for expressing unpopular views"); *Flanagan*, 890 F.2d at 1565-66 (constitutional right to speak freely when "off-duty" outweighs government's interests even with respect to speech that "may not be as 'valuable' as political or social comment"); *Berger*, 779 F.2d at 1001 (there is no "heckler's veto," whereby a government may "curtail 'offensive' speech); *Erickson*, 209 F. Supp. 2d at 1145

(First Amendment does not countenance viewpoint discrimination, even for the purpose of suppressing speech that may be perceived as degrading or hostile); *Beckwith*, 58 F.3d at 1564 (because "[f]ew subjects are of more public concern to the average citizen than the provision of basic fire and rescue services," it is "hard to imagine any combination of government interests sufficient to outweigh [the employee's] strong interest in informing the public about policies he believed were dangerous to the City's citizens").

In sum, whether or not certain co-workers and/or third parties made statements or otherwise engaged in private, and indeed constitutionally protected, conduct does not make the existence of any fact *at issue* in this case more or less probable, because the conduct of those parties, which Defendants could not legally or factually control, is not "at issue," *Huddleston v. U.S.*, 485 U.S. 681, 687 (1988), and is not "of consequence to the determination of the action," Fed. R. Evid. 401. It is fundamentally unfair and improper for Plaintiffs to prove their case by demonstrating actions Defendants were constitutionally prohibited from impeding. This "evidence" is not relevant to the question of whether one or any of them allowed a gender-hostile atmosphere to exist in the BFD.

### 3. *Racial animus is irrelevant to Plaintiffs' claims.*

There is another reason why Plaintiffs' web-based evidence should be excluded from the evidentiary presentation of this case. Plaintiffs apparently plan to offer much of this web-based evidence for the purpose of demonstrating *racial*, *not gender-based,* animus. Regardless of whether if Plaintiffs could establish that such animus was embraced by one or more persons for whose speech or action any Defendant could be held responsible, the

evidence would not be relevant to Plaintiffs sex discrimination, sex harassment and retaliation claims. Defendants address the irrelevance of evidence related to racial animus in their Memorandum In Support of Defendants' Motion in Limine to Exclude Any Evidence of Race-Based Events and Bridgeport Firefighters for Merit Employment and respectfully refer the Court to that document at pages 3-6.

> **B.   Plaintiffs' web-based evidence consists of excerpts from documents that cannot be made available in full.**

FRE 106, as well as the common law doctrine of "completeness" on which that Rule is based, provides that, when one party offers a portion of a document, the adverse party may require the introduction of the entire document, as well as any related document(s) that put the offered document in the appropriate context. *See Phoenix Associates III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995). Plaintiffs' web-based evidence is clearly excerpted portions of chatroom exchanges that included other entries not offered by Plaintiffs. Defendants cannot access the complete documents because, for example, "Signal 29" is not currently functional. If Plaintiffs have preserved the full documents from which their proffered exhibits are excerpted, Defendants should be given an opportunity to review and introduce them. Should Plaintiffs have failed to preserve these entire documents, the excerpts should be excluded.

> **C.   Even if this evidence could be deemed marginally relevant, its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.**

Any possible probative value of Plaintiffs' web-based evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury, or by consideration of undue delay or waste of time. ***All*** of the expression at issue was

made outside the workplace by many (often unidentified)[8] individuals, and clearly does not represent the statements or conduct of any of the Defendants. The very admission of such expression could mislead the jury into believing that the Court has somehow implied that it *should* be attributed to Defendants. This is an unfair confusing result.

Any negative statements about Plaintiffs posted on the message boards, and the personal and private conduct of City employees could inflame the jury, and thus severely and unfairly prejudice Defendants.

Plaintiffs' web-based evidence is also voluminous, and its admission would waste time and cause an undue delay.

For these reasons, even if Plaintiffs' web-based evidence were found to have some relevance, FRE 403 calls for its exclusion.

## V.     **CONCLUSION**

For all the foregoing reasons, Defendants request that the Court grant this motion *in limine*, and preclude Plaintiffs from offering or referencing (including during opening statements) the web-based evidence discussed herein. In the alternative, if the Court defers ruling on the admissibility of this evidence until the time of trial, Defendants request that the Court (1) instruct all counsel not to refer to this evidence during opening statements and (2)

---

[8] Even if the web names could be linked to actual firefighters or other City employees, Plaintiffs have no way of showing that the messages were actually typed by those employees, rather than by someone with access (whether proper or improper) to those web names. The authentication discussion in Defendants' Memorandum of Law in Support of their Motion In Limine To Exclude Plaintiffs' Exhibits 7, 45 and 46 applies in full here. Defendants respectfully refer the Court to that filing at pages 7-8.

-15-

hold a hearing on the admissibility of this provocative and inflammatory evidence outside the presence of the jury prior to its offer at trial.

By:  /s/ Margaret M. Sheahan
      Margaret M. Sheahan, ct05862
      Robert B. Mitchell, ct02662
For: Pullman & Comley, LLC
      850 Main Street, P.O. Box 7006
      Bridgeport, CT  06601-7006
      (203) 330-2000
      Facsimile (203) 576-8888

      ATTORNEYS FOR:
      CITY OF BRIDGEPORT,
      EARL PETTWAY and
      MICHAEL MAGLIONE

**CERTIFICATION**

      Pursuant to Fed. R. Civ. P.5 (b), I hereby certify that a copy of the above was mailed on November 30, 2004, to all counsel and pro se parties of record.

      Susan V. Wallace
      11 Blue Orchard Drive
      Middletown, CT 06457

      /s/ Margaret M. Sheahan
      Margaret M. Sheahan

BPRT/67551.1/GPIA/538574v1