UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ELIZABETH SCHILLER,** | : | NO: 3:01cv00452(AVC) |
| *Plaintiff* | | (ALL CASES) |
| | : | |
| **JOHANNA S. GEORGIA,** | | |
| *Plaintiff* | | |
| | : | FILED UNDER SEAL |
| v. | | |
| | : | |
| **CITY OF BRIDGEPORT; ET AL.** | | |
| *Defendants* | : | DECEMBER 1, 2004 |

**PLAINTIFF JOHANNA GEORGIA'S PETITION FOR
INJUNCTION AND WRIT OF MANDAMUS**

Plaintiff Johanna Georgia petitions the Court for an Injunction pursuant to Fed. R. Civ. Pro. 65, to prohibit the Defendants CITY OF BRIDGEPORT and FIRE CHIEF MICHAEL MAGLIONE from interfering with or refusing to allow Georgia to return to work, and for a writ of mandamus pursuant to 28 U.S.C. § 1651 directing said Defendants to comply with defense counsel's express representations to the Court (Smith, U.S.M.J.) on November 29, 2004, that they would immediately return Georgia to full duty in her position as a Bridgeport Firefighter as soon as her treating physician issues a return-to-work note with no restrictions upon her functioning, which note has been obtained, as follows:

1.  Plaintiff Joanna Georgia is employed by the Defendant City of Bridgeport as a Firefighter;

2.  In April 2001, Firefighter Georgia commenced the instant action alleging sex discrimination, harassment and retaliation for having complained of the civil rights violations in her employment;

3.  On August 9, 2001, Firefighter Georgia suffered a line-of-duty injury to her left shoulder;

4.  The City and Fire Chief Maglione have always known of the nature, extent and progress of Georgia's medical condition, treatment, and any functional restrictions via her Workers' Comp claim, because her medical treatment by her approved[1] physicians and physical therapists is regularly monitored by the City and reported with medical records provided to the Fire Chief and his staff officers;

5.  On June 14, 2002, the Defendants ordered Firefighter Georgia out of work, over her objection;

6.  There never has been and is not now any issue of poor performance or discipline with regard to Firefighter Georgia;

7.  The Defendants have repeatedly proffered as the sole reason for removing Georgia from work that, up to now, her approved treating physician's return-to-work orders had a restriction on her function. To wit, the doctor initially placed two modest restrictions on use of her left, non-dominant arm, then for approximately the past six months, it was dropped down to a restriction only on <u>heavy</u> lifting with the left arm, which steadily reduced to, by September 2004, a mild restriction of lifting no more than 40 pounds with her left arm alone, with no restriction on double-armed lifting;

---

[1] The City and the Connecticut Workers' Compensation Commission have formally accepted and approved all her treating physicians for the injury including the orthopedic specialist who has provided the return-to-work orders over the past year.

8.  Since at least June 2002, said restrictions were not so severe as to require that Georgia be kept out of any and all Fire Department work. Georgia has maintained throughout that she was able and willing to perform the essential functions of any Bridgeport Fire Department job in her rank, from light duty to <u>full duty</u>;

9.  There have been nearly constant available light duty assignments in the City's Fire Department, and the City has accommodated numerous, even more seriously impaired, male employees and employees who have not pursued discrimination complaints;

10.  The City's "Absence Control Policy" which is incorporated into the Fire Department union contract, requires that City must return a firefighter to work <u>immediately</u> upon her physician's clearance for duty;

11.  Yet, for two and a half years now, over her expressed objection, regardless of her condition and her treating physician's orders returning her to work, the Defendants[2] have refused to allow Georgia to return to work for the City in any capacity, not even light duty or administrative work, keeping her in a limbo of not officially terminated (kept on the payroll), but not permitted to work any job, or partake of any training, promotional opportunities, overtime earnings, interactions with co-workers, and any of the experience of being a Firefighter;

12.  Between August 2003 and October 2004, the Defendants Fire Chief Maglione and the City, through City Attorney John Mitola, repeatedly placed Georgia's name on the agenda for the Bridgeport Board of Fire Commissioners to involuntarily "medically retire" her;

---

[2] Defendant Deputy Chief Earl Pettway returned along the way, but his successor Executive Officers, Deputy Chief Frederick Haschak, Deputy Chief Patrick Shevlin, and Deputy Chief Thomas Connor, all continued the same conduct.

3

13. The refusals to allow Georgia back to work have been a continuation of the retaliation against Georgia alleged in this lawsuit against Georgia for complaining of discrimination and sexual harassment;

14. Because Georgia is still employed, her name appears on work shifts, even though she is not permitted to work. The Defendants are so determined to remove her from the Department in retaliation for her lawsuit that, since she was put out of work in June 2002, rather than return her to work, the City pays others overtime to work her shifts, so her position remains available should she be allowed to return;

15. Because Georgia is still employed, her name appears on duty rotation lists. On June 26, 2004, Georgia's name came up on a fire watch duty list, and a Bridgeport Fire Officer called her into work. She complied and successfully worked a full fire suppression duty, or "line" duty performing fire watch at Seaside Park in Bridgeport;

16. Believing she had finally been returned to work, Georgia appeared for her next regularly scheduled shift on or about June 28, 2004. Within minutes, Chief Michael Maglione and his present second-in-command Executive Officer Deputy Chief Thomas Connor sent her home. On behalf of Chief Maglione, Deputy Chief Connor told Georgia orally and by letter that the Chief was not aware she had worked, that she violated Department rules and *was subject to discipline for having worked.* On behalf of Chief Maglione, Connor also sent a written order to Georgia's assigned firehouse that her officers not allow her to work in the Fire Department in any way until Chief Maglione allows it. Maglione has refused to allow Georgia to work since;

17. Georgia has exhausted all out-of-court avenues to try to get the Defendants to allow her to

4

work, to no avail. To wit, she filed an agency Charge of disability discrimination demanding to be returned to work, which Charge is pending investigation at CHRO and unlikely to result in any action in the near future. She filed a union contract grievance, and on November 3, 2004, upon the vigorous demands of Defendant Chief Maglione and City Attorney John Mitola, the Bridgeport Board of Fire Commissioners denied her return to work, citing as their sole reason the fact that there was "a" functional restriction in her physician's last return-to-work order, i.e., not its nature or extent or evidence of her expected imminent full medical recovery, nor how the restriction related to her job duties -- just the fact that there was restriction, even though there is no City rule or contract provision allowing the City to ban an employee from any work when the physician returns her to work;

      18. On November 29, 2004, in a settlement conference for the instant action with U.S. Magistrate Judge Thomas P. Smith, counsel for the parties (including City Attorney John Mitola, Esq., who has withdrawn his record appearance) discussed the doctor's recent lifting of all restriction on Georgia's lifting any amount in her work-hardening physical therapy program, and her successful performance in the program of an <u>85 pound lift</u> and all other required firefighting tasks, carrying full gear. **<u>Defense counsel Robert Mitchell, Esq., and City Attorney John Mitola, Esq., expressly represented to His Honor and Plaintiff's counsel that, immediately upon the issuance of a return-to-work order by Georgia's treating physician without the functional restrictions, Georgia would be returned to work, no further process or medical exams or documents required</u>**, in resolution of that portion of her claim for equitable relief;

      19. The parties and His Honor expressly agreed that Georgia would try to obtain an updated return-to-work order from the physician with no functional restrictions. Relying on these

5

representations, Georgia contacted her treating physician from the Court that day;

20. Late the next day, November 30th, Georgia's treating physician issued a written order returning her to full regular duty immediately, with **no functional restrictions**;

21. Relying on the representations before Magistrate Judge Smith, Plaintiffs' counsel faxed a copy of the doctor's order to defense counsel Robert Mitchell, Esq., Margaret Sheahan, Esq., and John Mitola, Esq., with a letter notifying that she would be appearing for her next scheduled shift, which would be the evening of December 1st;

22. Relying on the representations before Magistrate Judge Smith, at 9:00 a.m. on December 1st, Firefighter Georgia appeared at the office of Fire Chief Maglione and gave the physician's updated return-to-work order to the Chief and Executive Officer Thomas Connor who has charge of sick and injury leave, light duty, and the like, asking to return to work at her next scheduled shift, which would be that evening (on December 1st). They refused to return her to her job or to allow her to work in any capacity in a firehouse. They ordered her detailed to the training division to go through an unspecified training program, for an unspecified, with unspecified requirements, which upon information and belief, no other firefighter has ever had to do even extended absences. They did not have her union representative present for this significant change in terms and conditions of employment;

23. There is no reason that Georgia cannot be retuned to her own job and still receive all training updates she needs, as is done with all other firefighters. By subjecting her to a training program she is being subjected to monitoring and testing as though she were a probationary employee again, which no other tenured firefighter is subjected to. It is in effect a demotion. This is contrary action to what defense counsel represented to the Magistrate Judge, and it is further retaliation;

24. A writ of mandamus is appropriate to obtain compliance with an order of the Court or other positive duty that requires no exercise of discretion to accomplish. Will v. United States, 389 U.S. 90 (1967); United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420 (1931); ICC v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932); Wilbur v. United States, 281 U.S. 206, 218 (1930); United States ex rel. Girard Trust Co. v. Helvering, 301 US 540, 544 (1937); Work v. Rives, 267 U.S. 175, 177 (1925); United States ex rel. Alaska Smokeless Coal Co. v. Lane, 250 U.S. 549, 555 (1919); Decatur v. Paulding, 39 U.S. (1 Pet.) 496, 514-17 (1840). Here, the Defendants have no discretion to exercise in the matter of complying with their agreement and representations to immediately return Georgia to work upon procurement of a note from her treating physician returning her to duty with no functional restrictions. They have no discretion to exercise in the matter of complying with the City's Absence Control Policy incorporated into the Fire Department's union contract and returning Georgia to her job;

25. A writ of mandamus and injunctive relief are appropriate when there is no other relief available. By performing her part of the express agreement of the parties before the Court, Georgia is now facing imminent harm, to wit, now that he physician has released her for full duty work, Georgia is required by the City's Absence Control Policy, union contract and state Workers' Compensation law to return to work or be subject to termination, and she is no longer eligible for Workers' Compensation benefits, i.e., her weekly pay, and will be left without being able to work, without income, effectively terminated from a civil service job in which she has a vested property interest, with no due process; and

26. A writ of mandamus and an injunction are appropriate because Georgia has no other means of obtaining the relief sought hereby.

                                                **FOR THE PLAINTIFF JOHANNA GEORGIA,**

Dated _____            _____

                                               Susan V. Wallace
                                               *~ Attorney at Law ~*
                                               11 Blue Orchard Drive
                                               Middletown, Connecticut 06457
                                               Tel: (860) 704-0472  Fax: -0490
                                               law4us@rcn.com
                                               Fed Bar No. CT08134

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing "Plaintiff Johanna Georgia's Petition for Writ of Mandamus" has been served upon:

Robert B. Mitchell, Esq.
Margaret M. Sheahan, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

on this 1st day of December 2004 via:

    ___    Regular U.S. Mail, first class, postage prepaid

    ____    U.S. Priority Mail

    ____    U.S. Express Mail or other overnight mail service

    ____    Facsimile

    __X_    Hand-delivery

_____
 Susan V. Wallace, Esq.

9