UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH SCHILLER,<br><br>                    Plaintiff, | CIVIL ACTION<br>NO. 3:01 CV-00452 (AVC) |
| JOHANNA S. GEORGIA,<br><br>                    Plaintiff, | CIVIL ACTION<br>NO. 3:01 CV-00717 (AVC) |
|     VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br><br>                    Defendants. | (CONSOLIDATED)<br><br><br><br><br><br>January 3, 2004 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES AWARD**

The Defendants, City of Bridgeport and Michael Maglione, request that the Court grant them an award of the attorneys' fees and expenses they have incurred defending this lawsuit. Defendants bring this motion pursuant to Title 42 USC §§ 1988 and 2000e-5(k); Fed. R. Civ. P., Rules 11 and 54(d)2(B); the Court's inherent power to regulate the conduct of those who appear before it; and Title 28 USC § 1927. Each of these legal provisions strongly supports an award of part or all of the fees claimed. Together they support awards against both Plaintiffs and their attorney.

A.  **Applicable Legal Standards.**

The standards applicable to fee awards under each of the cited provisions are well known, and a defendant climbs a steep hill to obtain an award. Such grants are rare, and rightfully so. This case presents that singular instance, however, where an award of fees and expenses is more than supported by the record.

The allegations of the Complaints, while painting a picture of gross impropriety by the Defendants, proved to be groundless. Throughout the course of the litigation, the Plaintiffs' charges of substantive illegality, their motion practice, discovery complaints and trial tactics progressed from the irrational through the ridiculous on to the f absurd. This train of irrationality was crowned by assertions that the Defendants were culpable in one witnesses' death and in Elizabeth Schiller's expressed fear that they intended a similar fate for her. None of the nonsense spewed by the Plaintiffs or their counsel was supported by even a microscopic scintilla of evidence; not when the complaints were filed, not during the pre-trial phase of the case nor at trial. This case represents a classic example of an action brought, pursued and churned in bad faith, absent any reasonable grounds to support it.

1.  **Title VII and § 1988.**

Title 42 U.S.C. §§1988 and 2000e-5(k) allow the Court to grant a fee award to prevailing party defendants only insofar as it determines that the plaintiffs' action was frivolous, unreasonable or without foundation. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978); Tancredi v Metropolitan Life Ins. Co., 378 F.3d 22, 228 (2d Cir. August 9, 2004); Piurkowski v. Goggin, 2004 WL *1,2 (D. Conn. July 6, 2004). The Christiansburg, supra., decision established the standard for prevailing defendant fee awards

for Title VII purposes. It held that that prevailing Title VII defendants were entitled to recover their attorneys' fees if the trial court finds that the plaintiff's claims were frivolous, unreasonable *or* groundless. Christiansburg, 434 U.S. at 421. The Court specifically held that it was not necessary that they have been brought or pursued in bad faith, id. at 418, 421, but concluded that a finding of bad faith would provide an even stronger basis for awarding fees to a prevailing defendant. Id. at 422. The Christiansburg ruling was extended to § 1988 fee claims by the Court in Hughes v. Rowe, 449 U.S. 5, (1980).

Under Christiansburg the decision to award fees to a defendant is "entrusted to the discretion of the district court…" Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 10, 111 (2d Cir. 2001), see also, Oliveri v. Thompson, 803 F.2d 1265, 1272-1273 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987). Although the district court must factor into its decision the procedural history of the case, considering whether the case survived motions for summary judgment and motions for a directed verdict, such inquiry is not dispositive of a motion for attorney's fees. Piurkowski, supra; see Perry v. S.Z. Restaurant Corp., 45 F. Supp. 2d 272, 274 (S.D.N.Y. 1999); Dangler v. Yorktown Central School, 777 F.Supp. 1175, 1178 (S.D.N.Y. 1991); Steinberg v. St. Regis-Sheraton Hotel, 583 F.Supp. 421, 424 (S.D.N.Y. 1984).

District courts are able to consider a plaintiff's argument and evidence at trial when assessing whether a lawsuit if frivolous, unreasonable or groundless. The Second Circuit has upheld at least one attorney's fee award to a defendant on the ground that the plaintiff failed to make an evidentiary showing of his claim. Gerena-Valentin v. Koch, 739 F.2d 755, 761

3

(2d Cir. 1985); see also, Piurkowski, supra; Doehr v. DiGiovanni, 8 F. Supp. 2d 172, 174 (D. Conn. 1998).

.

### 2. Fed. R. Civ. Pro. 11.

Rule 11 sets out the grounds for awarding attorneys fees in its own text. Fed R. Civ. Pro. 11 (b) and (c). In pertinent part, it states that:

> **(b)  Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)  It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)  the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)  the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> **(c)  Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties  that have violated subdivision (b) or are responsible for the violation."

The instant action provides more than sufficient grounds for imposing Rule 11 sanctions. See, e.g., Oliveri v. Thompson, 803 F.2d at 1274-1275; Jackson-Colley v. Depart. of Army Corps of Engineers, 655 F. Supp. 122 (E.D. Mich. 1987); Teamsters, Chauffeurs,

4

etc., Local Union No. 330 v. Elgin Eby-Brown Co., 670 F. Supp. 1393, 1399-1400 (N.D. Ill. 1987); Hansboro v. Northwood Nursing Home, 151 FRD 95 (ND Ind. 1993); Fisher v. CPC International, Inc., 591 F. Supp. 228 (W.D. Mo. 1984); Imposition of Sanctions Under Rule 11, Federal Rules of Civil Procedure, Pertaining to Signing and Verification of Pleadings, In Action for Wrongful Discharge From Employment, 96 A.L.R. Fed. 13 (Lawyers Co-op, 1999-2004) (and cases cited therein). The actions of the Plaintiffs and their counsel violated Rule 11 when they brought the case, when the original complaints were amended and, lastly, by way of the multitude of frivolous individual pleadings filed during the course of the litigation. See listing of individual pleadings discussed below.

### 3. The Inherent Power of the Court and 42 U.S.C. §1927.

As the Court of Appeals for the Second Circuit has observed; "It is settled law that a court may impose attorney's fees under its inherent power as a penalty for misconduct during the course of litigation." Milltex Industries Corporation v. Jacquard Lace Company, Ltd., 55 F.3d 34, 37-38 (2d Cir. 1995). The Court's inherent power to sanction is derived from the fact that courts are vested by their very creation, with the power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates. Chambers v. NASCO Inc., 501 U.S. 32, 43 (1991) (internal quotations omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44.

In order to impose sanctions pursuant to its inherent power, the district court must find that : (1) the challenged claim was brought without colorable basis; and (2) the claim was motivated by an improper purpose such as for harassment or delay. Milltex, 55 F.3d at

5

38. Furthermore, "'bad faith' may be found, not only in the actions that led to the lawsuit but also in the conduct of the litigation." Oliveri, 803 F.2d at 1272.

Similarly, Section 1927 of Title 28 of the United States Code provides that a court may impose sanctions on any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Section 1927 authorizes the imposition of sanctions when there is a clear showing of bad faith on the part of the attorney. Oliveri, 803 F.2d at 1273 and Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996). As the court in Shafii held, bad faith may be inferred from actions that "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Shafii, 83 F.3d at 571 (internal quotations omitted).

Therefore, for this Court to sanction the Plaintiffs and award fees and expenses to the Defendants under either its inherent power or 28 U.S.C. §1927, it must determine that matters presented by the Plaintiffs' in particular papers were without a colorable basis and were brought in bad faith for purposes such as harassment or delay.

    4.    **Legal Summary.**

Defendants, City of Bridgeport and Maglione, submit that each of these very tough sanctions and attorneys' fee shifting tests was more than met by the Plaintiffs' and their attorney's conduct in the course of this case, and, lest the Court misinterpret their position, Defendants make this submission not because the Plaintiffs lost, but based upon: (1) the demonstrated lack of substance and good faith in the Plaintiffs' claims; and (2) the extraordinarily abusive, malicious and vexatious multiplication of these proceedings by their counsel. Defendants believe that these lawsuits were brought in bad faith; without any

reasonable belief in their merit. Indeed Defendants submit that these suits were brought and maintained not just without a reasonable belief in their merit but that they were pursued maliciously for no other purpose beyond the Plaintiffs' hoped-for personal material gain at the City's expense. Furthermore, the Plaintiffs' attorney repeatedly filed particular papers that were meritless under any interpretation of the law and facts of this suit; papers that Defendants submit were filed for the purposes of harassment and delay.

Title VII and § 1988 permit an award of all the Defendants' attorneys' fees, costs and expenses or such a portion of those items as the Court feels is appropriate under the circumstances. Rule 11 applies to any and all pleadings or other papers filed by the Plaintiffs and may take into its scope all the costs of defending a spurious suit or allegation or the expenses incurred in responding to just a particular paper; such as a baseless motion to compel. The Court's inherent power, like its Christansburg authority, can attach a sanction to Plaintiffs having pursued the case as a whole, to the conduct of parties and counsel at trial and/or to the actions of counsel in filing and pursuing particular pleadings. Section 1927 applies to award sanctions for the vexatious filing of individual pleadings.

**B.   The Record Of This Case As A Whole Demonstrates Its Unreasonableness, Frivolousness And Bad Faith.**

   **1.   Specific exemplars of Plaintiffs' and Plaintiffs' Counsel's bad faith, unreasonable and vexatious conduct.**

The litigation record and trial testimony in this case are replete with proof of the bad faith, unreasonable and vexatious conduct of Plaintiffs and their counsel in bringing and pursuing this action. Defendants offer but a relatively few examples of matters here that are well within the experience and memory of the Court in its efforts to manage this case.

7

First, the Court should consider the trial testimony of Nancy Petrucelli and Autumn Dennerlein as to the money-based motivations expressed by the Plaintiffs during meetings held to discuss a female firefighter response to the Donald Day "cunt" remark. Petrucelli and Dennerlein each testified that Georgia said she saw the situation as a means for taking a six figure award out of the City's treasury and Schiller said that she viewed it as her opportunity to get enough money to buy a house. This testimony was compelling in itself, but it became even more so because Elizabeth Schiller O'Connell *never* denied its truth, even though given the opportunity to do so.

Another trial example, in this case of Plaintiff counsel's bad faith, was presented when Defense counsel asked Terence O'Connell whether his wife (Plaintiff Schiller) had ever made a sex harassment claim during her previous work at the Post Office. Plaintiffs' counsel jumped to her feet and accused the undersigned of "fabricating" the evidence of making an accusation that he knew was a lie. She did this in front of the jury as a talking objection raised to block the question of the witness. As the Court may recall, although Mr. O'Connell professed to have no knowledge of such an incident, when recalled to the stand by the Defense, Schiller was compelled to admit that it was true. It had not been a fabrication.

Another such incident arose when Autumn Dennerlein was testifying and Plaintiffs' counsel again sprang to her feet screaming "perjury!" and demanded an immediate perjury hearing on a very minor part of Ms. Dennerlein's testimony. One can only assume that this performance was intended to "block" Ms. Dennerlein from speaking about the Plaintiffs' money motivation issue, mentioned above; an issue that Plaintiffs' counsel was well aware of from the pre-trial Petrucelli deposition. See Exhibit 1, attached.

The Court will also no doubt recall the numerous occasions when Plaintiffs' counsel accused defense attorneys of misconduct, threatening witnesses, hiding evidence, etc., during the long course of these proceedings. It will remember that Plaintiffs' counsel engaged in interminable discovery proceedings, taking documents discovery and compelling depositions on issues that had little or nothing to do with the merits of this case. The deposition of John Colligan serves as an excellent example. Colligan was deposed about facts and circumstances having to do with testing issues; a matter that related to another of Plaintiffs' counsels' clients, but which had absolutely nothing to do with this case. That testimony related to claims by a male firefighter applicant, Richard Tuozzoli, who claims disability discrimination in the City Civil Service Commission's firefighter applicant testing process. See docket entry #165, Exhibits F and G. The dollars spent by the City to defend a deposition that focused on issues unrelated to the case at bar should be reimbursed by either the Plaintiffs or their attorney.

The Court will also remember the senseless motions to compel discovery, for sanctions and for contempt that Plaintiffs' counsel brought throughout the course of this lawsuit. Motions vehement in tone, accusatory in voice and unsupported by any facts whatsoever. There was never any evidence offered to the Court that Defendants were not doing their very best to comply in good faith with all of the Plaintiffs' reasonable discovery demands, yet Plaintiffs through their counsel continued to maintain that Defendants were deliberately hiding materials that would prove their case. No evidence of such a refusal to disclose was ever offered, no materials were hidden that supported the Plaintiffs' case, no such materials existed.

An even more telling example of the Plaintiffs' attorney's contempt for this Court and its processes was presented by her continuing refusal to comply with an order that she was to pay attorneys' fees and costs equal to $662.40.  See attached Order dated May 5, 2003, exhibit 2.  She has simply ignored the order, despite being reminded by Defense counsel of her obligation to pay.

This case had no merit on the day it was brought.  If it had, why did Plaintiffs decline to serve Donald Day with the complaint and, ultimately, agree to dismiss the suit against him?  Why did Plaintiffs, after suing Earl Pettway and putting his own assets at risk by bringing the action against him in his personal capacity, drop the claims against him almost as soon as the trial started.  And, finally, what possible reason did they have to sue Michael Maglione?  None of the Title VII or related state law claims were brought against him.  He was sued, and his personal assets also put at risk with all of the emotional strain that entails, under § 1983.  Yet, not one piece of evidence was ever put on the record that he had ever done or failed to do anything that could have lead to liability on his part --- period.  The only reference to his asserted misconduct by anyone, was by Plaintiffs' counsel during her closing when she pointed at him and claimed, without any supporting evidence having been presented, that he bore personal responsibility for her clients' asserted injuries.  The proof of retaliation or a due process violation in the City's handling of Johanna Georgia's injury was less than non-existent.  The claim was farcical.[1]  What was not farcical was the slur on his

---

[1] Perhaps nothing says so much about the Plaintiffs' claims' lack of merit than the circus events that have surrounded Johanna Georgia's return to work.  The Court will recall that Ms. Georgia received an unrestricted clearance to return to her firefighter duties just before the trial began.  She was assigned to the training division for refresher training beginning just after the trial ended.  She went through the week of

10

reputation and the emotional injury to Maglione and the expense to the City of defending against these claims over the last several years.

Finally, returning to a theme lightly touched upon above, these Plaintiffs have a demonstrated history of attacking City representatives and supporters on the basis of patently false claims whenever such a person presents an obstacle to their agenda. Beginning with the bar grievances filed against Assistant City Attorney John Mitola (see attachment to Defendants' Motion for Summary Judgment Re Georgia), extending through the charges of "witness threatening" by defense counsel and the screams of perjury and fabrication made to the jury at trial, the Plaintiffs and their counsel have conducted this case at the lowest possible ethical level. They have continued their attacks since the trial. Recently, Elizabeth Schiller O'Connell submitted several demands to the BFD. Among them was a demand that the female quarters in firehouses 7/11's and 16's be stripped of all personal items stored there by the assigned female firefighters. (None of the items are claimed to be offensive or pornographic.) Her demand only applied to those two firehouses. It should come as no surprise to the Court that the women assigned to those firehouses are Nancy Petrucelli and Autumn Dennerlein. See Connor Aff., attached.

---

training and was ordered to appear for the next scheduled Ladder Company 11 shift on December 25th. On December 23rd, however, Georgia called-in to say that she had re-injured herself and would not be able to report to work. She now claims that her shoulder injury prevents her from serving in anything but "sedentary" work that involves no overhead activity. Georgia has returned to her full-pay job injury leave status, effective December 23, 2004. See Connor Affidavit, attached.

## 2. Specific Plaintiff Pleadings Which Individually Call For An Award Of Fees And Expenses Under Rule 11 And § 1927.

Over the course of this litigation, there have been numerous instances in which the Plaintiffs have filed specific papers that violated the tenets of Rule11 and § 1927. The Court should consider each of these in the event that it does not believe that a single "lump sum" award is warranted under Title VII, § 1988, its inherent powers or Rule 11[2].

Particular motions and objections that required the attention of the Court and the response of Defendants and their counsel deserve scrutiny under Rule 11, 28 U.S.C. § 1927 and this Court's inherent power to control the conduct of litigants and counsel appearing before it. The reckless abuse of the resources of this municipal party and the consequent deviation of those scarce resources from legitimate and worthy purposes to the defense of frivolous and clearly unfounded tactics paint the very picture of the kind of conduct this rule, statute and authority exist to deter. Defendants draw the Court's attention to the following examples of gross abuses for which they deserve to be awarded reimbursement of the fees and costs they had to incur to oppose and defend.

Even to obtain the Initial Disclosure required under Fed. R. Civ. P. 26, Defendants needed to bring and support a motion to compel on January 21, 2002. See docket entries #34 and #35.

---

[2] Defendants were unable to complete a one-to-one correlation of the fee billings with these particular pleadings, motions, etc. in time to file it along with this Memorandum and within the time period provided for by Rule 54(d)(2). Defendants request that the Court afford them until January 18, 2005 within which to file a supplemental memorandum that will provide the Court with this correlation. They would, of course, be able to present such specifics at an open court hearing should the Court prefer.

To obtain Plaintiffs' authorization for the release of medical records and responses to their second set of interrogatories and production requests, Defendants had to engage in five different written communications to Plaintiffs' counsel, file a motion to compel on October 31, 2002 (docket entries #41 and #42), oppose, on April 3, 2003, Plaintiffs' motion for reconsideration (docket entry #53) and again, on June 30, 2003, to move for contempt compliance sanctions and court intervention in order to address this and other Plaintiff recalcitrance (docket entries #80 and #81). Notably, to date, there has been no compliance with this Court's May 5, 2003 award of fees on this particular item of discovery obstruction. Review of Defendants' submissions listed here gives a good flavor of the need Plaintiffs created for Defendants and their counsel to undertake painstaking explications of the actual existence and content of counsel communications in defense of baseless accusations of wrongdoing and outright misrepresentation Plaintiffs' counsel repeatedly made to the Court.

Plaintiffs' counsel made a habit throughout the course of this litigation of seeking extraordinary remedies and sanctions against defendants. For example, when the Firefighters' Union's reaction to her deposition subpoena *duces tecum* to the then president of the union representing the City's firefighters was disappointing to her, Plaintiff moved on April 21, 2003, *inter alia*, for a finding of contempt against the City without even alleging any improper action on the part of the City or its counsel (docket entry #57). The City was required to review the situation and to respond in opposition on May 8, 2003 (docket entry #69).

Again on May 7, 2003, Plaintiffs' counsel moved for contempt and sanctions to be ordered against Defendant because of the failure of non-party deponent Patrick Shevlin to

produce documents Plaintiffs had already sought from the City and which were subject to objection and motions then pending before the Court (docket entries #65 and #68). Plaintiffs combined in a single memorandum (1) support of this motion, (2) support of their motion to quash Defendants' deposition subpoena *duces tecum* of the same union president they accused Defendants of somehow improperly making insufficiently available to their discovery efforts and (3) opposition to a motion by the union and its president to quash Plaintiffs' subpoena of the president or for a protective order concerning the production of documents sought in Plaintiffs' subpoena (docket entry #68). The need to parse the confusion of this filing alone was an undue burden on Defendants. Moreover, the need to oppose the baseless arguments put forth against Defendants' legitimate litigation tactics in this memorandum consumed resources needlessly and wastefully. See May 28, 2003 Opposition (docket entries #73 and #74).

In August, 2003, Plaintiffs moved for partial class certification primarily with regard to elements of their claims that were clearly time-barred and for which they could clearly not be appropriate representatives (docket entry #90). The class Plaintiffs proposed would have included both unsuccessful female applicants for Bridgeport Fire Department ("BFD") employment and women discouraged from applying to the BFD by notorious sex discrimination. As successful applicants and BFD incumbents, Plaintiffs could not have represented such a class. Moreover, having applied and gained employment with the BFD in 1997 and 1999, and not having brought administrative sex discrimination charges until years thereafter, Plaintiffs could not sustain sex discrimination claims concerning their own hiring experience. The court's ruling on the class certification motion illustrates how wide of the

mark the motion was, satisfying none of the many standards necessary for its success (docket entry #140). Defendants needed to oppose this motion and to keep the breadth of their preparation large in case, miraculously, it was granted. Both these results of the pointless motion caused the defense unnecessary expense. See October 15, 2003 filing (docket entry #112).

In September and again in November, 2003, Plaintiffs' counsel twice filed motions to intervene in this action on behalf of two firefighters' groups, that exist to promote respectively the interests of Hispanic and African-American firefighters (docket entries #102, #103, #129 and #130). Notably, one of these organizations, the Firebirds, was co-founded and in part run by Donald Day, an unserved Defendant in this case, whose despicable use of a crude pejorative term about women lies at the heart of Plaintiffs' allegations. The intervention motions were baseless and insupportable. Nevertheless, Defendants had to spend time and money analyzing and opposing them. See October 20 and November 10, 2003 filings by Defendants (docket entries #111, #131 and #132).

Nothing was simple or straightforward in this case as it was pursued by Plaintiffs – not even whom was being sued. As noted, retired BFD Captain Donald Day played a pivotal role in Plaintiffs' claims of hostile environment sex harassment and discrimination. Not surprisingly, Donald Day was named as a defendant in this action on motion of the Plaintiffs to amend their original complaints in July of 2001 (docket entries #17, #18 and #19). Plaintiffs never served Captain Day, however, and he was eventually dismissed as a party by action of this Court in February, 2004, after Plaintiffs failed to respond to an Order To Show Cause on the subject (docket entry #162). <u>Before this</u>, in October, 2003, Defendants noticed

the deposition of Donald Day and subpoenaed him to bring with him to that deposition any documentary evidence of his communications with Plaintiffs' counsel, because it had become clear that Plaintiffs' counsel considered Captain Day an ally in the case against the City and the other (served) individual Defendants, Maglione and Pettway. Remarkably, Plaintiffs moved to quash the subpoena of the man they had sued (docket entries #116 and #117). Defendants had to expend time, money and effort to oppose this absurd motion. See November 18, 2003 filing (docket entry #133).

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment was the occasion of a great deal of pointless work for the defense. Notably, some exhibits referenced in the opposing memorandum were not included in the copy of the filing Plaintiffs served on Defendants. Attempts to obtain these from Plaintiffs' counsel met with unhelpful responses, including the suggestion that defense counsel compare service copies sent to the City Attorney with that sent to the City's outside counsel. The short time frame for the defense's filing of a reply to the Plaintiffs' Opposition made this problem particularly vexing. Defendants were forced to seek the intervention of the court on what appeared to be a minor "housekeeping" problem. Defendants' motion to strike the missing objections was ultimately denied as moot only because plaintiffs had omitted the same referenced documents in the original of the papers filed with the Court (a fact unknown to Defendants until so notified by the Court). See October 21, 2004 filing (docket entries #208 and #209).

Plaintiffs' contributions to the Joint Trial Memorandum filed October 29, 2004 alerted Defendants to Plaintiffs' intent to introduce inappropriate evidence at trial to the unfair detriment of Defendants and at risk of confusion and improper emotional manipulation

16

of the jury. Therefore, Defendants filed several motions *in limine*. Two were granted in full by the court because of the obvious and fundamental impropriety of the tactics Plaintiffs clearly sought to employ. Although it is clear from the slightest familiarity with the law in this area and on the vaguest reflection that the proposed evidence would be entirely inadmissible, defendants were required to research, analyze and explain the problem and the necessity for the extraordinary measure of a pretrial order on the subject. One of these motions *in limine* was to prevent Plaintiffs from introducing evidence of alleged racial discrimination in support of their claims of sex discrimination (docket entries #226 and #227). The other was to preclude the introduction of evidence of supposedly improper conduct of defense counsel in the course of pretrial proceedings, including totally baseless accusations of witness tampering and threats of violence(docket entries #215 and #216). Defendants should be awarded the fees and expenses they incurred to oppose these ridiculous proposals by Plaintiffs.

**C.    Conclusion.**

Defense of this case has cost the City of Bridgeport more than one million dollars. See Mitchell Aff., attached. This was not money taken from some nameless insurance company, but cash taken out of the pockets of Bridgeport's taxpayers. It is money that could have been put to much better use than defending a baseless lawsuit or responding to Plaintiff counsel's senseless, vexatious and bad faith litigation tactics. While Title VII and § 1983 honor the concept of the private attorney general, while such persons are, indeed, pivotal to the enforcement of the civil rights laws, neither statute was written to further simple redistribution of public funds from the City treasury to the pockets of greedy, unworthy

17

plaintiffs or the legal community. Neither Title VII nor § 1983 was intended to provide an open hunting season on the public purse. This case had no merit on the day it was brought. ***It was brought unreasonably at the least and, in fact, as was shown by the Petrucelli and Dennerlein trial testimony respecting the Plaintiffs' motives, was lodged in actual bad faith.*** Even more importantly, it was pursued in a manner that defied control or description and which almost defines the concept of "vexatious".

Bridgeport's taxpayers, should not bear the expense of Plaintiffs' wasteful and churning litigation tactics. Whatever merit there might have been in Plaintiffs' counsel acting as a private "attorney general" was more than outweighed buy the financial injury done to this city and its people. The money wasted on this lawsuit could have profitably been used in a myriad of ways that would have served this community's very serious educational and other public service needs.

Plaintiffs started this litigation claiming an injustice had been done. The only injustice was their initiation and pursuit of this lawsuit. Defendants ask that the Court act to remedy that injustice and order them and their attorney to repay the citizens of Bridgeport the total attorneys' fees and expenses expended on this defense. Alternatively, the Defendants ask that the Court award them such a portion of these fees and expenses as it believes would reasonably compensate them for the unwarranted and excessive costs of addressing and resisting the Plaintiffs and their attorney's vexatious, unreasonable and bad faith claims and litigation tactics.

Done at Bridgeport, Connecticut, this 3rd day of January, 2004.

                                  THE DEFENDANTS
                                  City of Bridgeport and Michael Maglione

By:  /s/Robert B. Mitchell
       Robert B. Mitchell. Esq.
       Federal Bar No. ct02662
       Margaret M. Sheahan, Esq.
       Federal Bar No. ct05862

**Pullman & Comley, LLC**
**350 Bedford Street**
**Stamford, CT  06901-1743**
**Juris No. 47892  (203) 324-5000**
**Facsimile (203) 363-8659**

## CERTIFICATION

Pursuant to Fed. R. Civ. P.5 (b), I hereby certify that a copy of the above was mailed on January 3, 2005 to all counsel and pro se parties of record.

For the Plaintiffs:

    Susan V. Wallace, Esq.
    11 Blue Orchard Drive
    Middletown, CT 06457
    (860) 704-0472
    (860) 704-0490 (Fax)

    /s/Robert B. Mitchell
    Robert B. Mitchell

STFD/67551.1/RXM/315861v1