**FORM 1**

## UNITED STATES DISTRICT COURT

### DISTRICT OF CONNECTICUT    2005 JAN 19 P 4: 05

Elizabeth Schiller
Johanna Georgia
_____

        v.                    **CIVIL CASE NO.**   (consolidated)
                                                   3:01cv-00452(AVC)
City of Bridgeport, Michael Maglione               (main) (and
                                                   3:01cv00717(AVC))

AMENDED
### NOTICE OF APPEAL

                              Elizabeth Schiller and
  1.  **Pursuant to F. R. A. P. 4(a)(1),** ~~Johanna Georgia~~    **hereby gives notice and**
                              (appealing party)
**appeals to the United States Court of Appeals for the Second Circuit from the following**

**Judgment or Order (attach the Judgment or Order):**
 Final Judgment entered 12/20/04 - to include:
_____

 ~~Summary Judgment entered 11/3/04 (as against Plaintiffs)~~
 Order of Fees and Costs entered 2/3/03 (per Rule 37(a)(4))
_____

 Orders on Mot Reconsideration and on Motion no. 43 entered 5/5/03
  2.  **The Judgment /Order in this action was entered on** _____.
                                                        **(date)**

                              _____
                                    **Signature**
                              Susan V. Wallace, Esq.
                              _____
                                   **Print Name**

                              11 Blue Orchard Drive
                              _____
                              Middletown, CT 06457
                              _____
                                     **Address**

**Date:** 1/19/04

                              860-704-0472  fax -0490
                              _____
                                 **Telephone Number**

**Note: You may use this form to take an appeal provided that it is received by the Office of the Clerk of the U.S. District Court within 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).**

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing Amended Notice of Appeal has been served upon:

Robert B. Mitchell, Esq.
Margaret M. Sheahan, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

on this 19th day of January, 2005 via:

    Regular U.S. Mail, first class, postage prepaid

\_\_\_\_    U.S. Priority Mail

\_\_\_\_    U.S. Express Mail or other overnight mail service

\_\_\_\_    Facsimile

\_\_\_\_    Hand-delivery

Susan V. Wallace, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH SCHILLER

V.                                    CASE NO. 3:01CV00452(AVC)
                                      Lead Case

CITY OF BRIDGEPORT, DONALD
DAY, I/O, EARL PETTWAY, I/O, and
MICHAEL MAGLIONE, I/O

JOHANNA GEORGIA

V.                                    CASE NO. 3:01CV00717(AVC)
                                      Member Case

CITY OF BRIDGEPORT, DONALD
DAY, I/O, EARL PETTWAY, I/O, and
MICHAEL MAGLIONE, I/O

## JUDGMENT

These actions having been commenced by complaints and having been assigned to the

Honorable Alfred V. Covello, United States District Judge; and

The Court, on February 12, 2004 having issued its order dismissing the plaintiffs'

complaints as to the defendant, Donald Day; and

The plaintiffs and the defendant, Earl Pettway, having filed a stipulation of dismissal and

the Court, on December 14, 2004 having granted the stipulation; and

The matter having been tried to a jury, and the jury on December 15, 2004 having reached

a verdict in favor of the defendants City of Bridgeport and Michael Maglione and against the

plaintiffs; and further

The Court, on December 16, 2004 having issued its ruling denying the plaintiffs' requests

for equitable relief; it is hereby

ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered dismissing plaintiffs' complaints with prejudice as to the defendants Donald Day and Earl Pettway; and further

ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered in favor of the defendants City of Bridgeport and Michael Maglione and against the plaintiffs.

Dated at Hartford, Connecticut, this 20th day of December, 2004.

KEVIN F. ROWE, Clerk


By____/s/ JW_____
_____Jo-Ann Walker
EOD: _____   Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF CONNECTICUT**

---

JOHANNA S. GEORGIA,

              Plaintiff,

    VS.

CITY OF BRIDGEPORT; DONALD DAY,
IN His Official Capacity As Fire Captain And
In His Personal Capacity; EARL PETTWAY,
In His Official Capacity As Deputy Fire Chief
And In His Personal Capacity; MICHAEL
MAGLIONE, In His Official Capacity As Fire
Chief And In His Personal Capacity,

              Defendants.

CIVIL ACTION
NO. 3:01 CV-00717 (AVC)

---

ELIZABETH SCHILLER,

              Plaintiff,

    VS.

CITY OF BRIDGEPORT; DONALD DAY,
IN His Official Capacity As Fire Captain And
In His Personal Capacity; EARL PETTWAY,
In His Official Capacity As Deputy Fire Chief
And In His Personal Capacity; MICHAEL
MAGLIONE, In His Official Capacity As Fire

CIVIL ACTION
NO. 3:01 CV-00452 (AVC)

(CONSOLIDATED)

October 31, 2002

---

3:01cv452(AVC). February 3, 2003. There being no objection, the
defendants' motion to compel is GRANTED. The defendants' motion
for attorney's fees and costs associated with its motion to
compel is GRANTED. See Fed. R. Civ. P. 37(a)(4). The defendants
shall have up to and including February 21, 2003 to file an
affidavit of attorney's fees and costs associated with the filing
of the motion to compel. The plaintiff shall have up to and
including March 14, 2003 to file any objection thereto.
    SO ORDERED.

*Alfred P. Covello*

Alfred V. Covello, Chief U.S.D.J.





# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHANNA S. GEORGIA,<br><br>     Plaintiff,<br><br>  VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, In His Official Capacity As Deputy Fire Chief And In His Personal Capacity; MICHAEL MAGLIONE, In His Official Capacity As Fire Chief And In His Personal Capacity,<br><br>     Defendants. | CIVIL ACTION<br>NO. 3:01 CV-00717 (AVC) |
| ELIZABETH SCHILLER,<br><br>     Plaintiff,<br><br>  VS.<br><br>CITY OF BRIDGEPORT; DONALD DAY, IN His Official Capacity As Fire Captain And In His Personal Capacity; EARL PETTWAY, | CIVIL ACTION<br>NO. 3:01 CV-00452 (AVC)<br><br><br><br>(CONSOLIDATED) |

3:01cv452 (AVC).  May 5, 2003.  Construed as a motion for approval of attorneys' fees and costs (document no. 43), the motion is GRANTED in part.  Based on a review of the motion to compel, the accompanying affidavit, the affidavit of costs submitted in connection with the court's order of February 3, 2003, and the relevant opposition memorandum, the court awards the defendants $662.40 in attorneys fees and costs incurred in connection with the preparation of the motion to compel.  Counsel for the plaintiffs shall be responsible for paying the award.

  SO ORDERED.

48

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH SCHILLER                    :        NO: 3:01cv00452(AVC)
         Plaintiff                                      (ALL CASES)

                                              :

JOHANNA S. GEORGIA                    :
         Plaintiff

                                              :

v.                                            :

CITY OF BRIDGEPORT; ET AL.
         Defendants                   :        MARCH 14, 2002


## PLAINTIFFS' MOTION FOR RECONSIDERATION, AND OBJECTION TO DEFENDANTS' MOTION TO COMPEL AND CLAIM FOR FEES AND COSTS

The plaintiffs request reconsideration of the Order of this Court dated February 3,

2003, granting the defendants' Motion to Compel dated October 31, 2002, and hereby

Object to the defendants' Motion to Compel dated October 31, 2002, and to the claims for

attorney's fees and costs claims in said Motion and in the Fee Affidavit submitted by

defense counsel, as is more fully set forth in the accompanying Memorandum.


                                    FOR THE PLAINTIFFS,


                                    Susan V. Wallace, Esq.

3:01cv452(AVC).  May 5, 2003.  The plaintiffs' motion for
reconsideration (document no. 48) is GRANTED; however, the relief
requested therein is denied.
        SO ORDERED.

                                    Alfred V. Covello, U.S.D.J.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH SCHILLER AND
JOHANNA S. GEORGIA,
  Plaintiffs,

v.

CITY OF BRIDGEPORT, DONALD
DAY, MICHAEL MAGLIONE, EARL
PETTWAY,
  Defendants.

Civil No. 3:01CV452(AVC)

## RULING ON THE DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

This is a consolidated action for damages and equitable relief brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60. In addition, the plaintiffs bring claims under the Connecticut Constitution and common law tenets concerning intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing. Specifically, the plaintiffs, Johanna S. Georgia and Elizabeth Schiller, allege that they suffered "sexual harassment, sex discrimination, retaliation, violations of civil rights, and tortious conduct during their employment" as female firefighters for the city of Bridgeport, CT.

The defendants have filed the within motions for summary judgment (doc. no.184 and no.185) pursuant to Fed. R. Civ. P. 56, arguing that the plaintiffs have failed to raise a genuine issue of material fact and that the defendants are therefore entitled to judgment as a matter of law. Specifically, the defendants argue that the plaintiffs have "no evidence to show that any of [their]

1

treatment in the course of [their] employment with Bridgeport Fire Department has violated any of the rules of law [they] invoke[]."

The issues presented are: 1) whether the plaintiffs' Title VII and CFEPA claims are time barred; 2) whether the plaintiffs have raised genuine issues of material fact as to their Title VII (a) disparate impact, (b) disparate treatment, c) retaliation, and (d) hostile work environment claims; 3) whether the plaintiffs have raised genuine issues of material fact as to their § 1983 claims based on (a) First Amendment retaliation, (b) denial of equal protection, and (c) denial of due process; 4) whether the City and Maglione can be subject to § 1983 liability; 5) whether the plaintiffs have raised genuine issues of material fact as to the § 1985(3) or § 1986 claims; 6) whether the plaintiffs have raised genuine issues of material fact as to their Connecticut constitutional claims; 7) whether the plaintiffs have raised genuine issues of material fact as to their intentional infliction of emotional distress claims; 8) whether the plaintiffs have genuine issues of material fact as to their breach of covenant of good faith and fair dealing claims.

For the reasons stated below, the court concludes: 1) the plaintiff's Title VII and CFEPA claims based on failure to hire are time barred, but their claims based on the alleged lack of female gear and offensive cadence qualify as continuing violations and therefore are not time-barred; 2) (a) neither plaintiff has raised genuine issues of material fact as to the Title VII disparate impact claims, (b) both plaintiffs have raised genuine issues of material fact to support the Title VII disparate treatment claims, (c) both

plaintiffs have raised genuine issues of material fact to support the
Title VII retaliation claims, (d) both plaintiffs have raised issues
of fact as to the Title VII hostile work environment claims; 3)(a)
both plaintiffs have raised genuine issues of material fact to
support their § 1983 retaliation claims, (b) both plaintiffs have
raised genuine issues of material fact as to their § 1983 equal
protection claims, and (c) Schiller has failed to show deprivation of
a protected property interest to support her § 1983 due process
claim, but Georgia has raised genuine issues of material fact as to
her § 1983 due process claim; 4) a jury could find both the City and
Maglione liable pursuant to § 1983; 5) neither plaintiff has
presented evidence of a conspiracy to support the § 1985(3) and §
1986 claims; 6) (a)both plaintiffs have raised genuine issues of
material fact as to their claims pursuant to Art. 1, § 4 (free
speech) of the Connecticut Constitution, (b) but the defendants are
entitled to judgment as a matter of law on the plaintiff's claims
brought pursuant § 1 (equal rights), § 8 (due process), and § 10
(right of redress) of the Connecticut Constitution, and (c) the
claims pursuant to Art. 1, § 20 (equal protection) raise a novel
issue of state law over which the court declines to exercise
jurisdiction; 6) neither plaintiff has presented evidence of extreme
and outrageous conduct to support the intentional infliction of
emotional distress claims; 7) the breach of covenant of good faith
and fair dealing claims raises a novel issue of state law over which
the court declines to exercise jurisdiction.

    Therefore, for the reasons that follow, the defendants' motions
are DENIED in part and GRANTED in part (document nos. 191 and 192).

## FACTS

Examination of the complaint, Local Rule 56(c)(1), statements, exhibits, motions for summary judgment, and the responses thereto reveals the following undisputed, material facts:

The plaintiffs, Johanna S. Georgia and Elizabeth Schiller, are female firefighters for the Bridgeport Fire Department (BFD) in Bridgeport, CT. The plaintiffs bring this action against the city of Bridgeport (City) as well as two officers of the BFD in their individual and official capacities: Michael Maglione, Chief of the BFD, and Earl Pettway, Deputy Chief of the BFD.[1]

On January 29, 1999, the BFD notified Georgia of her appointment to the BFD. On April 1, 1999, Schiller received her appointment to the BFD. For seniority purposes, Schiller's appointment date is April 1, 1998.

On May 17, 1999, Schiller and Georgia reported to the New Haven Fire Academy for training. Including both plaintiffs, the BFD training class consisted of three women and thirty men.[2]

There is an issue of fact as to whether on or around May 18, 1999, all BFD trainees were forced to yell "Momma on the bottom, daddy on the top, baby in the corner screaming stick it to her Pop."

---

[1] On February 12, 2004, the court dismissed the action (doc. no.162) against Donald Day pursuant to Fed. R. Civ. P. 4(m).

[2] The following numbers are undisputed: On June 30, 1999, nine of the 372 BFD firefighters were female. On June 30, 2000, 9 of the 382 BFD firefighters were female. On June 30, 2001, 8 of the 356 BFD firefighters were female. On June 30, 2002, 8 of the 339 BFD firefighters were female. On June 30, 2003, 8 of the 330 BFD firefighters were female. On June 30, 2004, 8 of the 322 BFD firefighters were female.

4

The defendants respond that there "has not been any occasion to the knowledge or the BFD when such cadences have been used."

During training, the BFD issues each trainee safety gear and equipment. The BFD also provides the firefighters with a stipend to buy required uniforms. The plaintiffs allege that they had "problems with the fit of all their uniforms and gear from their initial outfitting due [to] their male design and cut."

During training, firefighters changed clothes in rooms located in a garage. There is an issue of fact as to how protected the female changing area was from public view. The plaintiffs allege that only a tarp protected them from the street.

In August 1999, the plaintiffs completed their training. After completing training, trainees become probationary firefighters and spend six months rotating among different firehouses.

The BFD has 8 firehouses. One of the firehouses, firehouse 10's, built in 1913, does not have female living quarters. Chief Maglione has stated that the BFD does not assign female firefighters to the night shift at firehouse 10's.

In the firehouses that do have female quarters, issues of fact exist as to whether there are material differences between the female and male living quarters.

Between December 18, 1999 and February 17, 2000, Georgia worked at firehouse 3/4's. On February 13, 2000, the captain of firehouse 3/4's, one Donald Day, referred to female firefighters as "cunts." Neither Schiller nor Georgia were present when Day made this comment.

On February 17, 2000, Georgia left firehouse 3/4's and began

5

work at firehouse 6's.  After arriving at firehouse 6's, Georgia and
one Joe Southard, the local union president, met with one of the
defendants, Maglione, regarding Day's comment and conduct.  Maglione
asked Georgia to submit a written complaint.  Maglione further
ordered that the BFD not assign Georgia to firehouse 3/4's while Day
was there.

On February 28, 2000, Georgia filed an internal complaint about
Day's comment and conduct.  Georgia stated that: 1) Day had "implied
. . . in front of others that none of the most recent five women,
myself obviously included, had scored high enough [on the
department's entry examination] . . . to be on this job;" 2) Day did
not report that Georgia had "fallen through a ceiling during a
sprinkler response;" 3) a "hostile work environment" existed; and 4)
she feared "retaliation" for reporting the incident.

Several other firefighters filed complaints with the BFD about
Day's remark.  In February 2000, Schiller filed a complaint about
Day's remark.  On March 5, 2000, Schiller wrote a letter to Pettway
stating that "Capt. Donald Day's views on female firefighters and his
behavior has made me uncomfortable."  Schiller also requested that
she not be "under Capt. Day's command until the situation is
resolved."

Sometime prior to March 5, 2000, a female firefighter, one Kathy
Denton, posted a picture of a naked man in firehouse 15's female
quarters.  On March 5, 2000, Schiller complained that the poster was
"offensive" and asked for its removal.  A male firefighter also filed
a complaint about the poster.  Georgia did not see the poster.  There
is an issue of fact as to how the BFD, and Pettway in particular,

6

handled the complaints. Eventually, someone took the poster down.

On March 16, 2000, Schiller filed a complaint about various postings at BFD firehouses. Specifically, Schiller complained about: 1) pictures of a man sitting on a toilet, 2) a newspaper clipping of "the Men's Gay Chorus" labeled with names of firefighters, and 3) a picture from "a Gay Men's magazine that appeared on a bulletin board in the kitchen area of the BFD Headquarters Building." After Schiller filed this complaint, the pictures were taken down. Schiller also made an oral complaint about a cartoon showing a "man blowing up a woman doll and a dog blowing up a plastic leg." Later, a BFD officer removed the cartoon.

On March 29, 2000, Schiller filed a complaint stating that someone had "fouled the toilet in the women's quarters at firehouse 15's." Schiller alleges that the male firefighters in the house were responsible.

Sometime prior to April 2000, a website entitled "Signal 29 - Unofficial B.F.D. Message Board" existed. There is an issue of fact as to whether the website contained derogatory statements about female firefighters. It is undisputed that the site was registered under the name of a deceased BFD officer.

On April 28, 2000, the Bridgeport Fire Fighters Local 834 union wrote a letter condemning the website. On September 6, 2000, the BFD issued a statement that Signal 29 was an "unofficial website, and is no way supported or endorsed by the City of Bridgeport Fire Department." In September 2000, the BFD asked the City to audit computer usage in the firehouses to determine whether firefighters were using the BFD computers to access Signal 29.

7

On April 19, 2000, Schiller filed a charge of sex discrimination with the Connecticut Commission on Human Rights and Opportunities (CCHRO) and the Equal Employment Opportunity Commission (EEOC). On May 6, 2000, Georgia filed her charge with the CCHRO. On May 11, 2000, Georgia filed her claims of sex discrimination with the EEOC.

As part of the ongoing investigation into Day's comment and conduct, the BFD called Georgia to testify. On May 11, 2000, Georgia reported to the interview accompanied by her attorney, one Mark Carey. The BFD also called Schiller to testify. The BFD did not permit Schiller to bring a union representative while she testified. The plaintiffs allege that they were subjected to harassment and intimidation at these meetings.

After the investigation was complete, the BFD suspended Day without pay for 60 days. However, Day had already stopped working on March 2, 2000 for medical reasons. Day never returned to work at the BFD.

After probation, the BFD permanently assigned the plaintiffs to firehouses. On June 17, 2000, Georgia's probationary period ended and the BFD assigned her permanently to Ladder 11, C shift at firehouse 7/11's. It is not clear to which firehouse the BFD assigned Schiller.

On July 14, 2000, one Gerald G. Fette, a psychiatrist, diagnosed Georgia with "reactive depression with agitated mood." Fette noted that Georgia's work should be "[l]imited to administrative (clerical) work." Between July 24, 2000 and October 30, 2000, Georgia worked in a clerical position, during which time she took a four day leave.

On July 17, 2000, Maglione issued a written order "to be read to

8

all personnel at roll call." The order stated, in part, that BFD firefighters "will not take, deface, discard, or tamper with personal property and equipment assigned to another member." The order further stated that any "such behavior" would be "subject to a department investigation" and instructed "officers and Supervisors" to "report any incident immediately."

In November 2000, Schiller complained to one Lieutenant Skoog that she saw a naked male firefighter through an 8 x 12 window in the male locker room door in firehouse 6's. The BFD subsequently sprayed the window with an opaque substance.

On December 20, 2000, Maglione issued another order stating: "All turnout gear is to be left on the apparatus floor." The plaintiffs seem to allege that someone tampered with female firefighters' gear.

On March 29, 2001, Schiller found a female pinup calender on a bulletin board in the officers' sleeping quarters in firehouse 6's. Schiller took the calender down and reported it to one Captain Haug. On April 11, 2001, one Chief Haschak came to firehouse 6's to investigate the calender.

Schiller also alleges that she found another calender depicting females in bathing suits on motorcycles posted in the firehouse. Schiller alleges that the females were posed in front of BFD firehouses and that the females were holding BFD equipment. The defendants deny these allegations.

It is undisputed that the BFD firehouses "were capable of picking up the SPICE and Playboy channels." There is an issue of fact as to the extent to which individuals watched the channels, the

9

extent to which female firefighters were exposed to the channels, and the BFD supervisors' reaction to the channels.

In June, 2001, there was no working air conditioning in the female firefighters quarters in firehouse 7/11's.  There is an issue of fact as to whether there ever was working air conditioning in the female quarters and whether supervisors prohibited women from opening windows.  It is undisputed that supervisors did not allow female firefighters to sleep in the common areas of the firehouse while the female quarters did not have air conditioning.

On August 9, 2001, Georgia injured her shoulder, arm and neck. She took leave until August 21, 2001.  Between August 21, 2001 and August 23, 2001, Georgia worked in a clerical position.  Between October 10, 2001 and March 13, 2002, Georgia took two more periods of leave.  On March 13, 2002, Georgia returned to her clerical position.

There is an issue of fact as to whether in June 2002, Georgia "reported off duty . . . and has never returned to work with the BFD" or whether the defendants have "refused to allow her to work."

On June 6, 2004, Georgia wrote a letter to one Thomas Connor, a BFD Deputy Chief:

> Dear Sir,
> This notice is to confirm that I again attempted to return to work on 6/29/04.  You stated I would not be allowed by the department to return to duty until such time that I had no medical restrictions.
> I am again notifying the department that I am capable and willing to work.  Please contact both my union representative Robert Whitbread and myself as soon as the department changes its decision to refuse me work.  Thank you.

On June 28, 2004, Connor wrote back to Georgia, stating:

> [T]he determination of your work status is being evaluated by the City of Bridgeport and the Department.  The fact

that you have medical restrictions is not the reason why you have not been cleared to return to work. Instead, the reason is it is still unclear whether those restrictions interfere with your ability to perform the duties of a firefighter.

Currently, Georgia continues to receive a salary from the BFD, but she is not an active duty BFD firefighter. Schiller is an active duty BFD firefighter.

### STANDARD

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims... [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

11

**DISCUSSION**

I.  **Timeliness of Title VII and CFEPA Claims Against the City**

The defendants argue that the plaintiffs base their Title VII and CFEPA claims on time barred events.  First, the plaintiffs accuse the fire department of not "not hiring Plaintiff[s] with the first hiring class from the 1997-1998 hire list."  Second, the plaintiffs claim that their May 18, 1999 training consisted of a "demeaning, abusive to women, and inappropriate" running cadence.  Third, the plaintiffs allege that on May 11, 1999 "female firefighters were fitted with male-sized gear."

A.  **300 Day Title VII Time Limitation**

Pursuant to 42 U.S.C. § 2000e(5)-(e)(1), "[a]n aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discrimination."[3] Petrosino v. Bell Atlantic, 2004 WL 2177044 (2d. Cir. Sept. 29, 2004)(citations omitted). When a plaintiff "fails to file a timely charge with the EEOC, the claim is time-barred." Butts v. City of New York Dept. of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993).

---

[3] 42 U.S.C. § 2000e-(5)(e)(1) states, in relevant part: "in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ." Because Connecticut does have an agency with authority to grant or seek relief from discriminatory practices, the 300 day limitations period applies to Schiller's and Georgia's complaints. Ericson v. City of Meriden, 113 F. Supp. 2d 276, 285 (D. Conn. 2000).

Schiller filed her charge of discrimination with the EEOC on April 19, 2000.  Therefore, Title VII claims based on events prior to June 25, 1999, 300 days before her EEOC charge, are time barred unless the exception for continuing violations applies.  Nadar v. Brunalli, 2002 WL 724597, *7 (D. Conn. Mar. 26, 2002).  Likewise, because Georgia filed her charge of discrimination with the EEOC on May 11, 2000, Title VII claims based on events prior to July 17, 1999 are time barred unless the exception for continuing violations applies.

**B.    180 Day CFEPA Time Limitation**

A plaintiff must file a complaint with the CCHRO within 180 days of the event at issue for the claim to be timely under the CFEPA. See Conn. Gen. Stat. § 46a-82 (providing "[a]ny complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination").  The court has already stated in its ruling on the defendants' motion to dismiss that Schiller's CFEPA claims are only timely for events that "occurred on or after October 23, 1999 . . . i.e. within 180 days of filing [her CCHRO complaint]."  Georgia filed her charge of discrimination under the CFEPA on March 6, 2000.  Therefore her CFEPA claims are only timely for events that occurred on or after September 3, 1999, i.e. within 180 days of filing her CCHRO complaint.

Accordingly, the plaintiffs' failure to hire, gear, and cadence claims are untimely for purposes of the CFEPA and Title VII unless the continuing violation exception applies.

13

## C.    Continuing Violation Exception

The continuing violations doctrine is an exception to the Title VII 300 day limitations period:[4]

> If a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.

Lambert v. Genesee Hosp. 10 F.3d 46, 53 (2d Cir. 1993)(citations omitted).

### 1.    Failure to Hire

In count one, the plaintiffs set forth Title VII claims of a "disparate treatment" and "disparate impact." Specifically, the plaintiffs state that the City violated Title VII by "[n]ot hiring Plaintiff[s] with the first hiring class from the 1997-98 hire list."

In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2d Cir. 2004), the Supreme Court addressed the continuing violations doctrine. The Court stated that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filing charges." 536 U.S. at 114-15. The Court specifically listed refusal to hire as an example of a discrete act: "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." 536 U.S. at 114-15.

_____

[4] The court's analysis of the continuing violations doctrine applies to the plaintiffs' Title VII and CFEPA causes of action. See Minor v. Town of Cheshire, 126 F. Supp. 2d 184, 188-89 (D. Conn. 2000)(noting that "federal law on this issue [continuing violations] is applicable to CFEPA")(citing Maloney v. Conn. Orthopedics, 47 F. Supp. 2d 244, 247 (D. Conn. 1999).

The court concludes that because failure to hire is a discrete act, the plaintiffs' failure to hire claims do not qualify for the continuing violations exception. <u>See also Coger</u> v. <u>Connecticut</u>, 309 F. Supp. 2d 274, 283 (D. Conn. 2004)(holding that failure to hire claim does not qualify for continuing violation exception "[e]ven if plaintiff has asserted triable facts with respect to whether he was discriminated against"); <u>Braheney</u> v. <u>Town of Wallingford</u>, 2004 WL 721834, *2 (D. Conn. Mar. 20, 2004)(holding that Title VII claims based on three suspensions were time barred as "discrete acts").

Accordingly, the plaintiffs' claims based on failure to hire are time barred.

### 2.    Cadence and Gear

In count one, the plaintiffs set forth a hostile work environment claim in which they specifically allege that: 1) their May 18, 1999 training consisted of a "demeaning, abusive to women, and inappropriate" running cadence," and 2) on May 11, 1999 "female firefighters were fitted with male-sized gear."

In <u>National R.R. Passenger Corp</u>. v. <u>Morgan</u>, the Supreme Court held that if a plaintiff alleges a hostile work environment, her claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one falls within the time period." 536 U.S. 101, 110, 122 (2002). <u>See also Patterson</u> v. <u>County of Oneida, N.Y.</u>, 375 F.3d 206, 220 (2d Cir. 2004).

The Second Circuit has noted that the Supreme Court's "rationale for regarding a hostile work environment claim as, in effect, a

15

continuing violation was that such a claim 'is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Elmenayer v. ABF Freight System, Inc., 318 F.3d 130, 134 (2d Cir. 2003)(quoting National R.R. Passenger Corp. v. Morgan 536 U.S. 101, 116 (2002)). A hostile work environment claim by its "very nature involves repeated conduct." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).

The court concludes that the plaintiffs have presented evidence of hostile acts within the statutory period. Therefore, the gear and cadence claims qualify for the continuing violation exception. The plaintiffs may rely on the gear and cadence claims in establishing a Title VII hostile work environment.

### 3. The Court's January 22, 2002 Ruling

On January 22, 2002, this court held that "Schiller failed to set forth a continuing violation with respect to allegations . . . . [of a] failure to provide female firefighters with female firefighting gear." To the extent that this court held in the ruling that Schiller's complaints about gear were time barred, the court vacates its January 22, 2002 ruling.

## II. Title VII Claims Against the City of Bridgeport

The defendants move for summary judgment on all of the plaintiffs' Title VII claims. The plaintiffs respond that "there are genuine issues of material fact requiring jury trial."

Title VII makes it unlawful for "an employer . . . to discriminate against any individual because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). The plaintiffs rely on four

16

theories to establish a Title VII violation by the City: (1) disparate impact; (2) disparate treatment; (3) retaliation; and (4) hostile work environment through sexual harassment.

### A.    Disparate Impact

The defendants first move for summary judgment on the plaintiffs' Title VII claims of disparate impact discrimination. Specifically, the defendants argue that the plaintiffs base their claims on allegations of "anti-female" policies that "cannot be analyzed as neutral policies with disparate impact."  The defendants also argue that "[r]aw numbers that purportedly describe a pattern of under-representation and unequal opportunity for female fire fighter aspirants are not enough."  The plaintiffs do not respond.

Title VII prohibits "facially neutral employment practices which result in discrimination because they fall more harshly on a protected group than on other groups, and cannot be justified." EEOC v. Joint Apprenticeship Comm. of the Joint Indust. Bd. Of Elec. Indus., 186 F.3d 110, 116 (2d Cir. 1999).  The typical disparate impact claim "involves a facially-neutral hiring or promotion policy which disproportionately impacts a protected group." Id. at 117.

The Second Circuit has held that to establish a prima facie case of Title VII disparate impact, the "the plaintiff must '(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two.'" Malave v. Potter, 320 F.3d 321, 325 (2d Cir. 2003)(quoting Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001)).

To satisfy the first part of the prima face case, the plaintiffs

17

describe an alleged BFD employment selection process "known as 'banding'" and argue that it "resulted in passing over the Plaintiffs and hiring males." However, as set forth above, the plaintiffs failure to hire claims are time-barred.

Even if the failure to hire claims were not time-barred, the plaintiffs disparate impact claim would still fail because they have failed to set forth any evidence of a "causal relationship" between the alleged policy and a disparity in the number of females that the BFD hires. See Malave v. Potter, 320 F.3d 321, 325 (2d Cir. 2003)(noting that a plaintiff cannot "rely on bottom line numbers in the employer's workforce" in a disparate impact claim); Brown v. Coach Stores, 163 F.3d 706, 712 (2d Cir. 1998)(stating "[a]llegations which contend only that there is a bottom line racial imbalance . . . are insufficient").

Therefore, the motions are granted with respect to the plaintiffs' Title VII disparate impact claims.

B.  **Disparate Treatment**[5]

The defendants next move for summary judgment on the plaintiffs'

---

[5] The defendants address quid pro quo discrimination separately from the Title VII disparate treatment and hostile work environment claims. In Gregory v. Daly, 243 F.3d 687, 698 (2d Cir. 2001) the Second Circuit stated that the Supreme Court has given "primary importance to one distinction, namely that between employer conduct that leads to tangible employment actions and the more informal imposition of adverse terms and conditions of employment that result in a hostile or abusive workplace." As to quid pro quo claims, the court reasoned that "a 'quid pro quo' allegation merely makes a factual claim about the particular mechanism by which a plaintiff's sex became the basis for an adverse alteration of the terms or conditions of her employment." Id. Accordingly, the court does not separately address the defendants' arguments about quid pro quo discrimination.

18

Title VII disparate treatment claims. Specifically, the defendants argue that the plaintiffs have not shown "that an adverse employment action has happened or any indication that the events . . . were unlawfully motivated actions attributable to the city." The plaintiffs respond that "a jury can reasonably find disparate, less favorable treatment."

Following McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff "has the initial burden of establishing a prima facie case of discrimination." Harper v. Metropolitan Dist. Comm., 134 F. Supp. 2d 470 (D. Conn, 2001)(internal quotation marks and citations omitted). Second, "once a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). See also, Sanders v. NY City Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004). Third, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder fo fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Terry v. Ashcroft, 336 F.3d 128, 138(2d Cir. 2003)(citing Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir.1997)).

Accordingly, the plaintiffs must first establish a prima facie case of disparate treatment. A prima facie case of disparate treatment requires the plaintiff to show that:

1) the plaintiff is a member of a protected class; 2) the plaintiff is qualified for the position; 3) the defendant took adverse employment action against the plaintiff; and 4) the adverse employment action 'occurred under circumstances giving rise to an inference of

19

discrimination.'

Harper v. Metropolitan Dist. Comm., 134 F. Supp. 2d 470 (D. Conn, 2001)(citing Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994); Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). The gravamen of the defendants argument for summary judgment is that the plaintiffs have not put forward evidence as to the third and fourth elements of the prima facie case.

## 1.   Adverse Employment Action

As to the third element of the prima facie case, adverse employment action, the plaintiffs allege the following "less favorable treatment:" 1) "disparate hiring and promotion of women as firefighters," 2) "disparate treatment of women firefighters in provision of uniforms, [and] gear," 3) "disparate treatment of women firefighters in provision of quartering," 4) "disparate treatment of women firefighters in work assignments, pay, and benefits," 5) "selective enforcement of rules against women firefighters," 6) "not one women [in the BFD] has been afforded educational benefits of any kind," and 7) "On June 14, 2002, Dep. Chief Patrick Shevlin ordered Johanna Georgia off duty, not by her choice and over her objection."

In Sanders v. NY City Human Resources Admin, the Second Circuit defined "an adverse employment action as a 'materially adverse change' in the terms or conditions of employment." 361 F.3d 749 (2d Cir. 2004). The court explained that in the context of a Title VII discrimination claim,

> [t]o be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration in job responsibilities' . . . . Examples of such change include "termination of employment, a demotion

20

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

Sanders v. NY City Human Resources Admin., 361 F.3d 749 (2d Cir. 2004)(citing Terry v. Ashcroft, 336 F.3d 128, 138, 141 (2d Cir. 2003)).

The court concludes that the plaintiffs have raised genuine issues of material fact as to whether the lack of female firefighting gear and alleged differences in the housing of female firefighters resulted in a "material change in working conditions." A jury might reasonably find that the lack of female gear, for example, was "more disruptive than a mere inconvenience." See Wanamaker v. Columbian Rope Company, 108 F.3d 462, 466 (2d Cir. 1997) (noting that "[B]ecause there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches to level of 'adverse'"). In addition, Georgia has put forth evidence of an adverse employment action in the form of the BFD's alleged refusal to return her to work.

2.    **Circumstances Giving Rise to an Inference of Discrimination**

The fourth element of the prima facie case requires that the plaintiffs present evidence that "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan Dist. Comm., 134 F. Supp. 2d 470 (D. Conn, 2001)(internal citations and quotations omitted). The Supreme Court has stated that "proof of discriminatory motive is critical, although it can in some situations be inferred from the

21