mere fact of the differences in treatment." <u>Teamsters</u> v. <u>United States</u>, 431 U.S. 324 (1977).

Here, the plaintiffs have presented evidence from which a jury could infer from the mere fact of differences in treatment that discriminatory animus existed. The evidence includes, but is not limited to, Day's comment about female firefighters and the various postings in the firehouses.

The defendants satisfy their burden of proffering a nondiscriminatory reason for refusing to take Georgia back to work. The June 2004 letter from the BFD to Georgia states that the nondiscriminatory reason for not allowing Georgia back to work is that "it is still unclear whether those [medical] restrictions interfere with [Georgia's] ability to perform the duties of a firefighter."

Nonetheless, the court concludes that despite the BFD's nondiscriminatory reasons, a reasonable jury could find that in the context of the other alleged sexual harassment "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." <u>Harper</u> v. <u>Metropolitan Dist. Comm.</u>, 134 F. Supp. 2d 470 (D. Conn, 2001).

Therefore, the motions are denied with respect to the Title VII disparate treatment claims.

## C.    Retaliation

The defendants next move for summary judgment on the plaintiffs' Title VII retaliation claims. Specifically, the defendants argue that the plaintiffs have not presented evidence of "adverse

22

employment actions" or that the events are the "result from the motivation necessary to establish" a retaliation claim. The plaintiffs respond that "there is ample evidence and disputed facts . . . to send the retaliation claims to the jury."

Title VII makes it unlawful for an employer to retaliate against an employee for having "opposed any [unlawful employment] practice . . . or because he has made a charge, testified, assisted or participated . . . in an investigation" of unlawful employment practices. 42 U.S.C. § 2000e-(3)(a).

Pursuant to McDonnell Douglas, the plaintiffs have the initial burden of establishing a prima facie case of Title VII retaliation. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir. 1996). A prima facie claim of retaliation requires that the plaintiff show:

(I) participation in a protected activity known to the defendant; (ii) an employment action disadvantaging the plaintiff; (iii) a casual connection between the protected activity and the adverse employment action.

Tomka v. Sheiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995). See also Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). It is undisputed that the plaintiffs meet the first requirement of the prima facie case.[6] The defendants argue that the plaintiffs have failed to raise a genuine issue as to the second and third parts of the prima facie case.

―――――――――――――

[6] The plaintiffs' formal and informal complaints about alleged sexual harassment in the BFD "were undoubtably forms of protected activity." Gregory v. Daly, 243 F.3d 687, 701, 700 (2d Cir. 2001)(noting "[t]he law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management")(quoting Matima v. Celli, 228 F.3d 68,78 (2d Cir. 2000).

1.    **An Employment Action Disadvantaging the Plaintiff**

The second prong of the prima facie case, requires the plaintiff to set forth evidence of a "materially adverse change in the terms or conditions of employment." Both plaintiffs allege that the City engaged in "[i]ntimidating and threatening" behavior "in the course of the 'investigation' into complaints." Specifically, the plaintiffs allege that the City denied "female firefighters union and legal representation in 'investigatory hearings.'" Furthermore, Georgia alleges that the City has not allowed her to return to work in retaliation for her complaints.

In Richardson v. New York Dep't of Correctional Serv., 180 F.3d 426 (2d Cir. 1999), the Second Circuit held that a plaintiff established a prima facie case of retaliation "based on . . . allegations" that the defendant correctional facility's personnel "were aware of and harassed her because of the protected activities which she engaged in her attempts to fight harassment she perceived" in the workplace. 180 F.3d 426, 445 (2d Cir. 1999). The Second Circuit adopted the "view that unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action" to satisfy the prima facie case's second prong. 180 F.3d 426, 446 (2d Cir. 1999).

Here, the plaintiffs allege that the BFD intimidated them during the investigation. Specifically, Schiller alleges that the defendants did not allow her to bring her union representative to the investigatory interview. Georgia alleges intimidating and harassing behavior during the investigation. The court concludes that a jury might reasonably find that the alleged conduct during the

24

investigation of the plaintiffs' complaints constituted retaliatory adverse employment action.

### 2.    Causal Connection

The fourth prong of the prima facie case requires evidence of a "casual connection between the protected activity and the adverse employment action." Tomka v. Sheiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995). Specifically:

> Proof of a causal connection can be established directly through evidence of retaliatory animus directed against the plaintiff . . . or indirectly by showing that the protected activity was followed closely by the discriminatory treatment.

Richardson v. New York Dep't of Correctional Serv., 180 F.3d 426, 44y (2d Cir. 1999). Furthermore, "a substantial time lapse between an employee's protected activity and the adverse employment action is counter-evidence of retaliatory conduct." Reed v. Conn. Dep't of Trans., 161 F. Supp. 2d 73, 83 (D. Conn. 2001)(citations omitted).

In Richardson v. New York Dep't of Correctional Serv., a case concerning claims of Title VII retaliatory constructive discharge, the Second Circuit held that a "two year gap is too wide to support the inference that she was terminated in retaliation for complaining about discrimination." The court also stated that the plaintiff had "failed to adduce any other evidence to indicate that her discharge was the product of retaliatory animus." 180 F.3d 426, 447 (2d Cir. 1999).

Here, the plaintiffs allege that the retaliation for their complaints occurred during the investigation into Day's comment and conduct. The court concludes that a reasonable jury could find the

25

proximity between the protected activity and the alleged retaliation is sufficient circumstantial evidence of a causal connection.

Accordingly, the motions are denied as to the plaintiffs' claims of Title VII retaliation.

### D.    Hostile Work Environment: Sexual Harassment

The defendants next argue that they are entitled to judgment as a matter of law on the plaintiffs' hostile work environment claims. Specifically, the defendants argue that the incidents "were infrequent and episodic and the majority of them lacked sexual overtone at all" and that there is no "evidence giving rise to an inference of discriminatory intent." Furthermore, the defendants argue that the City cannot be liable because the "events giving rise to the complaints were not the actions of the Department taken officially through its supervisory employees" and the fire department's "reaction was always appropriate." The plaintiffs respond that "[t]he harassment of women in the BFD is both severe and pervasive."

The Second Circuit recently reiterated in Petrosino v. Atlantic, 2004 WL 2177044, *8 (2d Cir. Sept. 24, 2004), that, "Title VII's prohibition of sex discrimination extends to sexual harassment." A plaintiff may prevail on a hostile work claim "notwithstanding . . . no 'tangible employment action . . .[that] itself constitutes a change in the terms and conditions of employment' by formally altering a worker's employment status." Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001).

Specifically, to prevail on a Title VII claim premised on "sexual harassment based on a hostile work environment," a plaintiff must show:

(1) that the work place was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.

Petrosino v. Atlantic, 2004 WL 2177044, *7 (2d Cir. Sept. 24, 2004)(citations omitted).

The Second Circuit has rejected the argument that "common exposure of male and female workers to sexually offensive material necessarily precludes women from relying on such evidence to establish a hostile work environment based on sex." Petrosino v. Atlantic, 2004 WL 2177044, *7 (2d Cir. Sept. 24, 2004). Furthermore, the Second Circuit has noted that simply because "offensive material was not directed specifically" at the plaintiff "does not, as a matter of law, preclude a jury from finding" a "hostile work environment based on sex." Petrosino v. Atlantic, 2004 WL 2177044, *9 (2d Cir. Sept. 24, 2004).

### 1.    Severe and Pervasive Discriminatory Intimidation

As to the first element of the prima facie case, whether the "work place was permeated with discriminatory intimidation that was sufficiently severe or pervasive," the court concludes that there are questions of fact precluding summary judgment. The issues of fact include, but are not limited to, whether instances from 1999 through 2004, such as Day's "cunt" comment, the presence of various posters and calenders, and availability of adult television channels at the

27

firehouses, permeated the work place with discriminatory intimidation sufficiently severe to alter the conditions of the plaintiffs' work environment. See Petrosino v. Atlantic, 2004 WL 2177044, *10 (2d Cir. Sept. 24, 2004)(reversing district court's grant of summary judgment to the defendant employers on Title VII sexual harassment claim).

### 2.    Employer Liability

As to the second element, whether "a specific basis exists for imputing the conduct that created the hostile environment to the employer," the court concludes that genuine issues of material fact preclude the entry of summary judgment.

In Petrosino v. Atlantic, the Second Circuit set forth two standards for Title VII employer liability for hostile work environment claims.  The standard for employer liability depends on who allegedly committed the sexual harassment.  2004 WL 2177044 (2d Cir. Sept. 24, 2004).  When "non-supervisory co-workers" commit acts of discrimination, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate action." Petrosino v. Atlantic, 2004 WL 2177044, *12 (2d Cir. 2004)(citations omitted).

On the other hand, when a "supervisor with immediate or successively higher authority over the employee" allegedly commits acts of discrimination, "a court looks first to whether the supervisor's behavior 'culminate[d] in a tangible employment action' against the employee."  If a tangible employment action did occur, then "the employer will, *ipso facto*, be vicariously liable."

28

<u>Petrosino</u> v. <u>Atlantic</u>, 2004 WL 2177044, *12 (2d Cir. Sept. 24, 2004).
If no tangible employment action occurred, the employer will still be
liable unless the employer succeeds in establishing "as an
affirmative defense that:"

> (a) it 'exercised reasonable care to prevent and correct
> promptly any sexually harassing behavior,' and (b) 'the
> plaintiff employee unreasonably failed to take advantage
> of any preventive or corrective opportunities provided by
> the employer or to avoid harm otherwise.'

2004 WL 2177044, *12 (2d Cir. Sept. 24, 2004).

In this case, the plaintiffs allege that both non-
supervisory and supervisory BFD employees participated in the
creation of the hostile work environment. Accordingly, the
court must analyze this case under both liability standards.
The court concludes that issues of fact exist under both
standards of liability.

Under the liability standard for non-supervisory employee
discrimination, a reasonable jury could find that the employer
knew or reasonably should have known about the harassment but
failed to take appropriate action. Issues of fact include, but
are not limited to, whether the BFD's reaction to repeated
postings of inappropriate materials in the firehouses were
sufficient.

Similarly, under the standard of liability for supervisory
employee discrimination, the court cannot find as a matter of
law that the plaintiffs unreasonably failed to take advantage of
the fire department's preventative or corrective opportunities.
For example, on March 5, 2000, Schiller wrote a letter to
Pettway complaining about Day's comments and asking to be

29

removed from his command.  On February 28, 2000, Georgia filed an internal complaint regarding Day's comment.  While the defendants argue that "[i]n every instance in which Plaintiff[s] complained to BFD or the City Labor Relations Office, investigation and correction followed as promptly as possible . . .," a reasonable jury might find that the department failed to remedy various allegedly sexually harassing aspects of the work environment.

Accordingly, the motions are denied with respect to the Title VII hostile work environment claims.

## III.    Section 1983 Claims Against All Defendants [7]

The defendants argue that they are entitled to summary judgment on all of the plaintiffs' 42 U.S.C. § 1983 claims.  The plaintiffs argue that each of the claims should go to the jury.

### A.    First Amendment

As to the First Amendment, the defendants argue that "each of the examples Plaintiff cites of supposed violation of her rights . . . utterly lacks legal and/or factual value."  In response, the plaintiffs state that "material fact issues over the retaliation being in dispute, the § 1983 claims for speech deprivations must go to the jury."

---

[7] Title 42 of the United States Code, section 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  42 U.S.C. § 1983.

30

To make out a prima facie case of First Amendment retaliation under § 1983, a plaintiff show that:

> (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination.

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)(internal citations omitted). The McDonnell Douglas burden shifting framework applies to § 1983 claims. See e.g. Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 123 (2d Cir. 2004). Therefore, the plaintiff has the burden of setting forth a de minimus prima facie case.

### 1. Constitutionally Protected Speech

The plaintiffs clearly engaged in constitutionally protected speech when they filed complaints about department-wide sexual harassment. See Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134 (2d Cir. 2003)(stating that if a plaintiffs "complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.'").

### 2. Adverse Employment Decision

In Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999), the Second Circuit noted that in addition to "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand,"

> lesser actions may also be considered adverse employment actions . . . . adverse employment actions may include negative evaluation letters, express accusations of lying, assignment to lunchroom duty, reduction in class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion

196 F.3d at 110 (citing Bernheim b. Litt, 79 F.3d 318, 327 (2d Cir. 1996). Based on the totality of the circumstances evident here, a

31

reasonable juror could conclude that Schiller and Georgia suffered adverse employment actions.

### 3.    Causal Connection

The Second Circuit has stated that "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action" Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

"Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). The court concludes that questions regarding the defendants' motives predominate the inquiry regarding how important a role the plaintiffs' speech played in the alleged adverse employment actions. For example, it is unclear why the BFD did not allow the Schiller to take a representative into the investigatory interviews.

Accordingly, the motions are denied with respect to the § 1983 First Amendment retaliation claims.

### B.    Equal Protection

The defendants argue that they are entitled to summary judgment on the plaintiffs' § 1983 equal protection claims because "[t]he Fifth Amendment . . . only applies to the federal government." The plaintiffs respond that "the material issues of fact over the disparate treatment being in dispute, the § 1983 claims about Equal Protection must go to the jury."

In count two, the plaintiffs state that the defendants have violated their rights to "Equal Protection of the Law, guaranteed by

32

the Fifth Amendment." The court concludes that the reference to the Fifth Amendment was a scrivener's error. The plaintiffs are clearly arguing under § 1983 that the City and individual defendants have violated the Fourteenth Amendment's Equal Protection clause. For example, earlier in count two, the plaintiffs refer to the Fourteenth Amendment when they assert "rights . . . under the Fifth and Fourteenth Amendments to the U.S. Constitution to Equal Protection of the Law and Due Process of the law." Because count two refers to the Fourteenth Amendment, the court rejects the defendants' argument that the court should dismiss the plaintiffs' § 1983 equal protection claims simply because the count refers to the Fifth Amendment.

Furthermore, "[i]ndividuals have a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 118 (2d Cir. 2004). See also Annis v. County of Westchester, New York, 36 F.3d 251, 254 (2d Cir. 1994). Specifically, the Second Circuit has stated that "sexual harassment of women constitutes disparate treatment because of gender, and is actionable under Section 1983." Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 143-44 (2d Cir. 2003)(internal citations and quotation marks omitted). To succeed on a § 1983 claim based on sexual harassment, "the plaintiff must prove that she suffered purposeful or intentional discrimination." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 118 (2d Cir. 2004).

The court concludes that the plaintiffs have presented evidence from which a reasonable juror could find that the defendants were responsible for sexual harassment in violation of the plaintiffs'

33

Fourteenth Amendment rights to equal protection.  See Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 124 (2d Cir. 2004)(noting that on § 1983 equal protection claim, the female plaintiff "has made out her prima facie case by offering evidence of discriminatory comments, which constitute 'direct evidence,' and are adequate to make out a prima facie case, even when uncorroborated.") The evidence includes, but is not limited to, Day's comments, the allegations of the inappropriate cadence, and the repeated postings of inappropriate material in the firehouses.

Therefore, the motions are denied with respect to the § 1983 equal protection claims.

### C.    Due Process

The defendants argue that the plaintiffs have failed to "articulate a property interest of which the Plaintiff was deprived, a necessary element of any § 1983 due process claim." The plaintiffs respond that "as tenured permanent civil service employees, [they] have classic property interests in their employment" encompassing the "terms and conditions, status, and job itself."

To prevail on a claim of deprivation of procedural due process pursuant to § 1983, "the plaintiff must show that [the plaintiff] possessed a protected liberty or property interest, and that he was deprived of that interest without due process." McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001)(internal quotation marks and citation omitted).

The plaintiffs put forth potential bases for a due process

34

violation.[8]  First, the plaintiffs argue that "unequal quartering and assignments deprives the women of overtime earnings, denial of "acting" assignments deprives them of a pay differential."  Second, the plaintiffs argue that "being kept off the job on perpetual 'sick leave' deprives Georgia of compensatory time, overpay time, and 'acting pay."

### 1.    Lost Pay

The plaintiffs argue that "loss of pay" "can support a due process claim by a public employee."  Even assuming that the plaintiffs have set forth a valid property interest in the form of lost pay, the plaintiffs have failed to present any evidence that the defendants have deprived the plaintiffs of pay.

While the plaintiffs argue that "unequal quartering and assignments deprives" them of "overtime earnings," they have failed to put forth any evidence in support of this claim.  Maglione has testified that the BFD does not assign female firefighters to firehouse 10's for the night shift because there are no female sleeping quarters in firehouse 10's.  There are also a limited number of female beds in the other BFD firehouses.  However, the plaintiffs

---

[8] The plaintiffs also seem to argue that the alleged failure of the BFD to hire them in 1997-98 violated due process.  However, the plaintiffs have presented no evidence, nor have they cited any authority, for the proposition that they had a property interest in prospective employment with the BFD in 1997-1998. "In order to have an interest protectible under the Constitution, a person must have a "legitimate claim of entitlement to it." Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577(2d Cir. 2002). An abstract need, desire or unilateral expectation is not enough." Abramson v. Pataki, 278 F.3d 93, 100 (2d Cir. 2002).  Accordingly, the court finds that the plaintiffs have failed to set forth a property interest in prospective employment with the BFD.  The plaintiffs' failure to hire claim cannot, as a matter of law, provide the basis for the § 1983 due process claims.

35

have not presented any evidence that this arrangement has personally deprived Schiller or Georgia of overtime pay or assignments necessary for promotion.

Accordingly, the motions are granted with respect to Schiller's § 1983 due process claim.

## 2.     Failure to Return to Work

In contrast, Georgia has set forth a potential violation of due process in the form of her allegation that the BFD has refused to allow her to return to work.  The court assumes without deciding, that Georgia, as a permanent municipal firefighter for the City of Bridgeport, has a property interest in her employment. See Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)(finding a property interest in employment where "[t]he collective bargaining agreement between the Town and the police union to which [the plaintiff] belonged guaranteed that he could not be fired without just cause").

Furthermore, Georgia has presented evidence that the BFD has deprived her of this property interest in employment without due process.  As set forth above, Georgia has presented evidence that she has attempted to return to work and that the BFD has not allowed her to do so.  The BFD's nondiscriminatory reason for not taking Georgia back is that she remains on sick leave.  Despite this explanation, the court concludes that Georgia has put forth sufficient evidence from which a jury could find that the BFD's refusal to allow Georgia to return to work constituted a deprivation of her property interest

36

in her employment in violation of the Fourteenth Amendment.[9]

Accordingly, the motions are denied as to Georgia's § 1983 due process claim.

### D.   Section 1983 Liability: City and Maglione

The defendants also argue that neither the City nor Maglione can be liable pursuant to § 1983.  The plaintiffs respond that the Maglione "has ordered Georgia to stay out of work" and the City and Maglione "have done no meaningful investigation" into allegations of sexual harassment.

#### 1.   The City's Liability

First, the defendants argue that the City cannot be held liable pursuant to § 1983 because the plaintiffs have not presented evidence that the City is "actually responsible for [Plaintiff's] injuries, as through a 'policy or custom.'"

"Municipalities . . . are considered 'persons' within the meaning of § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 128 (2d Cir. 2004).  A city can be held liable pursuant to § 1983 "only . . . if its 'policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  However, a city may be held liable for a "practice [that] is so widespread as to have the force of law" Back v. Hastings, 365 F.3d 107, 128 (2d Cir. 2004) (citation omitted).  The court concludes that a reasonable jury could

---

[9] Georgia also argues that alleged injury to her "reputation can support a due process claim." Because the court has decided that Georgia has set forth a valid due process claim regarding her employment, the court need not also address her property interest in her reputation.

37

find that the City allowed a practice of discrimination to continue that was so widespread as to have the force of law.  Issues of fact include whether the City knew of sexually inappropriate postings in the firehouses and how the City responded to the plaintiffs' various complaints.  Accordingly, motion for summary judgment is denied in this respect.

### 2.  Maglione's Liability

Second, as to Maglione, the defendants argue that the plaintiffs "allege[] but ha[ve] no evidence to suggest that Maglione created or allowed to continue, a policy or custom sanctioning conduct constituting a constitutional violation."

The Second Circuit requires "personal involvement of defendants in alleged constitutional deprivations" as a "prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).  The Second Circuit has enumerated the various ways that plaintiffs can show personal involvement.  The plaintiff must present "evidence that:"

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that the unconstitutional acts were occurring.

Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(quotation marks and citation omitted).

The court concludes that the plaintiff has presented

evidence from which a reasonable jury could find that the Maglione allowed the continuance of a policy or custom under which unconstitutional practices occurred in violation of § 1983. For example, issues of fact exist as to Maglione's reactions to the various postings and complaints. Furthermore, issues of fact exist as to Maglione's involvement in the decision not to allow Geogia back to the BFD.

## IV.   Sections 1985(3) and 1986 Claims Against All Defendants

### A. Section 1985(3)

The defendants argue that they are entitled to summary judgement on the plaintiffs' claims pursuant to 42 U.S.C. § 1985(3).[10] Title 42 U.S.C. § 1985(3) provides a cause of action when two or more people conspire to deprive "any person or class of persons of the equal protection of the laws."

The defendants argue that the plaintiffs do not allege "the intent" to "deny or punish a civil rights exercise." In addition, the defendants argue that "[w]here as here . . . municipal employees accused of a § 1985 conspiracy were acting solely in their municipal capacities, both the § 1985 and § 1986

---

[10]Title 42 of the United States Code, section 1985 states in relevant part: "If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

claims premised on their conduct fail." The plaintiffs respond that "this case compels a jury assessment of the evidence of insidious and concerted conduct . . . to keep Johanna Georgia out of work for three years on perpetual 'sick' leave."

A § 1985(3) claim has four elements:

(1) a conspiracy, (2) for the purposes of depriving another of the 'equal protection of the laws, or equal privileges and immunities under the laws;' (3) an act in furtherance of the conspiracy; (4) an injury to a person or property, or the deprivation of a legal right.

Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). The court concludes that the plaintiffs have failed to submit any evidence of a conspiracy to deprive them of the equal protection of the laws. Accordingly, the motion, in this respect, is granted.

### 2. Section § 1986

The defendants also move for summary judgment on the plaintiffs' § 1986 claims.[11] To prevail in a § 1986 cause of action, the plaintiff must show that the defendant had "actual knowledge of the conspiracy [under § 1985(3)], was in a position to prevent its execution, and failed to take reasonable steps to do so." See Buck v. Board of Elections, 536 F.2d 522, 524 (2d Cir. 1976). A "§ 1986 claim must be predicated upon a valid § 1985 claim." Because the plaintiffs' § 1985(3) claims fail,

---

[11] Title 42 U.S.C. of the United States Code, section 1986 states in relevant part: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the person injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . ." 42 U.S.C. § 1986.

40

their § 1986 claims must also fail. Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). Accordingly, the motions are granted with respect to § 1986.

**V.   Connecticut Constitutional Claims Against All Defendants**

The defendants move for summary judgment on all five of the plaintiffs' Connecticut constitutional claims. The plaintiffs only respond to the defendants' arguments regarding the claim pursuant to the Art. 1, § 20 of the Connecticut Constitution.

**A.   Free Speech: Art. 1, § 4[12]**

The defendants argue that they are entitled to summary judgment on the plaintiffs' free speech Connecticut constitutional claims "for the same reasons" as they are entitled to summary judgment on the plaintiffs' First Amendment claims. The court agrees.

"The Connecticut Supreme Court has recognized a private right of action under the free speech clause of the Connecticut Constitution." Ward v. Housatonic Area Regional Transit Dist., 154 F. Supp. 2d 339, 356 (D. Conn. 2001). For the same reasons that this court denies summary judgment as to the plaintiffs' First Amendment claims, this court denies summary judgment as to the plaintiffs' claims under Article 1, § 4 of the Connecticut Constitution. See Ward v. Housatonic Area Regional Transit Dist., 154 F.Supp. 2d 339, 356 (D. Conn. 2001)(holding that

---

[12] Article 1, § 4 of the Connecticut Constitution states: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

41

"Because the court already denied [the defendant's] motion as to
the [plaintiff's] federal First Amendment claims, the court
finds that summary judgment should be denied as well as to the
claims brought under the Connecticut Constitution").

Accordingly, the motions are, in this respect, denied.

**B.    Equal Rights and Due Process: Art. 1, §§ 1, 8**[13]

The defendants argue that they are entitled to summary
judgment on the Connecticut constitutional equal protection
claims "like [their] parallel . . . Title 42 U.S.C. § 1983
claims." As to the due process claims, the defendants argue
that the Connecticut constitution guarantees "criminal due
process" and because the plaintiffs' claims are "solely civil,
her reliance on this constitutional provision is fatal." The
plaintiffs do not respond.

"[T]here is no private cause of action for monetary
damages under the equal protection and due process provisions .
. . of the Connecticut Constitution." See Ward v. Housatonic
Area Regional Transit Dist., 154 F. Supp. 2d 339, 356 (D. Conn.
2001)(citation omitted). Accordingly, the motions are granted
in this respect.

---

[13] Article 1, § 1 of the Connecticut Constitution states: "All
men when they form a social compact, are equal in rights; and no man
or set of men are entitled to exclusive public emoluments or
privileges from the community." Article 1, § 8 of the Connecticut
constitution states, in part: "In all criminal prosecutions, the
accused shall have a right to be heard by himself and by counsel . .
."

42

C.     **Right of Redress, Art. 1, § 10**[14]

The defendants argue that the Connecticut Constitution's Art. 1, § 10 "has no relevance to this case at all." The court agrees.

Section 10 is a "limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818. . ." <u>Dubay</u> v. <u>Irish</u>, 201 Conn. 518, 529 (1986). The Connecticut Supreme Court has held that "it is clear that § 10 is implicated only where a right that existed at common law or by statute prior to 1818 has been infringed upon or abolished." <u>Dubay</u> v. <u>Irish</u>, 201 Conn. 518, 529 (1986). The plaintiffs have presented no authority to support the proposition that they have been deprived of a common law or statutory right that was in existence prior to 1818. <u>See</u> <u>Dubay</u> v. <u>Irish</u>, 201 Conn. 518, 529 (1986). Consequently, the motions are granted in this respect.

D.     **Equal Protection: Art. 1, § 20** [15]

Article 1, § 20 of the Connecticut Constitution provides:

> No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability.

Conn. Const. Art.1, § 20. The plaintiffs concede that "[t]here

---

[14] Article 1, § 10 of the Connecticut Constitution states: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

43

is no statutory remedy" for the deprivation of an individual's rights under Art 1, § 20 of the Connecticut Constitution.

The court concludes that the issue of whether there is an individual right of redress under Art. 1, § 20 of the Connecticut Constitution is a novel and complex issue of state law which is better left to the state courts of Connecticut. See 28 U.S.C. § 1367©). Accordingly, the court declines to exercise supplemental jurisdiction over the plaintiffs' Art. 1, § 20 claim. See 28 U.S.C. § 1367(c)(providing, in part, that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if - (1) the claim raises a novel or complex issue of State law").

## VII. Common Law Claims Against All Defendants

### A.    Intentional Infliction of Emotional Distress

The defendants argue that they are entitled to judgment as a matter of law on the plaintiffs' claim of intentional infliction of emotional distress. Specifically, the defendants argue that the "facts in this case lend[] no support whatsoever to these charges." The plaintiffs respond that "the question of whether the facts, including those in dispute, support a finding of intentional infliction of emotional distress is the province of the jury."

To make out a prima facie case of intentional infliction of emotional distress under Connecticut law, the plaintiff must establish:

> (1) the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his

44

conduct; (2) that the conduct was extreme and
outrageous; (3) that the defendant's conduct was the
cause of the plaintiff's distress; and (4) that the
distress suffered by the plaintiff was severe.

<u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp. 2d 184, 194 (D. Conn.

2000); <u>D'Amato</u> v. <u>Southern Conn. Gas Co</u>., 2000 WL 34325258, *4

(D. Conn Sept. 8, 2000).

"Whether the defendant's conduct is sufficient to satisfy

the element of extreme and outrageous conduct is a question, in

the first instance, for the court." <u>Johnson</u> v. <u>Chesebrough-Ponds</u>

<u>USA Co</u>., 918 F. Supp. 543, 552 (D. Conn. 1996). The standard

for "extreme and outrageous" conduct is difficult to meet:

Liabilty for intentional infliction of emotional
distress requires conduct that is so extreme and
outrageous that it goes beyond all possible bounds of
decency, is regarded as atrocious, is utterly
intolerable in a civilized society, and is of a
nature that is especially calculated to cause, and
does cause, mental distress of a very serious kind.

<u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn.

2000). <u>See also</u> <u>Johnson</u> v. <u>Chesebrough-Ponds USA Co</u>., 918 F.

Supp 543, 552 (D. Conn. 1996).

In <u>Minor</u> v. <u>Town of Chesire</u>, a district court held that a

female police officer had failed to allege conduct "sufficiently

extreme and outrageous to support a claim of intentional

infliction of emotional distress." 126 F. Supp.2d 184, 194 (D.

Conn. 2000). In a case factually similar to this case, the

plaintiff alleged that the town had: 1) "refused to protect

plaintiff and other women from sexual harassment," 2) "refus[ed]

to take action to protect plaintiff" from harassment by her

shift commander, and 3) "reprimand[ed] plaintiff for asserting

her rights to be free from sexual harassment, forcing plaintiff

45

to resign her position . . . in retaliation." <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn. 2000)

The <u>Minor</u> court held that "as a matter of law, this is not sufficiently extreme and outrageous to support a claim of intentional infliction of emotional distress." <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn. 2000). The court went on to note that the plaintiff had failed to allege that the town "conducted such activities in a humiliating, extreme, or outrageous manner." <u>Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp.2d 184, 194 (D. Conn. 2000).

Similarly, the plaintiffs here have not set forth evidence that the City acted in a "humiliating, extreme, or outrageous manner."

Therefore, the motions are granted with respect to the claims of intentional infliction of emotional distress.[16]

---

[16] Furthermore, the plaintiffs claim "[u]nder a theory of respondent superior, [that] the City is liable to Plaintiff[s] for all conduct by its employees, officials, agents, and representatives and for the emotional distress complained of herein." The City cannot be liable for any emotional distress that the individual plaintiffs may have inflicted on the plaintiffs. As set forth above, the tort of intentional infliction of emotional distress requires that the defendant "intended" to inflict emotional distress. In contrast, Conn. Gen. Stat. § 52-557n provides that, "a political subdivision of the state shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer or agent which constitute . . . <u>willful misconduct</u> . . . ." Conn. Gen. Stat. § 52-557n(a)(2)(A)(emphasis added). "Under Connecticut law, the term "willfulness" is synonymous with 'intentional.'" <u>See Minor</u> v. <u>Town of Chesire</u>, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). Therefore, a Connecticut town cannot be held liable for intentional infliction of emotional distress.

46

**B. Breach of Covenant of Good Faith & Fair Dealing**

The defendants argue that the existence of a collective bargaining agreement precludes the plaintiffs from bringing an action for breach of the covenant of good faith and fair dealing.  The plaintiffs respond that "evidence [of] sex discrimination and a hostile environment, failures to investigate and remedy, and retaliation . . . is enough to send that claim to the jury."  The plaintiffs state that the "source of the covenant is the employer-employee *relationship*; the contract is but evidence."  Furthermore, the plaintiffs argue that the collective bargaining agreement "does not speak to sexual harassment by management, or a host of conduct that would breach the common law covenant."  The plaintiffs cite no case law in support of their arguments.

It is clear that a covenant of good faith and fair dealing exists under Connecticut law even when there is a collective bargaining agreement. See Habetz v. Condon, 224 Conn. 231, 238 (1992)(cited in Novicki v. Waterford Bd. of Educ., 1996 WL 684392, *2 (D. Conn. June 4, 1996)).  However, the Connecticut Supreme Court has not ruled on the issue of whether a plaintiff can bring a claim for breach of the covenant of good faith and fair dealing on the basis of alleged sexual harassment and interference "with Plaintiffs very relationship with their union" when a collective bargaining agreement exists.

The court concludes that the question of whether alleged sexual harassment and interference with union representation violate the covenant of good faith and fair dealing is a "novel

47

[question] better left to the Connecticut courts." <u>See</u> 28 U.S.C.
§ 1367©); <u>Novicki</u> v. <u>Waterford Bd. of Educ.</u>, 1996 WL 684392, *3
(D. Conn. June 4, 1996)(declining to exercise supplemental
jurisdiction where the Connecticut courts had not "definitively
resolved" "the question of whether a collective bargaining
employee may bring an action . . . for breach of the implied
covenant of good faith and fair dealing").

## CONCLUSION

For the foregoing reasons, the motions for summary
judgment (doc. no.184 and no.185) are GRANTED in part and DENIED
in part.[17]

The motions are GRANTED as to the following claims: 1)
both plaintiffs' claims of Title VII disparate impact claims; 2)
Schiller's § 1983 due process claim; 3) both plaintiffs' §
1985(3) and § 1986 claims; 4) both plaintiffs' claims pursuant
to § 1(equal rights), § 8(due process), § 10(right of redress)
of the Connecticut Constitution; and 5) both plaintiffs' claims
of intentional infliction of emotional distress.

The court concludes that two of the plaintiffs' claims
raise novel and complex issues of state law and therefore
declines to exercise supplemental jurisdiction over them: 1) the
plaintiffs' claims pursuant to Art. 1, § 20 (equal protection of
the laws) of the Connecticut Constitution; and 2) the
plaintiffs' claims for breach of the covenant of good faith and
fair dealing.

The motions are denied as to the following claims: 1) both

---

[17] <u>See</u> Appendix 1 (chart outlining which claims have survived
summary judgment).

48

plaintiffs' claims of Title VII disparate treatment; 2) both plaintiffs' claims of Title VII retaliation; 2) both plaintiffs' claims of Title VII hostile work environment; 3) both plaintiffs' § 1983 equal protection claims; 4) Georgia's § 1983 due process claim; and 5) both plaintiffs' Connecticut constitutional claims pursuant to Art. 1, § 4 (free speech).

It is so ordered this _3RD_ day of November, 2004 at Hartford, CT.

Alfred V. Covello, U.S.D.J.
United States District Judge

49

Appendix 1: Claims After Summary Judgment

| Plaintiffs' Claims | Schiller | | Georgia |
|---|---|---|---|
| Title VII disparate impact:<br>Against City | OUT | | OUT |
| Title VII[18] disparate treatment:<br>Against City | IN | | IN |
| Title VII retaliation:<br>Against City | IN | | IN |
| Title VII hostile work environment:<br>Against City | IN | | IN |
| § 1983 1st A. retaliation:<br>Against City, Maglione, & Pettway | IN | | IN |
| § 1983 Equal Protection:<br>Against City, Maglione, & Pettway | IN | | IN |
| § 1983 Due Process:<br>Against City, Maglione, & Pettway | OUT | | IN |
| § 1985(3):<br>Against City, Maglione, & Pettway | OUT | | OUT |
| § 1986:<br>Against City, Maglione, & Pettway | OUT | | OUT |
| Conn. Const. Art. 1 § 4 (free speech):<br>Against City, Maglione, & Pettway | IN | | IN |
| Conn. Const. Art. 1 § 1 (equal rights):<br>Against City, Maglione, & Pettway | OUT | | OUT |
| Conn. Const. Art. 1 § 8 (due process):<br>Against City, Maglione, & Pettway | OUT | | OUT |
| Conn. Const. Art. 1 § 10 (redress):<br>Against City, Maglione, & Pettway | OUT | | OUT |
| Conn. Const. Art. 1 § 20 (equal prot.):<br>Against City, Maglione, & Pettway | OUT<br>(novel §<br>1367(c)) | | OUT (novel §<br>1367(c)) |
| Intentional Infliction Emotional Distress:<br>Against City, Maglione, & Pettway | OUT | | OUT |
| Breach of the Covenant of Good Faith &<br>Fair Dealing:<br>Against City, Maglione, & Pettway | OUT<br>(novel §<br>1367(c)) | | OUT (novel §<br>1367©)) |

---

[18] The plaintiffs also bring parallel claims pursuant to the Connecticut Fair Employment and Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60. The CFEPA claims remain to the same extent that the Title VII claims remain.